**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

------------------------------------------------------------------------- x

MURPHY MEDICAL ASSOCIATES, LLC; :
DIAGNOSTIC AND MEDICAL SPECIALISTS OF :
GREENWICH, LLC; NORTH STAMFORD MEDICAL :
ASSOCIATES, LLC; COASTAL CONNECTICUT : 3:20-cv-01675-JBA
MEDICAL GROUP, LLC; and STEVEN A.R. MURPHY, :
MD, :
:
           Plaintiffs, :
V. :
:
CIGNA HEALTH AND LIFE INSURANCE COMPANY : October 24, 2022
and CONNECTICUT GENERAL LIFE INSURANCE :
COMPANY, :
:
           Defendants. :

------------------------------------------------------------------------- x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF RULE 37(b) MOTION FOR SANCTIONS DUE TO PLAINTIFFS' FAILURE TO COMPLY WITH DISCOVERY ORDER

Robinson & Cole LLP
1055 Washington Boulevard
Stamford, CT 06901

*Attorneys for Cigna Health And Life*
*Insurance Company and Connecticut*
*General Life Insurance Company*

*Of Counsel*:
Patrick W. Begos
Theodore J. Tucci
Milanna Datlow

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................II

I.   INTRODUCTION ..................................................................................................... 1

II.  OVERVIEW OF CLAIMS AND DISPUTED ISSUES.................................................... 3

III. PLAINTIFFS FAILED TO COMPLY WITH THE COURT'S ORDER ......................... 4

IV.  LEGAL STANDARD................................................................................................ 6

V.   ARGUMENT............................................................................................................ 8

    A.   Plaintiffs Have Failed to Produce Medical Records for the Vast Majority of Itemized claims They Have Placed in Issue ....................................................... 8

        1.   The Court should dismiss the 12,456 itemized claims for which Plaintiffs failed to produce any medical records....................................... 8

        2.   The Court should dismiss the itemized claims pertaining to the 2,575 Cigna members for whom Plaintiffs have not produced an assignment...................................................................................... 11

        3.   The Court should preclude Plaintiffs from introducing medical records that they have not already produced............................................. 14

    B.   Plaintiffs Have Failed to Produce Documents Regarding Their Cash Prices...... 15

    C.   Plaintiffs Have Failed to Produce Documents Regarding the Tortious Interference Claim .................................................................................. 16

VI.  CONCLUSION....................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agent Orange Prod. Liab. Litig.*,
611 F. Supp. 1290 (E.D.N.Y. 1985), aff'd, 818 F.2d 210 (2d Cir. 1987)................................10

*Applera Corp. v. MJ Rsch. Inc.*,
220 F.R.D. 13 (D. Conn. 2004)................................................................................................10

*Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
602 F.2d 1062 (2d Cir. 1979).....................................................................................................7

*Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*,
951 F.2d 1357 (2d Cir. 1991).....................................................................................................7

*Innis Arden Golf Club v. Pitney Bowes, Inc.*,
257 F.R.D. 334 (D. Conn. 2009)..............................................................................................11

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982).................................................................................................................11

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
427 U.S. 639 (1976)...................................................................................................................7

*S.E.C. v. Benson*,
No. 84 CIV. 2262 (PNL), 1985 WL 1308 (S.D.N.Y. Apr. 9, 1985).................................15, 16

*Saloojas, Inc. v. Aetna Health of California, Inc.*,
No. 22-cv-02887-JSC, 2022 WL 4775877 (N.D. Cal. Sept 30, 2022) ...................................13

*Saloojas, Inc. v. Cigna Healthcare of California, Inc.*,
No. 22-cv-03270-CRB, 2022 WL 5265141 (N.D. Cal. Oct. 6, 2022)....................................13

*Update Art, Inc. v. Modiin Publishing, Ltd.*,
843 F.2d 67 (2d Cir. 1988).........................................................................................................7

**Statutes**

29 U.S.C. § 1132(a)(1)(B) .............................................................................................................4

Coronavirus Aid, Relief, and Economic Security Act....................................................4, 12, 13, 15

ERISA.......................................................................................................................2, 4, 11, 12, 13

Families First Coronavirus Response Act..........................................................4, 12, 13, 14, 15

ii

**Other Authorities**

Fed. R. Civ. P. 37(b)(2) ..................................................................................................1, 7

Fed. R. Civ. P. 37(b)(2)(A) .................................................................................................6

http://coronatestct.com ........................................................................................................4

Regulations of Connecticut State Agencies Section 19a–14–40 .......................................9

Rule 26(f), 35 ......................................................................................................................6

Pursuant to Fed. R. Civ. P. 37(b)(2), Defendants, Cigna Health and Life Insurance Company and Connecticut General Life Insurance Co. (collectively, "Cigna"), move for an order for sanctions due to Plaintiffs' failure to provide discovery as ordered by the Court on March 15, 2022, Doc. 52.

