**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

------------------------------------------------------------------------- x
MURPHY MEDICAL ASSOCIATES, LLC; DIAGNOS- :
TIC AND MEDICAL SPECIALISTS OF GREENWICH, :
LLC; NORTH STAMFORD MEDICAL ASSOCIATES, :
LLC; COASTAL CONNECTICUT MEDICAL GROUP, :    3:20-cv-01675-JBA
LLC; and STEVEN A.R. MURPHY, MD, :
                                             :
          Plaintiffs, :
V. :
                                             :
CIGNA HEALTH AND LIFE INSURANCE COMPANY :
and CONNECTICUT GENERAL LIFE INSURANCE :    January 13, 2023
COMPANY, :
                                             :
          Defendants. :
------------------------------------------------------------------------- X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MO-
TION TO DISMISS THE THIRD AMENDED COMPLAINT**

Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-8200
Fax: (860) 275-8299

*Attorneys for Cigna Health And Life Insur-
ance Company and Connecticut General
Life Insurance Company*

*Of Counsel*:
*Patrick W. Begos*
*Theodore J. Tucci*
*Milanna Datlow*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

I.     INTRODUCTION ......................................................................................................... 1

II.    RELEVANT ALLEGATIONS........................................................................................ 3

III.   LEGAL STANDARD ON A MOTION TO DISMISS .................................................... 5

IV.    ARGUMENT ................................................................................................................. 6

       A.    Plaintiffs' CUIPA/CUTPA Claim Fails as a Matter of Law................................ 6

             1.   Plaintiffs have not plausibly alleged that any non-ERISA plan
                  involved "the business of insurance"........................................................... 7

             2.   Plaintiffs cannot assert a CUIPA/CUTPA claim on behalf of their
                  patients .................................................................................................... 10

             3.   Plaintiffs have not alleged facts establishing any act prohibited by
                  CUIPA....................................................................................................... 11

             4.   Plaintiffs have not alleged a general business practice............................ 19

             5.   Plaintiffs have not pleaded the elements of a CUTPA claim with
                  particularity ............................................................................................. 21

       B.    Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law ......................... 23

V.     CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*,
  317 Conn. 602 (2015) ........................................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................5, 6

*Austrian v. United Health Group, Inc.*,
  No. X06CV054010357S, 2007 WL 2363301 (Conn. Sup. Ct. July 17, 2007).......................10

*Bacewicz v. NGM Ins. Co.*,
  No. 3:08cv1530 (JCH), 2009 WL 1929098 (D. Conn. June 30, 2009) ...................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................5, 6

*Carford v. Empire Fire & Marine Ins. Co.*,
  94 Conn. App. 41 (2006) ....................................................................................................9

*Ciambrello v. Cty. of Nassau*,
  292 F.3d 307 (2d Cir. 2002)................................................................................................6

*Collins v. DePaul Hosp.*,
  963 F.2d 303 (10th Cir. 1992) ..........................................................................................16

*Conn. Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
  No. 3:19-CV-839 (JCH), 2020 WL 6888272 (D. Conn. Jan. 17, 2020)...........................14, 20

*Dekutowski-Cook v. Pavalock*,
  No. HHB-CV-054005970-S, 2006 WL 251167 (Conn. Super. Ct. Jan. 9,
  2006) ..............................................................................................................................21

*Doucette v. Pomes*,
  247 Conn. 442, 724 A.2d 481 (1999) .................................................................................7, 8

*Ferrari v. U.S. Equities Corp.*,
  No. 3:13-CV-00395, 2014 WL 5144736 (D. Conn. Oct. 14, 2014) ......................................21

*Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc.*,
  309 Conn. 449 (2013) ......................................................................................................10

*Flores v. Southern Peru Copper Corp.*,
  343 F.3d 140 (2d Cir. 2003)................................................................................................5

*Garcia v. City of Bridgeport*,
   306 Conn. 340, 51 A.3d 1089 (2012) ...............................................................7, 8

*Grp. Life & Health Ins. Co. v. Royal Drug Co.*,
   440 U.S. 205 (1979)...........................................................................................8

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009)................................................................................12

*Hartford Roman Cath. Diocesan Corp. v. Interstate Fire & Cas. Co.*,
   199 F. Supp. 3d 559 (D. Conn. 2016), aff'd, 905 F.3d 84 (2d Cir. 2018) ...............20

*Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*,
   No. 13-21895-CIV, 2013 WL 3810617 (S.D. Fla. July 22, 2013) ...........................24

*Keller v. Beckenstein*,
   117 Conn. App. 550 (2009), cert. denied, 294 Conn. 913 (2009) ...........................21

*Kittay v. Kornstein*,
   230 F. 3d 531 (2d Cir. 2000)...............................................................................5

*Lees v. Middlesex Ins. Co.*,
   229 Conn. 842 (1994) .......................................................................................19

*Macamaux v. Day Kimball Hosp.*,
   No. 3:09-CV-164-JCH, 2011 WL 4352007 (D. Conn. Sept. 16, 2011) ...................16

*Martin v. American Equity Ins. Co.*,
   185 F. Supp. 2d 162 (D. Conn. 2002).................................................................12

*Mastafa v. Chevron Corp.*,
   770 F.3d 170 (2d Cir. 2014)................................................................................5

*Mazzarella v. Amica Mut. Ins. Co.*,
   774 F. App'x 14 (2d Cir. 2019) .........................................................................20

*MC1 Healthcare, Inc. v. United Health Grp., Inc.*,
   No. 3:17-CV-01909 (KAD), 2019 WL 2015949 (D. Conn. May 7, 2019) ...............23

*Nationwide Mut. Fire Ins. Co. v. Hermann*,
   No. CV126009631S, 2014 WL 4817899 (Conn. Super. Ct. Aug. 25, 2014) ...........19

*Nazami v. Patrons Mut. Ins. Co.*,
   280 Conn. 619 (2006) .........................................................................................6

*New York Grp. for Plastic Surgery LLP v. Anthem Blue Cross*,
   No. 20-CV-4234 (JPO), 2022 WL 524106 (S.D.N.Y. Feb. 22, 2022) ....................23

*O'Neill v. Riversource Life Ins Co.*,
No. 10-cv-898(JCH), 2010 WL 3925988 (D. Conn. Sept. 29, 2010)......................................12

*Pac. Ins. Co., Ltd. v. Champion Steel, LLC*,
323 Conn. 254 (2016) ...........................................................................................................9

*Papasan v. Allain*,
478 U.S. 265 (1986)...............................................................................................................5

*Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*,
No. 14-81271-CV, 2015 WL 2198470 (S.D. Fla. May 11, 2015)...........................................24

*Pettengill v. Fireman's Fund Ins. Co.*,
No. 3:13-cv-154 (WWE), 2013 WL 4054635 (D. Conn. Aug. 12, 2013) ...............................12

