UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------------- x

MURPHY MEDICAL ASSOCIATES, LLC; DIAGNOS- :
TIC AND MEDICAL SPECIALISTS OF GREENWICH, :
LLC; NORTH STAMFORD MEDICAL ASSOCIATES, :
LLC; COASTAL CONNECTICUT MEDICAL GROUP, :      3:20-cv-01675-JBA
LLC; and STEVEN A.R. MURPHY, MD,           :
                                           :
        Plaintiffs,                        :
V.                                         :
                                           :
CIGNA HEALTH AND LIFE INSURANCE COMPANY :
and  CONNECTICUT  GENERAL  LIFE  INSURANCE : February 17, 2023
COMPANY,                                   :
                                           :
        Defendants.                        :

---------------------------------------------------------------------- x

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT

ROBINSON & COLE LLP
1055 Washington Boulevard
Stamford, CT 06901
(203) 462-7500

*Attorneys for Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company*

*Of Counsel*:

Patrick W. Begos

Theodore J. Tucci

Milanna Datlow

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.     INTRODUCTION ...................................................................................................... 1

II.    LEGAL ARGUMENT................................................................................................ 2

    A.     Plaintiffs Have Not Adequately Addressed the Numerous Shortcomings of
    their CUIPA/CUTPA Claim .................................................................................. 2

        1.     Plaintiffs have not adequately alleged that their claim involves the
        "business of insurance"................................................................................ 2

        2.     Out-of-network providers cannot assert a CUIPA/CUTPA claim............. 3

        3.     Plaintiffs Have Not Pleaded a Plausible CUIPA Violation ....................... 5

        4.     Plaintiffs cannot assert a CUTPA claim independent of CUIPA .............. 7

        5.     The Court should take judicial notice of undisputed facts that
        demonstrate the implausibility of Plaintiff's claim................................... 9

    B.     Plaintiffs Have Not Pleaded a Plausible Unjust Enrichment Claim .................... 10

III.   CONCLUSION.......................................................................................................... 10

CERTIFICATE OF SERVICE ........................................................................................ 11

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. WestPoint-Pepperell, Inc.,*
    945 F.2d 40 (2d Cir. 1991)...............................................................................................9

*AmBase Corp. v. City Investing Co. Liquidating Tr.,*
    326 F.3d 63 (2d Cir. 2003)................................................................................................9

*Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.,*
    317 Conn. 602 (2015) .......................................................................................................8

*Associated Constr./AP Constr., LLC v. Hanover Ins. Co.,*
    No. 3:15-CV-1600 (MPS), 2018 WL 3998971 (D. Conn. Aug. 21, 2018) ......................2

*Carford v. Empire Fire & Marine Ins. Co.,*
    94 Conn. App. 41 (2006) ...........................................................................................3, 4, 5

*Conn. Water Co. v. Town of Thomaston,*
    No. CV940535590S, 1996 WL 677458 (Conn. Super. Ct., Nov. 8, 1996) .......................7

*First Invs. Corp. v. Liberty Mut. Ins. Co.,*
    152 F.3d 162 (2d Cir. 1998)..........................................................................................3, 4

*Ganim v. Smith & Wesson Corp.,*
    258 Conn. 313, 780 A.2d 98 (2001) .................................................................................4

*Jackson v. RG Whipple, Inc.,*
    225 Conn. 705 (1993) .......................................................................................................7

*NEMS PLLC v. Harvard Pilgrim Health Care of Connecticut Inc.,*
    No. 3:21-CV-01169 (SVN), 2022 WL 2834608 (D. Conn. July 20, 2022)............3, 4, 5, 8

*State v. Acordia, Inc.,*
    310 Conn. 1 (2013) ..............................................................................................3, 4, 7, 8

**Statutes**

C.G.S.A. § 38a-1(11)................................................................................................................2

C.G.S.A. § 38a-271(a) ..............................................................................................................2

C.G.S.A. § 38a-816(6)....................................................................................................4, 5, 6, 7

C.G.S.A. § 38a-816(15).............................................................................................................7

C.G.S.A. § 38a-477aa ...............................................................................................................8

Cigna submits this reply brief in further support of their motion to dismiss the Second and Third Causes of Action in the Third Amended Complaint ("TAC").