## I.   INTRODUCTION

In this action, Plaintiffs, Murphy Medical Associates, LLC, Diagnostic and Medical Specialists of Greenwich, LLC, North Stamford Medical Associates, LLC, and Coastal Connecticut Medical Group, LLC, and Stephen A.R. Murphy (collectively, the "Murphy Practice" or "Plaintiffs"), seek to recover more than $5,000,000 in connection with almost 13,000 itemized claims pertaining to COVID testing services they allegedly provided to more than 2,500 individuals who they claim were beneficiaries of Cigna-administered health plans. Amended Complaint, ¶ 64.

Following Plaintiffs' failure to fully respond to discovery requests Cigna had served in January 2021, Cigna filed a motion to compel, Doc. 35, and the Court ruled on that motion from the bench on March 15, 2022 ("March 2022 Order"), the Transcript of which is at Doc. 52. The Court ordered supplementation of Plaintiffs' responses to Cigna's First Set of Interrogatories ("Interrogatories") and First Set of Requests for Production of Documents ("Requests") within thirty days – *i.e.* by April 15, 2022. Plaintiffs failed to comply fully with the Order by that deadline. Indeed, despite repeated assurances in the intervening months that complete production would be forthcoming, Plaintiffs have not fully complied with the Order as of the date of this motion.

Plaintiffs' non-compliance falls into three categories, necessitating and justifying different remedies

*First*, Plaintiffs have produced few, if any, medical records to support their thousands of itemized claims. In particular, Plaintiffs seek recovery from Cigna for 12,970 itemized claims (*i.e.*, a particular service allegedly provided to a particular member on a particular date); but Plaintiffs' production included limited medical records pertaining to only 514 of those 12,970 itemized claims. Put more directly, ***Plaintiffs did not produce a single medical record for 12,456*** of those 12,970 itemized claims. Plaintiffs cannot recover payment for medical services that they cannot document that they provided. Plaintiffs have been given ample opportunity to produce these documents and they have no excuse for their failure to do so. The Court should preclude Plaintiffs from introducing evidence of medical services for which they have not produced records of treatment, and upon such preclusion, dismiss Plaintiffs' claims for payment for those services.

Where Plaintiffs have produced some records pertaining to an itemized claim – which is the case for 514 of the 12,970 itemized claims, the Court should preclude Plaintiffs from introducing any evidence supporting these itemized claims that they have not already produced.

In addition, Plaintiffs have produced documents purporting to be assignments signed by only 64 of the 2,639 Cigna members at issue in this case, despite alleging in their Amended Complaint and arguing in opposition to Cigna's motion to dismiss that most of the members signed assignments. The Court should preclude Plaintiffs from introducing evidence of assignments that have not already been produced, and because the assignments are necessary to allow Plaintiffs to maintain an ERISA benefits claim on behalf of a Cigna member, the Court should dismiss the itemized claims pertaining to members for whom an assignment has not been produced.[1]

---

[1] Cigna does not concede that the assignments Plaintiffs did produce were sufficient to convey to Plaintiffs the members' rights to assert ERISA claims, but will address that issue at a later date.

*Second*, Plaintiffs have failed to produce other documents necessary to support essential elements of their itemized claims for reimbursement. Specifically:

- Plaintiffs failed to produce documents regarding the "cash price(s)" that they allegedly posted for COVID testing services, and when the prices were posted. Plaintiffs have admitted that the laws on which they base their claims required them to post a cash price, and they admit that they had not posted cash prices when some of the tests at issue were performed. At present, they have not produced any document establishing that they had actually posted a cash price, and if so, what that cash price was, on any of the dates on which they allegedly performed the services for which they seek reimbursement.

- Plaintiffs failed to produce documents containing any allegedly defamatory statements made by Cigna, on which Plaintiffs base their tortious interference claim.