*Prucker v. Am. Economy Ins. Co.*,
No. CV186013630S, 2019 WL 2880369 (Conn. Sup. Ct. May 31, 2019)..............................19

*Roberts v. Liberty Mut. Fire Ins.Co.*,
264 F. Supp. 3d 394 (D. Conn. 2017)...................................................................................14

*SEC v. Natl. Securities, Inc.*,
393 U.S. 453 (1969)...............................................................................................................8

*State v. Acordia, Inc.*,
310 Conn. 1, 73 A.3d 711 (2013) .........................................................................6, 7, 9, 11, 22

*Sullivan v. Allstate Ins. Co.*,
No. CV-054008548, 2006 WL 1000236 (Conn. Super. Ct. Mar. 28, 2006) ..........................21

*Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*,
150 F. Supp. 2d 556 (S.D.N.Y. 2001)...................................................................................23

*Traylor v. Awwa*,
899 F. Supp. 2d 216 (D. Conn. 2012)...................................................................................19

*Trenwick Am. Reinsurance Corp. v. W.R. Berkley Corp.*,
138 Conn. App. 741 ...........................................................................................................22

*Vertex, Inc. v. Waterbury*,
278 Conn. 557 (2006) .........................................................................................................22

**Statutes**

42 U.S.C. § 1395dd(a) ...............................................................................................................16

Conn. Gen. Stat. § 38a-1 ...........................................................................................................7, 8

Conn. Gen. Stat. § 38a-477aa ..................................................................................................15, 16

Conn. Gen. Stat. § 38a-591a(14) ...........................................................................................15

Conn. Gen. Stat. § 38a-815 ......................................................................................................6

Conn. Gen. Stat. § 38a-816...............................................................6, 7, 11, 12, 13, 17, 18, 19

Conn. Gen. Stat. § 42-110b(a) ..................................................................................................6

**Other Authorities**

Federal Rule of Civil Procedure 8 ............................................................................................5

Federal Rule of Civil Procedure 12(b)(6) ............................................................................1, 5

https://portal.ct.gov/~/media/CID/1_Bulletins/Bulletin-IC-39......................................................4

https://www.nbcconnecticut.com/news/local/ct-insurers-agree-to-cover-costs-of-
    covid-19-testing/2236045/ ............................................................................................16

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants, Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (collectively, "Cigna"), move to dismiss the Second and Third Causes of Action in the Third Amended Complaint ("TAC") (Doc. No. 92) with prejudice, for failure to state claims on which relief can be granted.

## I.    INTRODUCTION

Plaintiffs, non-participating healthcare providers, have challenged Cigna's determinations denying their claims for Covid testing services Plaintiffs allegedly rendered to individuals enrolled in Cigna health plans.

The TAC is Plaintiffs' third attempt to assert claims under the Connecticut Unfair Trade Practices Act ("CUTPA") for alleged violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") (Second Cause of Action), and for unjust enrichment (Third Cause of Action). The Court dismissed those claims in Plaintiffs' First Amended Complaint because ERISA preempted all of their state law claims; the Court therefore did not address Cigna's arguments that Plaintiffs had failed to state claims on which relief could be granted. (Doc. No. 48, pp. 18-23). Plaintiffs then moved for reconsideration (Doc. No. 50), and the Court granted leave to amend to assert claims for CUIPA/CUTPA and unjust enrichment limited to non-ERISA plans. (Doc. No. 71: noting that Plaintiffs had "clarified" that their original CUIPA/CUTPA and unjust enrichment claims "related to both ERISA and non-ERISA plans").

After Cigna filed its Motion for Prefiling Conference summarizing the deficiencies in the re-pleaded Second and Third Causes of Action (Doc. No. 78), Plaintiffs sought and received permission to file the TAC, purportedly to address those deficiencies that Cigna had identified. Their efforts were unsuccessful, and the Court should dismiss the Second and Third Causes of Action.

*First*, CUIPA violations can only occur in connection with "the business of insurance," and Plaintiffs have not alleged facts from which it can plausibly be concluded that the conduct alleged to violate CUIPA occurred in connection with the business of insurance.

*Second*, even if there is a plausible connection to the business of insurance, non-parties to an insurance contract cannot assert a CUIPA claim. Though there are limited exceptions to this rule, Plaintiffs have not alleged any facts sufficient to conclude that any exception applies to them.

*Third*, Plaintiffs' allegations of violations of specific CUIPA provisions are conclusory, and largely quote or parrot statutory language. They do not allege facts supporting a plausible violation of any of the enumerated unfair insurance practices.

*Fourth*, most of the CUIPA provisions Plaintiffs rely on require them to allege facts establishing that Cigna engaged in the alleged unfair conduct as a general business practice. Routinely rejecting claims submitted by the same provider, where there is no allegation that Cigna did the same with multiple other providers, does not rise to the level of a general business practice.

*Fifth*, even if the TAC had alleged a viable CUIPA theory, Plaintiffs' allegation that it constitutes a CUTPA violation is conclusory, and merely quotes or parrots statutory language. CUTPA claims must be pleaded with particularity, and Plaintiffs have failed to do so.

Plaintiffs' unjust enrichment cause of action also fails to state a claim. Unjust enrichment requires pleading and proving that Cigna benefitted from the services for which Plaintiffs seek reimbursement. Courts have repeatedly held that providers cannot bring unjust enrichment claims against insurance companies based on the services rendered to insureds, primarily because they cannot establish the required element that the insurer received a benefit from the services provided to the insured. Plaintiffs do not allege facts supporting the plausible conclusion that providing a Covid test for a Cigna member benefitted Cigna in any way.

## II.    RELEVANT ALLEGATIONS

Plaintiffs are "out-of-network or non-participating" healthcare providers, which means that they "do not have contracts" with Cigna. (TAC, ¶¶ 50, 78). Plaintiffs' CUIPA/CUTPA and unjust enrichment claims seek payment for "thousands of COVID-19 diagnostic tests, as well as related medically necessary testing and services" that Plaintiffs allegedly provided to unspecified individuals who participated in unspecified "non-ERISA plans" that Cigna allegedly administered. (*Id.*, ¶¶ 1, 127, 179).

Plaintiffs allege that, when a Cigna member sought a Covid test, Plaintiffs performed a "multiplex" test that detected "COVID-19, as well as other common respiratory virus and bacterial infections" if the member was either symptomatic "or otherwise had a need for expedited results." (*Id.*, ¶¶ 34, 36). Plaintiffs allege that the FFCRA and the CARES Act require "insurers … to pay 'out of network' providers their full cash price for the test[,]" (*id.*, ¶ 56), but they do not allege that they posted a cash price for their test or what it was; nonetheless, the claim detail Plaintiffs submitted with their complaint shows that they seek to collect up to $1,500 per test. In addition, Plaintiffs claim that, when a Cigna member sought a Covid test, they performed ancillary medical services such as blood testing, "telemedicine preventive medicine counseling and education," as well as additional telemedicine visits "during the time period between the day the sample was taken and the results were available[.]" (*Id.*, ¶¶ 37-41). They do not allege that insurers are obligated to pay cash prices for such ancillary services, or that they posted cash prices for those services.