## I.    INTRODUCTION

Plaintiffs' CUIPA/CUTPA claim suffers from numerous fatal deficiencies. Plaintiffs do not dispute that a CUIPA violation can only occur in "the business of insurance," and they resort to misreading of unambiguous statutory language to argue that "the business of insurance" includes providing services for self-funded (non-insured) plans. They are wrong. At the very least, the Court should dismiss the CUIPA/CUTPA claim to the extent it concerns services provided for self-funded non-ERISA plans. Moreover, because Plaintiffs have not alleged facts supporting a conclusion that any of the actions underlying their CUIPA/CUTPA claim occurred in connection with insured plans, the Court should dismiss the entire claim.

Plaintiffs are not proper parties to assert that Cigna violated CUIPA. Their argument to the contrary is based almost entirely on a non-precedential decision that misinterprets Connecticut law. Similarly, they do not have a sufficient business relationship to assert a CUTPA claim.

Finally, outside the four corners of the Third Amended Complaint, the Court is able to take judicial notice of undisputed facts in the record of this case establishing that Plaintiffs are unable to document that they actually performed thousands of the claims they allege Cigna improperly denied. An out-of-network provider who submitted thousands of unsubstantiated claims for payment is hardly an appropriate party to claim to be the victim of unfair insurance practices.

Plaintiffs have made scant effort to save their unjust enrichment claim from dismissal. Among other things, they ignore the numerous cases holding that a health insurer is not enriched by health services provided to an insured.

The Court should therefore grant Cigna's motion to dismiss.

1

## II.    LEGAL ARGUMENT

### A.    Plaintiffs Have Not Adequately Addressed the Numerous Shortcomings of their CUIPA/CUTPA Claim

#### 1.    *Plaintiffs have not adequately alleged that their claim involves the "business of insurance"*

Plaintiffs do not dispute that a CUIPA claim is limited to misconduct that occurs in the "business of insurance." Cigna Br. (Doc. 93-1), pp. 7-8; Pl. Opp., p. 4. Nor do they dispute that a substantial number of the plans Cigna administers are self-funded, such that Cigna is not responsible for paying any benefits; in other words, it did not *insure* benefits payable by those plans. *Id.*

The Court should reject Plaintiffs' argument that "the business of insurance" includes providing administrative services to self-funded plans, because the definition of "insurance" plainly requires the transfer and pooling of risk: "In any contract of insurance, an insured shall have an interest which is subject to a risk of loss … which risk is assumed by the insurer and such assumption shall be part of a general scheme to distribute losses among a large group of persons bearing similar risks[.]" Cigna Br., p. 8; Pl. Opp., p. 4; both quoting C.G.S.A. § 38a-1(11).

Plaintiffs' reliance on *Associated Constr./AP Constr., LLC v. Hanover Ins. Co.*, No. 3:15-CV-1600 (MPS), 2018 WL 3998971, at *4 (D. Conn. Aug. 21, 2018), is misplaced. That matter involved a dispute regarding performance bonds that were admittedly "insurance;" the dispute was whether the alleged unfair practices were sufficiently related to the bonds to be considered the "business of insurance." *Associated Constr.* provides no basis to conclude that the business of insurance includes providing services to self-funded health plans that do not include risk transfer and pooling.[1]

---

[1] *Associated Constr.* also relied on C.G.S.A. § 38a-271(a), which specifies when foreign insurers must register in Connecticut. That statute expressly addresses activities involving "insurance," which necessarily incorporates risk transfer and pooling as defined in C.G.S.A. § 38a-1(11). Thus, one cannot conclude that the list of activities in that section involves the business of insurance when they are engaged in with respect to self-funded health plans.

At the very least, the Court should dismiss Plaintiffs' CUIPA/CUTPA claim insofar as it concerns alleged unfair practices regarding self-funded plans.

It is undisputed that the TAC pleads no facts establishing that any of the (unspecified) non-ERISA plans that are the subject of this claim were *insured* plans. Thus, Plaintiffs provide no basis for a plausible conclusion that any of the claims at issue here involved the business of insurance. Plaintiffs seek to excuse this failure by citing alleged difficulties in "the early, darkest days of the pandemic[.]" Pl. Opp., p. 5. But Plaintiffs allege that, even in those "darkest days," they obtained information from the people they tested regarding their Cigna membership, including alleged electronic registration, TAC, ¶¶ 79-80, which presumably included identification of the plan at issue. Moreover, Plaintiffs have had several years since those "darkest days" to assemble the facts necessary to allege a plausible claim.