The Court should preclude Plaintiffs from introducing any evidence that they have not previously produced regarding these matters. Such relief is the minimum necessary to ensure that Cigna is able to prepare its defense of Plaintiff's claims without "surprise production" when the discovery cutoff approaches.

*Third*, Plaintiffs were also ordered to produce documents that would assist Cigna in preparing its defense, in particular, documents and information regarding their staffing of the testing sites at issue in this case. That production is relevant to a number of issues, including Plaintiffs' contention that they conducted "office visits" at drive-up test sites or otherwise performed clinical evaluations at those sites when people sought tests. For example, if an evaluation allegedly was performed by a particular clinician at a testing site, staffing records would be relevant to determining whether the clinician was present at the pertinent site on the date and time in question. Plaintiffs should be directed to fully comply within thirty days of the Court's ruling on this motion, and they should be required to pay Cigna's attorneys' fees for making this motion.

## II.     OVERVIEW OF CLAIMS AND DISPUTED ISSUES

As noted above, Plaintiffs seek to recover more than $5,000,000 for 12,970  itemized claims of COVID-19-related services they allegedly provided to members and beneficiaries of Cigna-

administered health plans. Plaintiffs allege that they performed most, if not all, of these services at one of many drive-up or walk-up testing sites they established in Connecticut and New York. The Court dismissed with prejudice six of the eight claims Plaintiffs asserted in their Amended Complaint, Doc. 48, and left standing only two:

(1) An ERISA benefits claim, 29 U.S.C. § 1132(a)(1)(B);

(2) a claim for tortious interference with contractual relationships through alleged defamation.

By order dated October 18, 2022, Doc. 71, the Court granted Plaintiffs' motion for reconsideration, and has allowed them to amend their amended complaint to specify that two additional claims – for CUTPA and unjust enrichment – "are against non-ERISA plans."

Plaintiffs alleged that they have standing to assert ERISA benefits claims on behalf of the thousands of Cigna members they allegedly tested because, plaintiffs contend, "many" of those members executed assignments of their claims.

Plaintiffs alleged that Cigna is obligated to pay $1,500 for each of the COVID tests they allegedly performed, while acknowledging on their website that a COVID test costs as little as $200, *see* http://coronatestct.com. They claim they are entitled to collect that excessive rate because they posted it as their "cash price" for the tests, and they argue that the Families First Coronavirus Response Act, Public Law 116-127 ("FFCRA"), and the Coronavirus Aid, Relief, and Economic Security Act ("CARES") Act requires Cigna to pay whatever cash price they posted.

They also allege that Cigna tortiously interfered with their business relationships with testing sites by publicly defaming Plaintiffs for their excessive charges.

## III.    PLAINTIFFS FAILED TO COMPLY WITH THE COURT'S ORDER

Cigna originally demanded most of the discovery at issue on this motion almost ***two years ago***. Specifically, On January 8, 2021, Cigna served its Interrogatories and Requests for Production of Documents. Plaintiffs' responses were incomplete and inadequate, and Cigna filed a motion to

4

compel on or about June 10, 2021. Doc. 35. The Court heard argument on the motion on March 15, 2022, and issued the March 2022 Order from the bench. Doc. 52; Declaration of Patrick W. Begos, Exhibit A.

The production that the Court ordered was to be completed within thirty days of the date of the Order – *i.e.*, by April 15, 2022. *See, e.g.*, March 2022 Order, pp. 53, 55, 56, 59, 62, 63, 71-72.

On April 15, 2022, Plaintiffs provided their Second Amended Responses to Defendants' First Set of Interrogatories, along with a cover letter providing a link to documents bates stamped Murphy 2479-12865. Begos Declaration, Exhibit B.

Review of the new production revealed that a significant number of the documents were duplicates of what Plaintiffs had produced before the March 2022 Order. Begos Dec., ¶ 5. Counsel also confirmed that there were significant deficiencies in the production. *Id.* These deficiencies are discussed in detail below.

On July 11, 2022, Cigna wrote to Plaintiffs identifying the deficiencies in the production, and demanded a prompt response and completion of the court-ordered production. Begos Declaration, Exhibit C.

Plaintiffs did not respond to the letter by August 12, 2022, and Cigna contacted Plaintiff to demand that Plaintiffs respond to the letter and completed the Court-ordered production. Begos Declaration, ¶ 7. On August 16, Plaintiffs' attorneys advised that they "will have an additional production and response to [the letter] sometime next week." *Id.*, Exhibit D.