Plaintiffs have not identified any of the non-ERISA plans implicated in their state law claims, beyond alleging, in conclusory fashion: "some, but not all, of the patients the Murphy Practice treated were enrolled in Cigna health plans that were not governed by ERISA." (*Id.*, ¶ 91). Plaintiffs allege that some plans are non-ERISA plans "because, on information and belief, some of the health plans were sponsored by state or municipal governmental entities that are exempt from

3

ERISA, and some of the plans do not involve employee benefit funds." *Id.* Plaintiffs have not identified the Cigna members who participated in those non-ERISA plans, or the services Plaintiffs allegedly provided to them. Plaintiffs have produced a spreadsheet of health services at issue in the litigation, but that spreadsheet does not identify the Cigna members who were enrolled in non-ERISA plans.

Plaintiffs allege that Cigna's "refusal to comply with the FFCRA and the CARES Act and Connecticut Law, as well as those actions described above at paragraphs 83 through 90, and 92 through 99, constitute unfair claims settlement practices in violation of" CUIPA. (*Id.*, ¶ 139). However, paragraphs 83 through 90 of the TAC allege a failure to comply with ERISA procedural requirements, which plainly do not apply to non-ERISA plans.

Paragraphs 92 through 95 allege that the FFCRA and CARES Act imposed on Cigna "obligations [to] reimburse the practice" and that "Cigna's persistent refusal to provide coverage" violates Plaintiff's "right to recover under the theories of unjust enrichment, and under [CUIPA/CUTPA]." (*Id.*, ¶¶ 92, 94). Thus, the TAC makes clear that the CUIPA/CUTPA and unjust enrichment claims are not based on a contention that Cigna refused to pay benefits required by the express terms of any of the non-ERISA plans. Instead, they are based on a contention that payment was required by directives external to the plans, namely, the FFCRA and the CARES Act. (*Id.*, ¶ 95). Indeed, Plaintiffs allege that the FFCRA and CARES Act required coverage of services rendered by out-of-network doctors, even where the plan in question expressly did not cover such services. Specifically, the TAC states that "[s]ome healthcare plans provide no 'out of network' benefits at all," and that "many plans will pay only a percentage of 'out of network' charges," but then notes that the FFCRA and CARES Act "addressed how insurers were required to reimburse both 'in network' and 'out of network' providers." (*Id.*, ¶¶ 52, 53).

4

Paragraphs 96 through 99 allege that Cigna "made defamatory and malicious statements about the Murphy Practice and Dr. Murphy to its patients and others." (*Id.*, ¶ 96). Plaintiffs do not allege how CUIPA prohibits such conduct, if it occurred.

Regarding Cigna's purported refusal to comply with Connecticut law, Plaintiffs allege that Connecticut's surprise billing law applies to "*symptomatic* patients that appeared to the Murphy Practice for testing[]" (*id.*, ¶ 132), but Plaintiffs do not allege which, if any, of the 2,000-plus Cigna members they allegedly tested arrived at a testing site with Covid symptoms (even though that information is entirely in Plaintiffs' possession, and they have had years to review those records).[1]

Finally, Plaintiffs admit that, whatever the terms of the non-ERISA plans in question, and whatever obligations the FFCRA or CARES Act imposed, *Cigna members* who participated in those plans have not sustained any harm or ascertainable loss. Specifically, Plaintiffs assert that "the Murphy Practice has not and will not bill a Cigna member or beneficiary … for any of these services." (*Id.*, ¶ 101).

Thus, at bottom, Plaintiffs' core theory in their state law claims is that they can provide whatever services they wish to a person seeking only a Covid test; they could charge whatever rate they desired for those services; and Cigna committed unfair insurance practices or was unjustly enriched if it did anything other than simply pay what Plaintiffs demanded.

### III.    LEGAL STANDARD ON A MOTION TO DISMISS

Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay v. Kornstein*, 230 F. 3d 531,

---

[1] Plaintiffs cite an Insurance Department press release as allegedly establishing that "state law mandated that Cigna reimburse the Murphy Practice for COVID-19 testing and related services[,]" (*id.*, ¶ 131, n. 15), but that press release merely describes the manner in which the Insurance Department "*encourages*" insurers to handle insurance claims. https://portal.ct.gov/~/media/CID/1_Bulletins/Bulletin-IC-39.

541 (2d Cir. 2000) (quotation marks omitted). When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint. *See Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003). However, Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility exists when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[.]" *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (quotation marks omitted). Nor are courts "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 678 (quoting *Twombly*, 550 U.S. at 557). Accordingly, "complaints containing only conclusory, vague, or general allegations . . . are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambrello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (quotation marks omitted).

### IV.    ARGUMENT

#### A.    Plaintiffs' CUIPA/CUTPA Claim Fails as a Matter of Law

The Second Count alleges that Cigna engaged in unfair claims settlement practices and failed to timely pay insurance claims in violation of CUIPA, Conn. Gen. Stat. § 38a-816(6), (15), which allegedly gives rise to a claim under CUTPA, Conn. Gen. Stat. § 42-110b(a). (TAC, ¶¶ 122-167). Plaintiffs allege "[t]his claim concerns patients with non-ERISA plans" (id., ¶ 127).

CUIPA "does not authorize a private right of action." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 317 Conn. 602, 623 (2015). However, "individuals may bring an action under CUTPA for violations of CUIPA." *Id.* "[I]n order to sustain a CUIPA cause of action under CUTPA, a plaintiff must allege conduct that is proscribed by CUIPA." *Nazami v. Patrons Mut. Ins. Co.*, 280 Conn. 619, 625 (2006). It is well-established that "if a plaintiff brings a claim pursuant to CUIPA alleging an unfair insurance practice, and the plaintiff further claims that the CUIPA violation constituted a CUTPA violation, the failure of the CUIPA claim is fatal to the CUTPA claim." *State v. Acordia, Inc.*, 310 Conn. 1, 31, 73 A.3d 711, 729 (2013).

### 1. *Plaintiffs have not plausibly alleged that any non-ERISA plan involved "the business of insurance."*

CUIPA is expressly limited to specific unfair conduct that occurs in the "business of insurance." Specifically, CUIPA provides, in pertinent part: "No person shall engage in this state in any trade practice which is defined in section 38a-816 as … an unfair method of competition or an unfair or deceptive act or practice *in the business of insurance*[.]" C.G.S. § 38a-815 (emphasis added). C.G.S. § 38a-816 identifies the specific acts that "are defined as unfair methods of competition and unfair and deceptive acts or practices *in the business of insurance*[.]" (emphasis added). This list is exclusive. *Acordia*, 310 Conn. at 21 ("The itemization of different types of unfair insurance practices in § 38a–816 is significant. We have stated that unless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive." (quotation marks and brackets omitted)).