### 2. *Out-of-network providers cannot assert a CUIPA/CUTPA claim*

Plaintiffs do not dispute that the purpose of CUIPA is "enabling the Commissioner to better protect consumers." Cigna Br., p. 10, quoting *State v. Acordia, Inc.*, 310 Conn. 1, 26 (2013). They do not dispute that *Carford v. Empire Fire & Marine Ins. Co.*, 94 Conn. App. 41, 53 (2006), held that only an insured, or one subrogated to the rights of the insured, or one with a judgment against the insured, can assert a CUIPA claim. Cigna Br., p. 10. Plaintiffs do not claim that their alleged assignments give them such status. Instead, Plaintiffs argue that they are proper parties to assert a CUIPA claim based on *NEMS PLLC v. Harvard Pilgrim Health Care of Connecticut Inc.*, No. 3:21-CV-01169 (SVN), 2022 WL 2834608 (D. Conn. July 20, 2022). But *NEMS* misinterpreted Connecticut law, and this Court should not adopt its reasoning.

Federal courts are required to give "proper regard" to the decisions of state appellate courts. *First Invs. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165 (2d Cir. 1998). *NEMS* did not do so,

3

because it simply concluded that the clear rule in *Carford* should be limited to the facts presented in that case. *NEMS*, at *8 ("that holding is too narrow, and the facts of *Carford* too dissimilar, to address the situation at issue here."). Nothing in *Carford* suggests that it is limited to a narrow set of circumstances, and there is no Connecticut appellate decision creating ambiguity about it. *First Invs. Corp.*, 152 F.3d at 165 (federal courts should not attempt to predict how the highest state court would rule unless the law is "uncertain or ambiguous."). Therefore, the Court should apply *Carford* as stated.

After deciding that *Carford* did not apply, *NEMS* determined that a non-party to an insurance policy can assert a CUIPA claim as long as the claim is not barred by the "remoteness doctrine." *NEMS*, at *8. But the remoteness doctrine does not address which categories of parties have a right of action under a statute like CUIPA. Rather, the remoteness doctrine prevents an otherwise proper party from asserting a clam when "the harms that they claim to suffer are too remote, indirect and derivative with respect to the defendants' alleged conduct." *Ganim v. Smith & Wesson Corp.*, 258 Conn. 313, 344, 780 A.2d 98, 118 (2001). Put simply, the remoteness doctrine should not be used to allow a party to assert a claim under a statute that does not recognize that party as a proper plaintiff.

*NEMS* also held that certain of CUIPA's prohibited acts, in C.G.S.A. § 38a-816(6), should be interpreted to allow non-insureds to assert claims, because those provisions define the particular prohibited acts without using the words "insured" or "insurance policy." *NEMS*, at *9. But the introductory sentence in 38a-816 clearly and unambiguously states that it is defining "unfair methods of competition and unfair and deceptive acts or practices in the *business of insurance*[.]" (emphasis added). That introductory sentence, combined with the fact that the purpose of CUIPA as a whole is "to better protect consumers" in connection with the "business of insurance," *Acordia,*

4

*Inc.*, 310 Conn. at 26, precludes a court from concluding that certain prohibited acts in 38a-816(6) have a broader interpretation when the words "insured" or "insurance policy" are absent.

*Carford* confirms that *NEMS*' interpretation of 38a-816(6) is erroneous. Specifically, both *Carford* and *NEMS* considered a claim under 38a-816(6)(f) – a claim that Plaintiffs also have asserted – which defines unfair claim settlement practices without referring to "insured" or "insurance policy:" "(f) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear[.]" *Carford* held that a non-insured could not assert a claim under this section (without subrogation or a judgment), thus establishing that the absence of the words "insured" or "insurance policy" in section 38a-816(6) cannot be interpreted as a legislative intent to expand the universe of permissible plaintiffs to non-insureds.

### 3.     *Plaintiffs Have Not Pleaded a Plausible CUIPA Violation*

Plaintiffs admit that they are required to allege facts showing that the alleged violations of 38a-816(6) occurred with sufficient frequency to indicate a general business practice. Pl. Opp., p. 15. They do not, however, claim that they alleged facts showing that Cigna engaged in the alleged misconduct in administering Covid testing claims submitted by any other provider. Cigna Br., pp. 19-21. Therefore, there are no facts supporting the existence of a general business practice.