Contrary to their assurance, Plaintiffs did not respond or produce additional documents, and Cigna's attorneys emailed Plaintiffs' attorneys on August 25, 2022 to enquire "when can we expect to see the production you promised, and the response to our 7/11 deficiency letter?" Begos Declaration, ¶ 8, Exhibit E. During an August 25, 2022 phone call, Plaintiff's attorneys stated that

5

they would respond to the July 11 letter and produce documents in two weeks. *Id.* As of the date of this motion, Plaintiffs have not responded to the July 11, 2022 deficiency letter, and they have not produced anything after their April 15, 2022 production. *Id.*, ¶ 9.

Though the volume of documents Plaintiffs produced seems large (12,865 total pages), that is misleading for several reasons: (i) Plaintiffs seek payment for 12,970 itemized claims, and one would expect multiple pages of records for each itemized claim (in addition to the documents pertaining to other issues in the case); (ii) Plaintiffs produced thousands of pages of documents more than once; and (iii) Plaintiffs' produced many documents regarding medical procedures that are ***not*** at issue in this action. This brief will address specific failures to comply with the March 2022 Order in Point V., *infra*.

Cigna recognizes that, given the large number of itemized claims at issue in this action, and the volume of documents that Plaintiffs produced, it is possible that Plaintiffs will be able to establish that they produced a document regarding a particular itemized claim that Cigna has missed in its review. This is why Cigna has supported its motion with lengthy lists of itemized claims for which it contends Plaintiffs have not produced the pertinent records. To the extent Plaintiffs contend that they have produced documents regarding particular itemized claims, the Court should not credit generalized statements, but should insist that they specify the particular itemized claim(s) and identify, by bates number the particular document(s).

## IV.    LEGAL STANDARD

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure gives the Court extensive authority to address a failure to comply with an order compelling discovery:

> If a party … fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

6

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

The Supreme Court has noted that discovery sanctions are important "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a sanction." *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643 (1976).

Compliance with discovery orders is "necessary to the integrity of our judicial process," and "[a] party who flouts [discovery] orders does so at his peril." *Update Art, Inc. v. Modiin Publishing, Ltd.,* 843 F.2d 67, 73 (2d Cir. 1988). *See also*, *Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) ("The discovery provisions of the Federal Rules of Civil Procedure are designed to achieve disclosure of all the evidence relevant to the merits of a controversy…. When a party seeks to frustrate this design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate."); *Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1068 (2d Cir. 1979) ("[I]n this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where ... they are clearly warranted.").

"A district court has wide discretion in imposing sanctions … under Rule 37(b)(2)." *Daval*, 951 F.2d at 1365

## V.   ARGUMENT

### A.   Plaintiffs Have Failed to Produce Medical Records for the Vast Majority of Itemized claims They Have Placed in Issue

Cigna's Document Request 1 demanded production of the medical records regarding the Cigna members for whom Plaintiffs sought payment. In addressing Request 1, the March 2022 Order required production of "a comprehensive record set for all of the patients on th[e] list" of itemized claims at issue. Ex. A at 7-8. This "comprehensive record set" included medical records and assignment documents, *id.*, and "whatever [plaintiffs] have with respect to intake forms, authorizations, medical history, pretesting exams, lab test results, etc.[,]" as well as "doctors' orders." *Id.* at 8.  Further, it included any documents "that relate to the[] decision to perform … multiplex testing rather than just COVID testing … contain[ing] whatever analysis was done to decide that patient X needed multiplex testing as opposed to just the COVID test." *Id.* at 11.  This brief will refer to all of these documents as "Medical Records."

#### 1.   *The Court should dismiss the 12,456 itemized claims for which Plaintiffs failed to produce any medical records.*

The itemized claims for which Plaintiffs seek payment are set forth in the "Damages Spreadsheet" that Plaintiffs produced in April 2021. Begos Declaration, ¶ 12. The Damages Spreadsheet itemized 12,970 separate medical services that Plaintiffs allegedly provided to 2,639 alleged Cigna members. *Id*.

Plaintiffs' compliance with this order is almost non-existent. More particularly, Plaintiffs have not produced ***any*** medical records ***at all*** for ***12,456*** of their ***12,970*** itemized claims for which they seek payment. Begos Declaration, ¶ 14, Exhibit F.