The statute defines "insurance" to require an assumption of risk by the insurer. In particular, C.G.S. § 38a-1(11) defines "insurance" as follows:

> "Insurance" means any agreement to pay a sum of money, provide services or any other thing of value on the happening of a particular event or contingency or to provide indemnity for loss in respect to a specified subject by specified perils in return for a consideration. *In any contract of insurance, an insured shall have an interest which is*

7

*subject to a risk of loss through destruction or impairment of that interest, which risk is assumed by the insurer and such assumption shall be part of a general scheme to distribute losses among a large group of persons bearing similar risks in return for a ratable contribution or other consideration.* (emphasis added).

Thus, it is plain that a relationship in which a company merely provides administrative services for a self-funded health plan does not involve "insurance," because there is no assumption of risk on the part of the administrator. *Doucette v. Pomes*, 247 Conn. 442, 456–57, 724 A.2d 481, 489 (1999) ("the legislature defines insurance as the assumption of another's risk for profit. An employer that self-insures … retains its own risk[.] … Therefore, according to the language of § 38a–1 (10) [now (11)], the definition of insurance does not include self-insurance[.] … Additionally, we recognize the substantial authority for the position that self-insurance is not insurance at all."); *Garcia v. City of Bridgeport*, 306 Conn. 340, 355, 51 A.3d 1089, 1099 (2012) ("our statutes define insurance as the assumption of another's risk for profit.").[2]

Plaintiffs allege in conclusory fashion that the CUIPA/CUTPA "claim concerns patients with non-ERISA plans that Cigna either insures benefits or asserts complete control over the claims adjudication process as a third-party administrator of the non-ERISA health plans." (TAC, ¶ 127).

Plaintiffs allege, "on information and belief, some of the health plans are fully insured by Cigna." (TAC, ¶ 124). Plaintiffs do not allege which patients they allegedly tested were covered by non-ERISA health plans that Cigna insured, and the Court cannot simply assume the truth of this conclusory allegation because it is well-known that most health plans are self-funded by the entity establishing the plan (typically the employer or union).

---

[2] This statutory definition is consistent with the common legal definition of insurance: "The primary elements of an insurance contract are the spreading and underwriting of a policyholder's risk. It is characteristic of insurance that a number of risks are accepted, some of which involve losses, and that such losses are spread over all the risks so as to enable the insurer to accept each risk at a slight fraction of the possible liability upon it." *Grp. Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 211 (1979) (quotation marks omitted).

8

Plaintiffs' allegation does admit, however, that some number of the non-ERISA plans are self-funded. Where the entity establishing the plan is responsible for paying benefits, and hires Cigna merely to provide administrative services, the relationship does not involve *the business of insurance. Doucette, supra; Garcia, supra*. Specifically, where Cigna provides only administrative services and does not pay benefits from its own funds, there is no "risk … assumed by" Cigna as "part of a general scheme to distribute losses among a large group of persons bearing similar risks in return for a ratable contribution or other consideration." C.G.S. § 38a-1(11).

Plaintiffs' conclusory allegation that administration of a self-funded plan is the "business of insurance" when the administrator "asserts total control over the claims adjudication process" finds no support in CUIPA. In particular, Plaintiffs seek to conflate the "business of insurance *companies*" with the "business of *insurance*." *See SEC v. Natl. Securities, Inc.*, 393 U.S. 453, 459–460 (1969) ("The statute did not purport to make the States supreme in regulating all the activities of insurance *companies*; its language refers not to the persons or companies who are subject to state regulation, but to laws 'regulating the *business* of insurance.' Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the 'business of insurance' does the statute apply." (Emphasis in original.)).

Plaintiffs' failure to allege any facts plausibly establishing that the non-ERISA plans at issue in this claim involve insurance precludes them from invoking CUIPA, and this dooms a CUTPA claim premised on a violation of CUIPA. Because Plaintiffs have now amended their complaint for a third time, they should not be given leave to amend again, and the CUIPA/CUTPA claim should be dismissed with prejudice. In the event the Court accepts as sufficient Plaintiffs' conclusory allegation that some of the non-ERISA plans are insured plans, the Court should nonetheless dismiss the CUIPA/CUTPA claim as to the self-funded non-ERISA plans.

### 2. *Plaintiffs cannot assert a CUIPA/CUTPA claim on behalf of their patients.*

"[T]he underlying purpose of CUIPA [is] enabling the commissioner to better protect consumers[,]" *i.e.*, insureds. *Acordia, Inc.*, 310 Conn. at 26. Thus, non-parties to the insurance contract are generally prohibited from asserting a CUIPA/CUTPA claim: "the right to assert a private cause of action for CUIPA violations through CUTPA does not extend to third parties absent subrogation or a judicial determination of the insured's liability." *Carford v. Empire Fire & Marine Ins. Co.*, 94 Conn. App. 41, 53 (2006).

Plaintiffs allege that they received assignments from Cigna members, but *Carford* does not recognize mere assignments as sufficient to allow a non-insured to assert a private cause of action for CUIPA. More specifically, receipt of an assignment is not the equivalent of subrogation, and Plaintiffs have not alleged facts supporting a plausible conclusion that that they have been subrogated to the rights of any Cigna insured. To allege subrogation to a particular Cigna insured, Plaintiffs must allege facts demonstrating that they indemnified the insured against a loss caused by Cigna, or acquired debts the Cigna owed to the insured. *Pac. Ins. Co., Ltd. v. Champion Steel, LLC*, 323 Conn. 254, 261 (2016) ("Subrogation … allows one party … to assert the legal rights or claims of another person … against a third party … when the subrogee has indemnified the subrogor for a loss caused by the third-party[.]" (emphasis added)); *Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc.*, 309 Conn. 449, 455 (2013) ("subrogation allows a party who has paid a debt to step into the shoes of another … to assume his or her legal rights against a third party[.]"). Instead, the TAC alleges facts that preclude subrogation. Plaintiffs admit that they never charged Cigna insureds for the Covid tests or services at issue (TAC, ¶ 101). Thus, there is no possibility of a debt or liability arising out of the benefit claims at issue.

10

Thus, Plaintiffs fail to establish that they are proper parties to assert a CUIPA/CUTPA claim against Cigna. Accordingly, the CUIPA/CUTPA claim fails as a matter of law and the Court should dismiss it with prejudice.

This brief will now discuss the fatal substantive defects in the CUIPA/CUTPA claim. However, it is not necessary for the Court to reach any of these arguments if it concludes, as it should, that Plaintiffs have not alleged that CUIPA applies at all, or, if it does, that they have the ability to assert a CUIPA claim.