Plaintiffs assert that Cigna violated 38a-816(6)(d) by demanding medical records to support Plaintiffs' claims, because, they argue, they "provided Cigna with proof that its beneficiaries, as determined by a physician, were in medical need of a COVID-19 test and provided proof that the test was performed." Pl. Opp., p. 16. But the conclusory allegation that they submitted proof of 12,000-plus itemized claims (without giving any details regarding the nature of that proof) is plainly inadequate. Moreover, Plaintiffs assert that they were "entitled to assume that there was a diagnostic reason for each test[,]" *id.*, p. 12, rendering implausible their conclusory allegation that

they submitted proof that they made a determination regarding the medical necessity of each Covid test.

Plaintiffs contend that Cigna violated 38a-816(6)(f) because its liability under the CARES Act and the FFCRA was "reasonably clear," Pl. Opp., p. 18. But Plaintiffs admit that no court in the country has yet ruled on precisely what obligations a health insurer has under those statutes. *Id.*, p. 19. Unanswered questions abound about the application of those laws to Plaintiffs' claims. For one example, Plaintiffs do not allege how these statutes require coverage of, much less payment of $1,500 for, a multiplex test provided to an asymptomatic person seeking only a COVID test.

Plaintiffs do not dispute that 38a-816(6)(h) concerns settling insurance claims for less than was suggested by "written or printed advertising material accompanying or made part of an application." They do not claim that they alleged the existence of any pertinent advertising material accompanying or made part of an insurance application.

Plaintiffs claim a violation of 38a-816(6)(l) by arguing that the claim forms they allegedly submitted to Cigna were the equivalent of "preliminary claim reports," that Cigna's demands for documentation that the services were performed as billed were the equivalent of "formal proof of loss forms," and that both "submissions contain substantially the same information." This is attempting to fit a square peg into a round hole. Plaintiffs do not explain why, or provide any case law holding that, it is an unfair insurance practice for a health plan to request medical records to support a claim for health services.

Plaintiffs contend that Cigna violated 38a-816(6)(n) by not giving a "reasonable explanation of the basis in the insurance policy" for denying their claims. But they allege that Cigna gave the explanation that Plaintiffs had provided insufficient documentation that the services were provided

as billed. TAC, ¶ 66. Plaintiffs do not claim that they alleged any facts establishing a plausible claim that any particular explanation was unreasonable.

Plaintiffs do not address their claim of a violation of 38a-816(15), and thus presumably have abandoned it.

### 4.   *Plaintiffs cannot assert a CUTPA claim independent of CUIPA*

Plaintiffs assert that the existence of a valid CUTPA claim regarding insurance-related practices can be based on alleged violations of the FFCRA, the CARES Act, and/or Connecticut's Surprise Bill Law. The court should reject that contention.

As with their CUTPA claim that relies on CUIPA, Plaintiffs are not a proper party to assert a "direct" CUTPA claim against Cigna, because they do not have the requisite commercial relationship with Cigna. *See Jackson v. RG Whipple, Inc.*, 225 Conn. 705, 725-26 (1993) ("it strains credulity to conclude that CUTPA is so formless as to provide redress to any person, for any ascertainable harm, caused by any person in the conduct of any 'trade' or 'commerce.'"); *Conn. Water Co. v. Town of Thomaston*, No. CV940535590S, 1996 WL 677458, at *9 (Conn. Super. Ct., Nov. 8, 1996) ("at the very least, other business people, who are not direct competitors, must have some type of commercial relationship with the alleged wrongdoer – commercial relationship not being so much a business to business relationship but some kind of relationship in the market place so that the particular acts of wrongdoing alleged will interfere with fair and open competition in that particular marketplace.").

Substantively, Plaintiffs' argument is based on a misreading and expansion of *dictum* in *Acordia*, which stated: "we conclude that, unless an insurance related practice violates CUIPA or, *arguably, some other statute regulating a specific type of insurance related conduct*, it cannot be found to violate any public policy and, therefore, it cannot be found to violate CUTPA." *Id.*, 310

Conn. at 37 (emphasis added). The italicized language is plainly *dictum*, preceded as it was by "arguably." The only other Connecticut Supreme Court case to consider this language held that a non-CUIPA statute could not be the basis of a CUTPA claim concerning insurance practices. *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 317 Conn. 602, 624 (2015) (*Acordia* "concluded that, as a general rule, a plaintiff cannot bring a CUTPA claim alleging an unfair insurance practice unless the practice violates CUIPA.").