Indeed, Plaintiffs have produced relatively few documents showing that they conducted the COVID tests for which they seek reimbursement. Specifically, Plaintiffs seek payment for 3,138 itemized claims for COVID and/or multiplex testing (CPT codes 0202U (BioFire multiplex test), 87633 (BioFire multiplex test), and 87635 (SARS-CoV-2 test)), accounting for $4,403,400 of their total "billed charges." But Plaintiffs have produced documentation for only 448 tests. Begos Dec., ¶ 15. Plaintiffs' production confirms that their test system generated one or two page documents with the test results. *Id.*, Exhibit G. This means that, for 2,690 tests, for which Plaintiffs demand that Cigna pay up to $1,500 each, Plaintiffs have failed to produce a document showing that they actually ran the test for the Cigna member in question on the date alleged. *Id.*, Exhibit H.

The medical records Plaintiffs were ordered to produce included any documents "that relate to the[] decision to perform … multiplex testing rather than just COVID testing … contain[ing] whatever analysis was done to decide that patient X needed multiplex testing as opposed to just the COVID test." Ex. A at 11. Plaintiffs' production shows that they prepared Lab Requisition forms pursuant to which Dr. Murphy supposedly ordered the BioFire test. Begos Declaration, ¶ 15, Exhibit I. Of the 448 tests for which Plaintiffs produced lab test results, they produced a clinician's order for only 64 tests. In other words, for 383 of the tests that they can document performing, there is no evidence that a doctor, or nurse, or any other health care practitioner ordered the test. *Id.*, ¶ 15, Exhibit J.

Cigna's July 11 deficiency letter demanded that Plaintiffs "provide, for each of the 2,639 Patients: (1) the complete Medical Records for the dates of service at issue (including, but not limited to, medical histories, lab requisition forms, pretesting exams, and documents relating to the decision to conduct multiplex testing); and (2) the assignment executed by the Patient." Begos Declaration, Ex. C. The letter further stated: "To the extent documents for any Patients are not

9

produced, we expect Plaintiffs to acknowledge that such documents do not exist." *Id.* Plaintiffs have not responded to that letter in any way. *Id.*

Plaintiffs were required by law to create and maintain records of their treatment of patients. Specifically, Section 19a–14–40 of the Regulations of Connecticut State Agencies provides in relevant part: "The purpose of a medical record is to provide a vehicle for: documenting actions taken in patient management[.] … A medical record shall include, but not be limited to, information sufficient to justify any diagnosis and treatment rendered, dates of treatment, [and] … doctors' orders[.] … All entries must be signed by the person responsible for them." Plaintiffs cannot pursue itemized claims for payment for health services for which they refuse to produce any records, and the absence or records raises substantial doubt whether the services ever were provided. "Failure to cooperate in discovery is particularly objectionable when there is a substantial doubt about whether there are facts sufficient to support a claim." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1290, 1294 (E.D.N.Y. 1985), *aff'd*, 818 F.2d 210 (2d Cir. 1987).

Medical Records documenting the itemized claims at issue in this case are certainly within Plaintiffs possession, custody and control, assuming they were ever created. Moreover, given that Plaintiffs itemized the 12,970 claims in the lawsuit, it is reasonable to conclude that any Medical Records they had pertaining to those claims would have been gathered and reviewed in the process of drafting the Complaint and/or the Amended Complaint. Plaintiffs' failure to produce these Medical Records – without any explanation for the failure – should be taken as conclusive evidence that the Records never existed, or they existed but were destroyed by Plaintiffs, or that Plaintiffs have them but refuse to produce them.

Whichever conclusion is drawn, the appropriate remedy is to preclude Plaintiffs from introducing proof of the 12,456 itemized claims for which they have not produced any supporting

10

Medical Records. *See Applera Corp. v. MJ Rsch. Inc.*, 220 F.R.D. 13, 19 (D. Conn. 2004) (precluding defendant from introducing any expert testimony due to failure to identify experts in accordance with scheduling order).

Upon precluding this evidence, the Court should dismiss those itemized claims due to Plaintiffs' inability to prove that they provided the medical services at issue. Plaintiffs put into issue the contention that they provided the itemized health services to specific Cigna members, and "[h]aving put the issue in question, [Plaintiffs] did not have the option of blocking the reasonable attempt" by Cigna to obtain evidence regarding that issue. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 709 (1982). Rather, their "failure to supply the requested information as to [the critical issue] supports the presumption that the refusal to produce evidence ... was but an admission of the want of merit in the asserted [claim]." *Id.* (citation omitted).