### 3. *Plaintiffs have not alleged facts establishing any act prohibited by CUIPA.*

C.G.S. § 38a–816, which consists of twenty-two subsections describing actionable conduct under CUIPA, "is not merely a list, it expressly identifies itself as a *definitional* statute. … By framing the list as a definitional one, the legislature already constrained the discretion of courts to look to other sources in finding a particular insurance practice to be 'unfair' in violation of CUIPA." *Acordia*, 310 Conn. at 21 (citation omitted; emphasis in original).

Plaintiffs allege that Cigna violated CUIPA by failing to comply with  the FFCRA and the CARES Act, or with Connecticut's surprise bill law; or its alleged defamation of Plaintiffs. But none of that alleged conduct is "proscribed by CUIPA" in § 38a-816. Therefore, the TAC's core allegations are entirely disconnected from CUIPA.[3]

More specifically, Plaintiffs allege that Cigna's actions constitute several "unfair settlement practices" under § 38a–816(6), and (15). (TAC, ¶¶ 140-149). The relevant sections state as follows:

> The following are defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance: …

---

[3] CUIPA also "authorize[s] the commissioner to act in the event that a person is engaging in a practice that had not yet been defined expressly as an unfair insurance practice in § 38a–816, but that could possibly, following a hearing conducted by the commissioner, be determined to constitute an unfair or deceptive insurance practice." *Id.* at 23. Here, the TAC does not allege that the Commissioner of Insurance has made a finding that any of the alleged conduct is an unfair insurance practice, or even that the Commissioner has initiated a hearing on that question.

(6) Unfair claim settlement practices. Committing or performing with such frequency as to indicate a general business practice any of the following: … (d) refusing to pay claims without conducting a reasonable investigation based upon all available information; … (f) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; … (h) attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application; … (l) delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information; … (n) failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement[.]

(15) (A) Failure by an insurer, or any other entity responsible for providing payment to a health care provider pursuant to an insurance policy, to pay accident and health claims, including, but not limited to, claims for payment or reimbursement to health care providers, within the time periods set forth in subparagraph (B) of this subdivision, unless the Insurance Commissioner determines that a legitimate dispute exists as to coverage, liability or damages or that the claimant has fraudulently caused or contributed to the loss. …

Plaintiffs' allegations that Cigna violated these provisions do little more than quote or parrot the statutory language. Such conclusory allegations are insufficient to support Plaintiffs' assertions that Cigna engaged in the forbidden insurance practices under CUIPA. *See O'Neill v. Riversource Life Ins  Co.*, No. 10-cv-898(JCH), 2010 WL 3925988, at *3 (D. Conn. Sept. 29, 2010) (dismissing a claim as conclusory where plaintiff did no more than recite elements of a cause of action) (citing *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)); *Pettengill v. Fireman's Fund Ins. Co.*, No. 3:13-cv-154 (WWE), 2013 WL 4054635, at *2 (D. Conn. Aug. 12, 2013) (dismissing CUIPA/CUTPA claim where plaintiff merely recited the statutory provisions); *Martin v. American Equity Ins. Co.*, 185 F. Supp. 2d 162, 167 (D. Conn. 2002) (dismissing CUIPA/CUTPA claim that failed to allege facts supporting a CUIPA violation).

12

A more detailed evaluation of the particular CUIPA provisions that Plaintiffs allege Cigna violated demonstrates that the TAC is devoid of facts to support a claim that Cigna engaged in any of the unfair insurance practices. In fact, in many instances, the TAC contradicts Plaintiffs' claims.

### a. Refusing to pay claims without conducting a reasonable investigation based upon all available information. Section 816(6)(d).

The TAC includes no facts to support the allegation that Cigna failed to conduct a "reasonable investigation" of any of Plaintiffs' claims under an insured non-ERISA plan. Indeed, to the extent Plaintiffs allege facts, they claim that Cigna investigated *too much* by making "medical records and audit requests in response to every claim submitted by the Murphy Practice." (TAC, ¶ 60) (emphasis in original).

In addition, Plaintiffs do not allege what "reasonable" investigation would have resulted in Cigna concluding that any of the non-ERISA claims were payable under the terms of the particular plans at issue. Thus, for example, Plaintiffs allege that Cigna concluded (as a result of its investigation) that the documentation Plaintiffs submitted with claims (when they submitted documentation) "was incomplete or deficient[,]" or that it "does not match the information sent on the claim." (*Id*., ¶¶ 87, 88). Plaintiffs have now admitted that they failed to maintain accurate records of the Covid-related services they allegedly provided. *See* Declaration of Steven Murphy (Doc. 80-2), ¶ 3 ("the need to avoid physical or other close contact with patients made getting signatures impractical. Similarly, health concerns militated against using paper records due to concerns about transmission of the disease, yet the electronic infrastructure for keeping records electronically (often while outdoors and/or in inclement weather) was not readily available. … Traditional record keeping practices were admittedly not permitted to trump these considerations.").

In reality, the core dispute between the parties does not concern the reasonableness of Cigna's investigation of Plaintiffs' claims, but rather the proper interpretation and scope of the FFCRA and the CARES Act. (TAC, ¶¶ 94-95, 128).

> **b. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. Section 816(6)(f).**

Plaintiffs allege that Cigna violated this provision "when it failed to settle or resolve the claims at issue in this litigation, despite the fact that its legal obligations are clear under federal and Connecticut law." (TAC, ¶ 141). The Court will note that this provision is fundamentally inconsistent with subsection (d), as (d) asserts that additional investigation would have resulted in approval of the claim, and (f) asserts that no investigation was required because liability is clear.

Under this subsection, "[l]iability is not 'reasonably clear' where there are no binding or precedential rulings" addressing a disputed legal issue. *Connecticut Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 3:19-CV-839 (JCH), 2020 WL 6888272, at *10 (D. Conn. Jan. 17, 2020). Thus, it is not enough that one or more trial courts reject a legal position taken by the insurer; a *precedential* ruling is required. *Id.* ("Unless and until a higher court rejects [the insurer's] position, the insurer is entitled to continue making its (hitherto unsuccessful) arguments with respect to coverage, without exposing itself to liability under CUTPA/CUIPA."); *see also, Roberts v. Liberty Mut. Fire Ins.Co.*, 264 F. Supp. 3d 394, 415 (D. Conn. 2017) ("Although Liberty Mutual's position has not prevailed so far, it is not unreasonable on its face under existing insurance law, and until such time as those arguments are rejected by Connecticut's appellate courts or the Second Circuit, Liberty Mutual is entitled to continue making them.").