The FFCRA and the CARES Act are not targeted at "a specific type of insurance related conduct." The FFCRA addresses all manner of issues related to the Covid pandemic, including supplemental appropriations, nutrition waivers, emergency family leave, emergency unemployment insurance, emergency paid sick leave, and tax credits. The CARES Act addresses matters such as keeping workers paid and employed; economic stabilization; assistance for workers, families and businesses; shortfalls of health care supplies; shortages in the healthcare workforce; review of drug approvals; air carrier worker support; and emergency appropriations for government operations. The Court should conclude that neither is a "statute regulating a specific type of insurance related conduct."

Plaintiffs cannot salvage their CUTPA claim by relying on the Surprise Bill Law, C.G.S.A. § 38a-477aa, because it "simply does not purport to regulate the conduct at issue in the present case." *Artie's Auto Body*, 317 Conn. at 625. As discussed at pages 15-16 of Cigna's opening brief, Plaintiffs' testing sites were not "hospital emergency departments," and the people who sought testing there did not have an "emergency medical condition." Though *NEMS* held that the plaintiff could assert a CUTPA claim under the Surprise Bill Law, that action concerned services in a hospital emergency department, and thus the Surprise Bill Law plausibly applied.

8

**5.    *The Court should take judicial notice of undisputed facts that demonstrate the implausibility of Plaintiff's claim***

On a motion to dismiss, the Court can consider "matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). Specifically, the Court can take judicial notice of "the court's own records" in ruling on this motion. *AmBase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63, 72 (2d Cir. 2003).

The Court should take judicial notice that Plaintiffs' February 15, 2023 Status Report and Motion for Extension of Time (Docs. 101, 102) acknowledge that they are withdrawing approximately half (*i.e.*, 6,000-plus) of the 12,970 itemized claims they originally asserted. They admit that they are doing so pursuant to the Court's order that they withdraw "any itemized claims for which no supporting medical records or assignments have been produced." (Doc. 95). Plaintiffs have undertaken to file a formal stipulation withdrawing those claims by February 23, 2023 (Doc. 102). The Court should also take judicial notice of Dr. Murphy's declaration, in which he admitted that Plaintiffs had a practice of *not* documenting Covid-related services. Declaration (Doc. 80-2), ¶ 3 (describing his decision not to follow "[t]raditional record keeping practices").

These admissions render implausible the core allegation of Plaintiffs' claim, which is that, instead of accepting and paying the 12,970 itemized claims at issue, Cigna "engaged the Murphy Practice in a paperwork war of attrition [by making] … medical records and audit requests to <u>every</u> claim submitted by the Murphy Practice[.]" TAC, ¶ 60 (emphasis in original). Plaintiffs have now admitted that they have no records to support more than 6,000 claims that they submitted to Cigna. That admission renders frivolous their contention that Cigna was doing anything other than fulfilling its responsibility to the plans it administered by requiring Plaintiffs to submit documentation showing that they actually performed the services for which they billed those plans.

9

### B. Plaintiffs Have Not Pleaded a Plausible Unjust Enrichment Claim

Plaintiffs cannot succeed in asserting that they have alleged facts supporting a plausible conclusion that Cigna was "enriched," much less "unjustly," by virtue of its members allegedly receiving Covid-related health services for which Cigna has not reimbursed Plaintiffs. Plaintiffs do not even address, much less distinguish, the multiple cases Cigna cited establishing that a health insurer is not unjustly enriched when it denies a claim for services provided to an insured. Cigna Br., pp. 23-24.

Instead, they advance an illogical, unsupported and speculative theory involving the calculation of premiums. Because self-funded plans, by definition, do not have "premiums," the unjust enrichment claim fails for those self-funded plans. For insured plans, because risk is pooled among many policyholders, there is no plausible basis to conclude that an insurer is unjustly enriched when a particular insured generates less health care spending in a particular year than might have been actuarily calculated. Certainly, Plaintiffs have not alleged any facts establishing that this occurred with respect to anyone they treated.

## III. CONCLUSION

For all of the foregoing reasons, Plaintiffs' CUIPA/CUTPA and unjust enrichment claims fail as a matter of law. Cigna therefore respectfully requests that the Court dismiss Counts Two and Three in Plaintiffs' TAC, with prejudice and without further leave to amend.

Respectfully submitted,
DEFENDANTS,
By: */s/ Patrick W. Begos*
  Patrick W. Begos (ct19090)
  Theodore J. Tucci (ct05249)
  Milanna Datlow (ct30402)
  Robinson & Cole LLP
  1055 Washington Boulevard
  Stamford, CT 06901
*Their Attorneys*

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2023, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Patrick W. Begos*
Patrick W. Begos