The same result is reached if the Court undertakes a spoliation analysis. *See Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 343 (D. Conn. 2009) ("the appropriate sanction to adequately address the harm suffered by Pitney Bowes, penalize Innis Arden, and deter future destruction of evidence is preclusion of evidence"). In *Innis Arden*, this Court declined to impose lesser sanctions even though the destruction of evidence was not intentional, finding that a sanction of an adverse inference "does not adequately serve the prophylactic and preventative purposes of the spoliation doctrine in these circumstances." *Id.*

### 2.    *The Court should dismiss itemized claims pertaining to the 2,575 Cigna members for whom Plaintiffs have not produced an assignment.*

A significant issue on the motion to dismiss was whether Plaintiffs had standing to assert ERISA claims, and that issue revolved around whether the Cigna members had assigned their ERISA rights to Plaintiffs. Plaintiffs had alleged that "[m]any of the Cigna members who received

11

testing services at the Murphy Practice locations executed assignments of benefits forms[,]" and quoted what the standard form allegedly said. Amended Complaint, ¶ 78. They also alleged that members who "registered electronically" for tests agreed that Plaintiffs would bill their insurer. *Id.*, ¶ 79. The Court, in ruling on Cigna's motion to dismiss, held that these allegations were "sufficient to establish Plaintiff's standing at this stage of the litigation[,]" and stated that further details about assignments "are areas for discovery." Order Granting in Part Defendants' Motion to Dismiss (Doc. 48), p. 13.

As noted above, the Court ordered production of assignments as part of the "comprehensive record set" pertaining to each itemized claim. Ex. A, at 7-8, 64. Given the significance of the assignments, and the fact that Plaintiffs and their counsel affirmatively alleged that "many of the [thousands of] Cigna members" had executed assignments, Amended Complaint, ¶ 78, Cigna expected that Plaintiffs had already assembled them as part of its good faith investigation before filing the Amended Complaint.

However, Plaintiffs have produced assignments for only 64 of the 2,639 Cigna members at issue. Begos Declaration, ¶ 17. That means that Plaintiffs have *not* produced assignments for 2,575 of the 2,639 Cigna members in whose shoes Plaintiffs claim to be suing. *Id.*, Exhibit K. Plaintiffs' production of raises substantial questions about the veracity and good faith of the allegations in the Amended Complaint.

Cigna raised these deficiencies in its July 11 deficiency letter, but Plaintiffs have not produced additional assignments or otherwise responded to the letter. Begos Dec., Ex. C. The Court should preclude Plaintiffs from introducing into evidence, or relying on in any way, assignments that Plaintiffs have not yet produced.

Upon precluding Plaintiffs from introducing assignments, the Court should dismiss Plaintiffs' itemized claims pertaining to the Cigna members for whom they have not produced an assignment. The Court has already held that "[h]ealthcare providers are not 'beneficiaries' of an ERISA plan[,]" and cannot assert an ERISA benefits claim absent a valid assignment. Doc. 48, pp. 10-11.

Plaintiffs no doubt will argue (as they did in opposition to the motion to dismiss) that the CARES Act and/or the FFCRA gives them ERISA standing without the need for assignments. The Court found it unnecessary to address that argument on the motion to dismiss, because it found the allegation of assignments to be adequate. *Id.*, p. 13, note 8. However, the issue has been clarified since the Court ruled on the motion to dismiss, because two district courts have held that neither the CARES Act nor the FFCRA gives out-of-network providers standing to assert ERISA claims for COVID testing services.

*Saloojas, Inc. v. Aetna Health of California, Inc.*, No. 22-cv-02887-JSC, 2022 WL 4775877 (N.D. Cal. Sept 30, 2022), which held that the FFCRA and CARES Act did not create an implied private right of action for COVID test providers, also dismissed Saloojas' ERISA benefits claim. After holding that Saloojas had failed to adequately allege its receipt of valid assignments from the plan members at issue, the court also rejected Saloojas' argument that the CARES Act and the FFCRA gave it standing under ERISA, holding that the argument "is not correct as a matter of law." 2022 WL 4775877, at *3. The court noted that Saloojas did not identify any "specific text in either statute purporting to amend ERISA's requirements for statutory standing." *Id.* To the contrary, the court held that the references to ERISA in the CARES Act and the FFCRA suggested that the statutes "incorporate and harmonize with ERISA's enforcement scheme[,]" confirming that there is "no legal support for Plaintiff's contention that the CARES Act and FFCRA have

obviated the need for a provider to obtain assignment in order to seek reimbursement under ERISA." *Id.*