Plaintiffs do not allege any precedential decision addressing insurers' obligations regarding payment for Covid tests and related services under the FFCRA, the CARES Act, or Connecticut law. In particular, they do not allege that it was clear, at the time Cigna made its decisions on the

itemized claims at issue, that a non-participating provider was entitled to conduct multiplex tests on patients seeking a Covid test and then demand any price it desired to charge even in the absence of records documenting the service. (*See* TAC, ¶¶ 26, 29, 34). They certainly do not cite any case holding that those acts mandate insurers to pay a $1,500 charge for a Covid test. Cigna is not aware of any such decision. Indeed, even today, we are not aware of a single precedential decision adopting Plaintiffs' view of the law.

Similarly, Plaintiffs have not alleged facts supporting their conclusory allegation that, "for symptomatic patients that appeared to the Murphy Practice for testing, Cigna was required to reimburse those claims pursuant to the Connecticut Surprise Billing Law." (TAC, ¶ 132). The Court will note that Plaintiffs acknowledge that this law does not apply to *asymptomatic* people who sought a Covid test, yet they have made no effort to allege which Cigna members complained of Covid symptoms when they sought a test, even though that information is entirely within Plaintiffs' possession and control.

In reality, even alleging that a person seeking a Covid test was "symptomatic" is inadequate to establish the applicability of Connecticut's surprise bill law. C.G.S. § 38a-477aa. The law applies to a patient with an "emergency condition," C.G.S. § 38a-477aa(a)(1), which is defined to have "the same meaning as 'emergency medical condition', as provided in section 38a-591a." C.G.S. § 38a-591a(14) defines "emergency medical condition" as "a medical condition manifesting itself by acute symptoms of sufficient severity, including severe pain, such that a prudent layperson with an average knowledge of health and medicine, acting reasonably, would have believed that the absence of immediate medical attention would result in serious impairment to bodily functions or serious dysfunction of a bodily organ or part, or would place the person's health or, with respect to a pregnant woman, the health of the woman or her unborn child, in serious jeopardy."

15

Plaintiffs have not alleged any facts suggesting that any of the allegedly "symptomatic" patients arrived at Plaintiffs' drive-up testing site with acute symptoms so severe as to result in "serious impairment of bodily function" or put their health "in serious jeopardy" without "immediate medical attention." Specifically, they have not alleged facts distinguishing between symptomatic people who may have had a fever, or cough, or fatigue, and people who were, for example, unable to breathe adequately and were in need of a respirator. It is simply not plausible to conclude that a person who was experiencing an emergency medical condition would visit a drive-up Covid testing site rather than go to a hospital emergency department.

Confirming that "emergency medical condition" is intended to refer to conditions prompting a patient to go to an emergency department, the surprise bill law applies primarily to "emergency services," which are defined as "a medical screening examination as required under Section 1867 of the Social Security Act, as amended from time to time, that is within the capability of a hospital emergency department[.]" C.G.S. § 38a-477aa(a)(2). Section 1867 of the Social Security Act requires medical screening examinations only by "a hospital that has a hospital emergency department[.]" 42 U.S.C. § 1395dd(a).[4] Plaintiffs do not contend that any of their drive-up testing sites qualified as a hospital with a hospital emergency department.

Plaintiffs certainly have not cited any precedential decision establishing that mild Covid symptoms constituted an "emergency condition" under the surprise bill law.[5]

---

[4] "The stated reason in 42 U.S.C. § 1395dd(a) for requiring a participating hospital to provide an 'appropriate medical screening examination' of one suffering from injuries who presents himself at a hospital is to determine whether an 'emergency medical condition exists.' Nothing more, nothing less." *Collins v. DePaul Hosp.*, 963 F.2d 303, 306–07 (10th Cir. 1992)*; see also Macamaux v. Day Kimball Hosp.*, No. 3:09-CV-164-JCH, 2011 WL 4352007, at *3 (D. Conn. Sept. 16, 2011) (hospitals are required to "provide uniform or even-handed screening examinations for emergency conditions, consistent with … the medical circumstances and symptoms presented").

[5] The issue in this CUIPA/CUTPA claim is not whether the surprise bill law might be interpreted in the future to apply to people with mild Covid symptoms who sought a test. The issue is whether there was a precedential decision making that interpretation reasonably clear at the time Cigna made the claim determinations at issue.

Finally, Plaintiffs allege that "Cigna entered into an agreement with Connecticut wherein it explicitly agreed to cover COVID-19 testing fees for its members." (TAC, ¶ 137). As "support" for this allegation, Plaintiffs cite to a news report from March 2020, which says only: "Companies including AetnaCVS, Anthem Blue Cross and Blue Shield in Connecticut, Cigna, ConnectiCare, and UnitedHealth Group are all working with the state and have agreed to cover the testing fees. You should check with your specific insurer to see how you are covered." https://www.nbc-connecticut.com/news/local/ct-insurers-agree-to-cover-costs-of-covid-19-testing/2236045/.    To the extent a news report like this can be considered evidence of anything, it certainly is not evidence that Cigna agreed to pay for multiplex tests or ancillary services (like telemedicine visits) for people who sought Covid tests, or that it agreed to pay for tests or ancillary services where the provider could not properly document that the test or services were performed. Thus, this allegation does not establish that Cigna's liability for the specific non-ERISA, insured claims asserted by Plaintiffs in this action "has become reasonably clear." Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application. Section 816(6)(h).

Plaintiffs do not allege the contents of any "written or printed advertising material accompanying or made part of an application" for an insurance policy. They do not allege that Plaintiffs had access to that material before treating someone insured under the policy in question, or why the contents of that material would cause a reasonable person to conclude that Cigna would have paid more than it paid on the claim in question.

More to the point, Plaintiffs do not allege that Cigna induced employers to buy non-ERISA insurance policies by distributing advertising material promising to pay certain amounts for Covid testing services. Rather, as discussed previously, Plaintiffs claim that the payments they seek are

17

required by federal legislation regardless of the content of the policies themselves. Further, even if the legislation required coverage, Plaintiffs admit that it also expressly authorized *negotiation* over reimbursement rates (TAC, ¶ 56). It would seem that negotiation means one party is "attempting to settle a claim for less" than the other party desires. Engaging in activity expressly authorized by the FFCRA and CARES Act cannot be considered a violation of CUIPA.

        **c. Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information. Section 816(6)(l).**

Plaintiffs do not allege a single claim in which Cigna required anyone to "submit a preliminary claim report" and then to submit "formal proof of loss forms" containing "substantially the same information."

        **d. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement. Section 816(6)(n).**

Plaintiffs allege that Cigna sent Explanations of Benefits forms to Plaintiffs' patients "stating that the patient, not Cigna, was obligated to pay for [Plaintiffs'] services." (TAC, ¶ 146). They allege that Cigna knew or should have known that such statements were false." (*Id.*, ¶ 147). It appears that these allegations are intended to support the claimed violation of section 816(6)(n), but they do not.