Similarly, in *Saloojas, Inc. v. Cigna Healthcare of California, Inc.*, No. 22-cv-03270-CRB, 2022 WL 5265141, at *7 (N.D. Cal. Oct. 6, 2022), a different judge also dismissed ERISA benefits claims for COVID testing services, expressly adopting the reasoning of *Saloojas v. Aetna*. Particularly, *Saloojas v. Cigna* held that "Saloojas provides no reasoning or caselaw for the argument the FFCRA and the CARES Act have altered ERISA's standing requirements, and the text and structure of the statutes provide no more clues." *Id.*

### 3.   *The Court should preclude Plaintiffs from introducing medical records that they have not already produced.*

Of the 12,970 itemized claims at issue in this action, almost 10,000 (9,832 to be precise) seek payment for health services other than COVID testing. Begos Dec., ¶ 18. For example, Plaintiffs have asserted claims for 8,917 instances of evaluation/management services (what a layperson would call an office visit). These CPT codes designate "new patient" visits of increasing complexity (CPT 99201, 99202, 99203, 99204), "established patient" visits of increasing complexity (CPT 99211, 99212, 99213, 99214), and telemedicine visits (CPT 99421). Moreover, Plaintiffs have asserted claims for more than 800 venipunctures ( CPT 36410, 36415, 82787). *Id.*.

Plaintiffs produced relatively few records of those services. For example, Plaintiffs produced progress notes for only 16 patients; intake forms for only 5 patients; medical histories for only 5 patients, and other types of medical records for only 7 patients. Begos Dec., ¶ 19.

The absence of medical histories is significant, because Plaintiffs have alleged that it was medically appropriate for them to order (and charge extra for) their BioFire multiplex test for Patients who arrived at a testing site with active COVID symptoms. Amended Complaint (Doc. 29), ¶ 36. Plaintiffs were required to create a medical record establishing that a patient reported

14

(or that the clinical staff observed) symptoms, and what they were. CT. Reg. 19a-14-40 ("A medical record shall include, but not be limited to, information sufficient to justify any diagnosis and treatment rendered[.]").

Cigna raised these deficiencies in its July 11 deficiency letter, but Plaintiffs have not produced additional documents or otherwise responded to the letter. Begos Dec., Ex. C. The Court should preclude Plaintiffs from introducing into evidence, or relying on in any way, Medical Records that Plaintiffs have not produced. *See S.E.C. v. Benson*, No. 84 CIV. 2262 (PNL), 1985 WL 1308, at *2 (S.D.N.Y. Apr. 9, 1985) ("a litigant may not maintain a position while refusing to furnish basic discovery of it. … He is appropriately precluded from offering evidence in support of the positions whose basis he refused to disclose.").

**B.      Plaintiffs Have Failed to Produce Documents Regarding Their Cash Prices**

One of Plaintiffs' central contentions is that the FFCRA and the CARES Act obligated Cigna to pay "the full cash price" for all "COVID-19-related" services and procedures that were allegedly provided to Cigna's members or beneficiaries. Amended Complaint, ¶¶ 53, 56-57, 63-64, 66, 69, 108. Section 3202(b)(1) of the CARES Act requires that providers, like Plaintiffs, "shall make public the cash price for such test on a public internet website."

Document Request 9 demanded production of "All documents and communications concerning Your and the Murphy Practice's cash prices for COVID-19 testing and COVID-19 related services, including changes to same, including the date(s) when such prices were publicly available, and where they were publicly available." Request 20 also sought documents regarding "edits, revisions, updates from January 2020 on any web page, blog, ad or promotional material." Plaintiffs did not produce responsive documents.

15

Plaintiffs' attorney admitted during the argument on the motion to compel that "for a big chunk of the initial time period [of the pandemic], the actual [cash] rice was not up on the website." March 2022 Order, p. 52.  As the Court noted, "that's going to be a problem for you[.]" *Id.* The Court continued: "Request number 9 is perfectly sound for documentation related to the posted cash prices on the plaintiffs' website at whatever point. You may not have it, but to the extent you have it, it's very much in your interest to be hunting for it, right?" *Id.*, p. 53. The Court then ordered: "So I think that 9 and 20 fall into the same category, and, obviously, you can't produce what doesn't exist, but that lets Mr. Begos know what it is you can prove. So that will all be subject to [production within] the 30-day time period." March 22 Order, p. 54.