Even if one accepts as true the conclusory allegation regarding what Cigna allegedly told its members and what it knew, Plaintiffs do not allege why such an alleged misstatement by Cigna to one of its members gives *Plaintiffs*– as non-parties to any insurance policy – the ability to assert a CUIPA violation. This is especially so when no one is alleging that any Cigna member has been required to pay for a single test.

Moreover, this section refers to a discussion "of the basis in the insurance policy" for denying a claim, but, as discussed above, Plaintiffs do not allege that any insurance policy required the payments that Plaintiffs seek. Rather, they allege that payment obligations are governed by the FFCRA and CARES Act (or state law). Furthermore, where Plaintiffs allege explanations that Cigna provided, the explanations alleged appear to be quite reasonable as confirmed by Dr. Murphy's sworn statement: "documentation … was incomplete or deficient. The necessary information is still needed to process the claim" and "the supporting documentation does not match the information sent on the claim." (TAC, ¶¶ 87-88).

### e.   Failure to pay health claims on time. Section 816(15).

Section 816(15)(A) requires a health claim to be paid "within the time periods set forth in subparagraph (B). Subparagraph (B) requires payment in forty-five days after receipt of a proof of loss form, "*except that* when there is a deficiency in the information needed for processing a claim, … the insurer shall (i) send written notice to the claimant or health care provider, as the case may be, of all alleged deficiencies in information needed for processing a claim not later than thirty days after the insurer receives a claim for payment or reimbursement under the contract, and (ii) pay claims for payment or reimbursement under the contract not later than thirty days after the insurer receives the information requested." Plaintiffs have expressly alleged that, when Cigna had insufficient information to approve Plaintiffs' claim, it notified Plaintiffs. (TAC, ¶¶ 60, 87, 88).

### 4.    *Plaintiffs have not alleged a general business practice.*

A CUIPA claim premised upon an insurer's violation of one of the subsections in Section 816(6) requires an allegation that the insurer "committed or performed the act "with such frequency as to indicate a general business practice[.]" *See also Traylor v. Awwa*, 899 F. Supp. 2d 216, 226 (D. Conn. 2012). "This means the plaintiffs must allege more than just a singular failure to settle their [insurance] claim, they must allege the defendant has engaged in the same unfair

19

[insurance] practice in the processing of other [insurance] claims*.*" *Prucker v. Am. Economy Ins. Co.*, No. CV186013630S, 2019 WL 2880369, at *5 (Conn. Sup. Ct. May 31, 2019) (citing *Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 849 (1994)); *Bacewicz v. NGM Ins. Co.*, No. 3:08cv1530 (JCH), 2009 WL 1929098, at *3 (D. Conn. June 30, 2009).

Courts routinely dismiss CUIPA claims failing to allege facts supporting a "general business practice" of misconduct by the insurer. *See, e.g., Nationwide Mut. Fire Ins. Co. v. Hermann*, No. CV126009631S, 2014 WL 4817899, at *4 (Conn. Super. Ct. Aug. 25, 2014). Allegations sufficient to establish a general business practice are "[t]ypically" accomplished "by citing to other cases brought [by other insureds] against the defendant or its affiliates." *Connecticut Mun. Elec. Energy Coop.,* 2020 WL 6888272, at *3 (citing *Mazzarella v. Amica Mut. Ins. Co.*, 774 F. App'x 14, 18 (2d Cir. 2019)).

"Factors relevant to a court's determination of whether a practice is a 'general business practice' include: "the degree of similarity between the alleged unfair practices in other instances and the practice allegedly harming the plaintiff; the degree of similarity between the insurance policy held by the plaintiff and the policies held by other alleged victims of the defendant's practices; the degree of similarity between claims made under the plaintiff's policy and those made by other alleged victims under their respective policies; and the degree to which the defendant is related to other entities engaging in similar practices." *Hartford Roman Cath. Diocesan Corp. v. Interstate Fire & Cas. Co.*, 199 F. Supp. 3d 559, 602–03 (D. Conn. 2016), *aff'd*, 905 F.3d 84 (2d Cir. 2018) (emphasis added).

Here, Plaintiffs allege that Cigna's general business practice is evidenced by the fact that it "responded in the same or similar ways to thousands of claims submitted by the Murphy Practice." (TAC, ¶ 157). But, as noted previously, CUIPA is intended to protect individual insureds, not non-

20

parties who aggregate claims and then complain when their claims are administered in a consistent way. More specifically, we have not found any case in which a single health care provider was found to have established a general business practice alleging that an insurer consistently concluded that the provider's claims have the same, or similar defects. Thus, to the extent the Court finds that Plaintiffs have standing to assert a CUIPA claim (which, as argued in Point IV.A.2., it should not find), the Court should conclude that they failed to allege a general business practice because they have not alleged facts demonstrating that Cigna has engaged in the same allegedly improper activity with other providers.

### 5.    *Plaintiffs have not pleaded the elements of a CUTPA claim with particularity.*

The balance of the CUIPA/CUTPA claim is composed largely of conclusory allegations merely repeating CUTPA's statutory elements, without any factual allegations of substance, *i.e.*, that Cigna's acts "constitute an unfair trade practice," "offend public policy as it has been established by statutes, the common law, or otherwise and is within the penumbra of common law, statutory, or other established concept of unfairness" and "are immoral, unethical, oppressive, and unscrupulous … causing substantial injury to [Plaintiffs]." (TAC, ¶¶ 136-39). Such conclusory allegations are plainly inadequate to state a CUTPA claim. *See Keller v. Beckenstein*, 117 Conn. App. 550, 569 n.7 (2009), *cert. denied*, 294 Conn. 913 (2009) ("[a] claim under CUTPA must be pleaded with particularity"); *Ferrari v. U.S. Equities Corp.*, No. 3:13-CV-00395, 2014 WL 5144736 at *3 (D. Conn. Oct. 14, 2014) (same).

Plaintiffs failed to plead any facts, let alone with particularity, to support their claim, which requires dismissal. *See Dekutowski-Cook v. Pavalock*, No. HHB-CV-054005970-S, 2006 WL 251167 (Conn. Super. Ct. Jan. 9, 2006) (a complaint merely reciting the "magic words" requires supporting facts to survive dismissal); *Sullivan v. Allstate Ins. Co.*, No. CV-054008548, 2006 WL

1000236 at *2-3 (Conn. Super. Ct. Mar. 28, 2006) (striking CUIPA/CUTPA claim with conclusory allegations).

As a final, futile effort to salvage this cause of action, Plaintiffs allege that "Cigna's acts are a violation of [CUTPA] independent of CUIPA[.]" (TAC, ¶ 161). Plaintiffs allege that this is so because Cigna violated federal and state laws allegedly requiring Cigna to pay its claims. But Plaintiffs cannot avoid the fact that "if a plaintiff brings a claim pursuant to CUIPA alleging an unfair insurance practice, and the plaintiff further claims that the CUIPA violation constituted a CUTPA violation, the failure of the CUIPA claim is fatal to the CUTPA claim." *Acordia, Inc.*, 310 Conn. at 31, 73 A.3d at 729.