To date, Plaintiffs have not produced documents regarding when the prices they claim to be the "cash prices" that Cigna allegedly is obligated to pay were posted on their website.  Begos Dec., ¶ 20. This failure to produce is highly relevant; as the Court suggested that, if Plaintiffs could not establish that they had posted a cash price when a COVID test was performed, Cigna likely is not obligated to pay anything for that test. *Id.*, p. 52 ("Then probably you pay zero[.]").

As noted, Plaintiffs have admitted that there was a period of time for which they did not post cash prices. They have not produced any documents establishing that they did have a cash price posted when any of the COVID tests at issue in this case were allegedly conducted. Under the circumstances, the Court should preclude Plaintiffs from introducing evidence that they posted a cash price on the date that any of the itemized medical services at issue was allegedly conducted. *See S.E.C. v. Benson*, *supra*.

### C.    Plaintiffs Have Failed to Produce Documents Regarding the Tortious Interference Claim

Plaintiffs asserted a claim for tortious interference with its contracts and/or business relationships with test site sponsors by allegedly "making defamatory and malicious statements

16

about Dr. Murphy and the Murphy Practice to their patients and others." Amended Complaint, ¶ 198. The March 2022 Order required Plaintiffs to fully comply with a number of requests that concerned the alleged communications between various parties and non-parties relevant to that claim. The Requests at issue demanded production of the following:

> **Request 12:** All documents concerning Cigna's communications to patients concerning their personal responsibility for the Murphy Practice's charges as alleged in Paragraph 66 of the Complaint.

> **Request 13:** All documents concerning communications, including but not limited to complaints, that You received from patients, testing site sponsors and "others" as alleged in Paragraph 65 of the Complaint.

> **Request 21:** All documents concerning communications between You and the media concerning the status of Cigna's reimbursement for their COVID-19 testing-related services.

> **Request 23:** Copies of written "defamatory and malicious statements" made by Cigna as alleged in Paragraphs 15 and 134-135 of the Complaint.

The Court noted that all of these requests sought discovery regarding "what plaintiff received that alerted it that Cigna was defaming it[.]" March 2022 Order, p. 61. Plaintiffs' attorney noted that his "understanding is that there is no documentation of that. I will double check." *Id.* To which the Court responded: "Okay, But they need to know that." *Id.*. To date, Plaintiffs have not produced any responsive documents, or stated that no responsive documents exist. Begos Dec., ¶ 24. Accordingly, they have not complied with the March 2022 Order, and the Court should preclude Plaintiffs from introducing documentary evidence of any alleged defamatory statement by Cigna.

In addition, the Court ordered production in response to Request 3, which sought the following:

> **Request 3:** All documents concerning any city, town, organization or facility with which You contracted or otherwise established a relationship for purposes of providing COVID-19 testing and testing-related services, including communications with them, and the termination by cities, towns organizations and facilities of their relationships with You, as alleged in Paragraph 68 of the Complaint.

17

The Court ordered Plaintiffs to produce emails or any documents related to the termination of permission for Plaintiffs to use any testing sites. March 2022 Order, p. 27-28. Plaintiffs' supplemental document production includes communications with only three municipalities (Bedford, Darien and Brooklyn) regarding termination of the relationship. Begos Dec., ¶ 26.

Cigna requires information regarding Plaintiffs' use of the testing sites, and the termination of their use of the testing sites, to develop its defenses to Plaintiffs' tortious interference claim.

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant Cigna's motion in its entirety.

Respectfully submitted,


DEFENDANTS,

CIGNA   HEALTH   AND   LIFE   INSURANCE COMPANY   and   CONNECTICUT   GENERAL LIFE INSURANCE COMPANY


By:    /s/ Patrick W. Begos
         Patrick W. Begos (ct19090)
         Theodore J. Tucci (ct05249)
         Milanna Datlow (ct30402)
         Robinson & Cole LLP
         1055 Washington Boulevard
         Stamford, CT  06901
         Telephone: (203) 462-7500
         Fax: (203) 462-7599

         *Their Attorneys*

18

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2022, a copy of the foregoing Memorandum of Law in Support of Defendants' Motion for Order Compelling Discovery Responses was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Patrick W. Begos
Patrick W. Begos

19