Aside from that failing, Plaintiffs' "independent" CUTPA claim is inadequately pleaded and illogical. Plaintiffs allege that, by not paying Plaintiffs' claims, Cigna is "in effect, directing the Murphy Practice to collect these funds from patients, which is impermissible." (TAC, ¶ 161). Plaintiffs have not alleged any facts from which it can plausibly be concluded that the denial of a health claim is "in effect" a direction that the non-participating provider engage in illegal conduct to collect a fee. Moreover, the fact that Plaintiffs have alleged that they have not, and will not seek payment from the people it tested, and the fact that they have sued Cigna for the benefits at issue, is confirmation that Plaintiffs did not actually believe they were being told to engage in illegal collection efforts.

Finally, Plaintiffs' basis for asserting that it would be impermissible for them to seek payment from their patients appears to be based on the assertion that all of its services constitute emergency

22

services or that their claims are surprise bills. (TAC, ¶ 162). As discussed above, neither is accurate.[6]

## B.    Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law

The elements of an unjust enrichment claim are (1) that Cigna was benefitted, (2) that Cigna unjustly did not pay Plaintiffs for the benefits Cigna received, and (3) that Plaintiffs were injured by the failure of payment. *Vertex, Inc. v. Waterbury*, 278 Conn. 557, 573 (2006). The key factor is that the defendant (not some other party), has received a benefit that it is unfair for it to keep. *Trenwick Am. Reinsurance Corp. v. W.R. Berkley Corp.*, 138 Conn. App. 741, 753 (2012 (the "basis [of the claim] being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another.").

Like the CUIPA/CUTPA claim, the unjust enrichment claim is limited to "non-ERISA plans." (TAC, ¶ 179). Plaintiffs allege that they "provided medically necessary COVID-19 testing and related services to Cigna's members and beneficiaries[,]" and that "Cigna was legally obligated to pay for these services[,]" but failed to do so. (*Id.*, ¶¶ 152-154).

Asserting that Cigna is obligated to pay for a benefit that Plaintiffs provided to someone else is hardly an allegation that Cigna has received a benefit that it is unfair for it to keep. Specifically, Plaintiffs do not allege that they performed any service *for Cigna* or that they provided any benefit *to Cigna*, and that it is unfair for Cigna to keep that benefit. It is common for out-of-network health care providers to argue unjust enrichment to attempt to circumvent the undisputed fact that they do not have privity or any other legally cognizable relationship with the health plan. Rather, their relationship is with their patient; the patient asked for the service, and it is only the patient who

---

[6] Cigna does not suggest that Plaintiffs have a claim against members for Covid tests, as their pleadings and web page appear to assure patients that they will not be charged. Cigna merely asserts on this motion that there is no plausible claim that Cigna somehow required Plaintiffs to engage in illegal collection activity.

arguably benefitted from it. Under the circumstances, it is not surprising that "courts have repeatedly held that providers cannot bring unjust enrichment claims against insurance companies based on the services rendered to insureds." *MC1 Healthcare, Inc. v. United Health Grp., Inc.*, No. 3:17-CV-01909 (KAD), 2019 WL 2015949, at *10 (D. Conn. May 7, 2019). *See also*, *New York Grp. for Plastic Surgery LLP v. Anthem Blue Cross*, No. 20-CV-4234 (JPO), 2022 WL 524106, at *2 (S.D.N.Y. Feb. 22, 2022) ("Courts in this circuit … have consistently held that where the services were not provided at the behest of the plaintiff but rather by the patient, dismissal of the quasi-contract causes of action [including unjust enrichment] against the insurer defendant is appropriate." (quotation marks omitted)); *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) ("The insurance company derives no benefit . . . [but rather,] a ripened obligation to pay money to the insured—which hardly can be called a benefit."); *Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, No. 14-81271-CV, 2015 WL 2198470, at *5 (S.D. Fla. May 11, 2015) (A healthcare "provider who provides services to an insured does not benefit the insurer."); *Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, No. 13-21895-CIV, 2013 WL 3810617, at *4 (S.D. Fla. July 22, 2013) ("[A provider] can hardly be said to have conferred any benefit, even an attenuated one, upon the Plan's insurer by providing Plan beneficiaries with health care services.").

Plaintiffs' attempt to allege facts supporting a conclusion that Cigna received such a benefit confirms the implausibility of unjust enrichment claims by non-participating providers. Thus, Plaintiffs allege that Cigna received a benefit "because the Murphy Practice handled all aspects of the reference COVID-19 testing[,]" and that "Cigna was able to save time and money because it did not have to administer, process, or pay claims for COVID-19 tests[.]" (TAC, ¶ 173). To be

24

sure, Cigna administered and processed the claims. In any event, this is really just another way of saying that Plaintiffs provided Covid testing and that Cigna did not pay what Plaintiffs wanted.

Plaintiffs also speculate:

> Cigna's compensation or future compensation for its administration services is as a matter of virtual certainty based on performance and money saved by denying the Murphy Practice's claims. Cigna benefitted or stands to benefit in terms of its relationship with and compensation from the non-ERISA plans it administers because by wrongfully denying or fractionally paying the COVID-19 testing costs, Cigna saved the self-funded plans money.

(TAC, ¶ 175). To the extent this allegation is comprehensible, it appears to allege that if Cigna routinely denies claims for health services allegedly provided to its members, the employers who self-fund those plans will reward Cigna with increased administration fees or business. That is utter speculation, and reliant on the actions of unnamed non-parties to the suit.

Because Plaintiffs have not alleged facts demonstrating that they conferred a benefit on Cigna that it would be unfair for Cigna to keep, the Court should dismiss the unjust enrichment claim.

## V.    CONCLUSION

For all of the foregoing reasons, Plaintiffs' CUIPA/CUTPA and unjust enrichment claims fail as a matter of law. Cigna therefore respectfully requests that the Court dismiss Counts Two and Three in Plaintiffs' TAC, with prejudice and without further leave to amend.

DEFENDANTS,

CIGNA HEALTH AND LIFE INSURANCE COMPANY and CONNECTICUT GENERAL LIFE INSURANCE COMPANY

By:  /s/ Patrick W. Begos
       Patrick W. Begos (ct19090)
       Theodore J. Tucci (ct05249)
       Milanna Datlow (ct30402)
       Robinson & Cole LLP
       1055 Washington Boulevard
       Stamford, CT 06901
       Telephone: (203) 462-7500

25

Fax: (203) 462-7599
*Their Attorneys*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 3, 2023, a copy of the foregoing Memorandum of Law in Support of Defendants' Partial Motion to Dismiss the Third Amended Complaint was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Patrick W. Begos*
Patrick W. Begos

27