UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MURPHY MEDICAL ASSOCIATES, LLC ET AL.,

*Plaintiffs*,

v.

CIGNA HEALTH AND LIFE INS. CO. ET AL.

*Defendants*.

Civil No. 3:20cv1675 (JBA)

August 30, 2023

**RULING ON RULE 37(b) MOTION FOR SANCTIONS**

Defendants (or "Cigna") move for Sanctions [Doc. # 72] for Plaintiffs' failures to comply with court-ordered discovery obligations. On June 10, 2021, Defendants moved to compel discovery. (Mot. to Compel [Doc. # 35].) On March 15, 2022, a hearing on the motion was held, and the motion was granted in part and denied in part. (*See* March 15 Hr'g Tr. [Doc. # 52].) Specific supplementation of Plaintiffs' discovery responses was ordered within 30 days—i.e., by April 15, 2022. In October 2022, Defendants moved for sanctions, representing that Plaintiffs had failed to comply with the Court's March order. (Defs.' Mem. [Doc. # 74] at 1.) On February 23, 2023, a hearing was held on Defendants' Motion for Sanctions, and an updated supplementation of Defendants' motion by April 24, 2023 was ordered. (Feb. Hr'g Tr. [Doc. # 106] at 66-67.) After reviewing Plaintiff's production of roughly 100,000 pages made December of 2022, Defendants filed a supplement to their motion for sanctions on April 24, 2023, documenting discovery materials that remained outstanding in violation of the Court's March 2022 Order. (Suppl. Decl. of Patrick Begos ISO Rule 37(b) Mot. for Sanctions [Doc. # 108]) ("Begos Suppl. Decl.")

**I. Legal Standard**

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure describes a court's authority to address failures to comply with its discovery orders:

1

> If a party ... fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

## II. Discussion

### A. Meet-and-Confer Requirement

As a threshold matter, Plaintiffs claim that Defendants' motion is procedurally improper because Defendants failed to meet their obligation to confer before filing the motion. Under Local Rule 37(a):

> No motion pursuant to Rules 26 through 37, Fed. R. Civ. P. [discovery] shall be filed unless counsel making the motion has conferred, in person or by telephone, with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution.

In Defendants' Declaration of Patrick W. Begos in Support of its Rule 37(b) Motion (hereinafter "Begos Moving Decl.") Defendants state that they conferred and made good faith attempt to resolve the discovery dispute referencing an August 23, 2022 call. (*Id.* ¶¶ 8-10.) Plaintiffs dispute this characterization of that August phone call and attach an exhibit of email correspondence purporting to show that the call did not concern the discovery dispute, but instead concerned settlement discussions. (Pls.' Sanctions Opp'n [Doc. # 80] at 10-11, citing Pls.' Ex. 1 [Doc. # 80-1]). The email does indeed feature Patrick Begos asking for a call to discuss settlement progress and does not reference the instant discovery dispute.

2

However, such an email is not dispositive that these discovery disputes were not also included on the call when it took place. Plaintiffs assert that:

> During the call the only reference to discovery was that the Murphy Practice was still trying to finish its production and it was taking some time. Without revealing the substance of settlement negotiations, to the extent the topic of medical record production was raised on the call, it was relevant to the negotiations. Nowhere during that call was a potential motion discussed nor did the mention of medical record production during a call for the purpose of agreeing on next steps in the settlement process alert counsel that we were purportedly engaging in a meet and confer pursuant to Rule 37(a).

(Pls.' Sanctions Opp'n at 11.)

Plaintiffs' characterization of the August phone call was not made as an attorney declaration. The Begos Moving Declaration, by contrast, highlights that Plaintiffs were repeatedly told of Defendants' frustrations regarding insufficiencies in production:

- On July 11, 2022, Begos "wrote to Plaintiffs' attorneys identifying the deficiencies in the court-ordered production and demanding a prompt response and completion of the production. The letter requested a response by July 22, 2022."
- By August 12, 2022, Plaintiffs' attorneys still had not responded to the letter, and Begos "emailed them to demand a response to the letter and completion of the Court-ordered production."
- On August 16, Plaintiffs' attorneys stated that they "will have an additional production and response to your letter sometime next week."
- When the additional production and response did not appear, Begos "once again emailed [Plaintiffs'] attorneys on August 23, 2022 to enquire 'when can we expect to see the production you promised, and the response to our 7/11 deficiency letter?'"
- Also on August 23, 2022, Begos "spoke with John Martin, one of Plaintiffs' attorneys, and he stated that Plaintiffs would respond to the July 11 letter and produce documents in two weeks."
- As of the date of Cigna's motion, Plaintiffs had not responded to the July 11, 2022 deficiency letter, and they had not produced any additional documents or information after their April 15, 2022 production.

(Defs.' Reply [Doc. # 83] at 5, quoting Begos Moving Decl.)

Defendants argue that the August 23 phone call was "the culmination of a series of communications during which Cigna provided a detailed recitation of failures to comply with

the March 2022 Order, and Plaintiffs regularly promised to respond and then ignored their promises." (*Id.* at 5-6.)

Plaintiffs argue for a strict formalistic application of the meet-and-confer requirement, in effect arguing that unless a particular meeting is expressly designated as a meet-and-confer for a specific motion then no meet-and-confer has occurred. By contrast, Defendants urge the Court to not "elevate form over substance" and argue that their persistent communications about Plaintiffs' discovery deficiencies constitute ample attempts to fulfill the purpose of a meet-and-confer, which "is to encourage the parties to resolve discovery disputes without court intervention." *El-Massri v. New Haven Corr. Ctr.*, No. 3:18-CV-1249 (CSH), 2019 WL 2006001, at *4 (D. Conn. May 7, 2019).

The function of the meet-and-confer requirement is to impose an obligation on the moving party to alert the non-movant to precisely which aspects of discovery are at issue and seek resolution of those deficiencies.  Defendants' communications with Plaintiffs have satisfied that purpose.

Defendants also argue that any additional conferring with Plaintiffs would have been futile, as Murphy's own declaration states that he was choosing to delay document production so that he could focus on other litigation. (*Id.*; *see also* Murphy Decl. [Doc. # 80-2] ¶ 6) ("[W]hile the parties were discussing settlement and thought we were making progress, I had to divert resources to other litigations causing some delay.").) The Court agrees that under the circumstances additional meeting and conferring would have been futile. *See, e.g.*, *Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.*, No. 07CIV7983DABHBP, 2017 WL 4129644, at *2 (S.D.N.Y. Sept. 18, 2017) ("Regardless of whether the Nimkoff Parties were required to meet and confer with Tokayer before making their motion, their failure to meet and confer with Tokayer is not a basis for denying the motion because I conclude that a meet and confer would have been futile. As explained

below, Tokayer has had three opportunities to answer the interrogatories in issue . . . and in each instance, he has refused to provide clear and direct answers.")

### B. Merits of Sanctions

#### 1. Status of Production

The March 2022 order required the production of "a comprehensive record set for all of the patients on th[e] list" of itemized claims at issue, including medical records and patient assignment documents, and "whatever [plaintiffs] have with respect to intake forms, authorizations, medical history, pretesting exams, lab test results, etc.[,]" as well as "doctors' orders." (March Hr'g Tr. at 7-8). It also included any documents "that relate to the[] decision to perform ... multiplex testing rather than just COVID testing ... contain[ing] whatever analysis was done to decide that patient X needed multiplex testing as opposed to just the COVID test." (*Id*. at 11.)

Defendants state that, as of the filing of their motion on October 24, 2022, "Plaintiffs [had] not produced *any* medical records *at all* for **12,456** of their **12,970** itemized claims for which they seek payment." (Defs.' Mem. at 8.) Of the 3,138 itemized claims for COVID and/or multiplex testing, Plaintiffs have produced documentation for only 448 tests. (Begos Moving Decl. ¶ 15.) Of those 448 tests, Plaintiffs only produced clinician's orders for 64. (*Id*.) Cigna's July 11 deficiency letter demanded that Plaintiffs "provide, for each of the 2,639 Patients: (1) the complete Medical Records for the dates of service at issue (including, but not limited to, medical histories, lab requisition forms, pretesting exams, and documents relating to the decision to conduct multiplex testing); and (2) the assignment executed by the Patient." (Begos Moving Decl., Ex. C [Doc. # 73-3].) The letter also stated that "[t]o the extent documents for any Patients are not produced, we expect Plaintiffs to acknowledge that such documents do not exist." (*Id.*) As of October 2022 when the Begos declaration was filed, Plaintiffs had failed to respond to that deficiency letter or produce any additional documents or information. (Begos Moving Decl*.* ¶ 19.)

Plaintiffs asserted in opposition that they had completed their production of medical charts and assignments. (Pls.' Sanctions Opp'n at 5). In the Murphy declaration, Murphy admits that his medical record-keeping had substantial gaps, stating that COVID-related safety precautions made record keeping difficult. (Murphy Decl. ¶ 4.) However, if such record keeping issues render Plaintiffs unable to find and produce medical records and assignments supporting these Itemized Claims for which they seek reimbursement, then there is no support for such claims, but Plaintiffs have not withdrawn these claims, and preclusion is a proper remedy.

According to Defendants, Plaintiffs made a "document dump of 86,000-plus pages" with their opposition brief, only to then withdraw the production (citing incompleteness) (Reply Decl. of Patrick W. Begos [Doc. # 82] ¶¶ 3-5.)[1] After a subsequent document dump in December 2022, Cigna reviewed the approximately 100,000 pages produced by Plaintiffs and supplemented their sanctions motion accordingly. (Begos Suppl Decl. ¶¶ 7-8.) Defendants also note that while Plaintiffs assert they have fully complied with the March 2022 Order in conclusory statements in their brief, they did not do so in any sworn declaration, instead only making the statement that they had produced "all relevant medical records and assignments that could be located[.]" (Defs.' Reply at 3-4, quoting Murphy Decl. ¶ 7.)

The Court had also ordered the production of documents pertaining to cash price listings, encompassed by Requests 9 and 20. (Defs.' Mem. at 16, citing March Hr'g Tr. at 50.) Document Request 9 sought production of "[a]ll documents and communications concerning Your and the Murphy Practice's cash prices for COVID-19 testing and COVID-19 related

---

[1] "To put the 86,000 pages in perspective, Plaintiffs had produced about 10,000 pages of documents by the April 15, 2022 deadline. Plaintiffs then produced nothing more for seven months (now claiming to have decided to focus on other litigations), before producing (and withdrawing) this document dump. This is further proof that Plaintiffs made no credible effort to comply with the March 2022 Order by the deadline imposed in that Order." (Defs.' Reply at 3 n.2.)

services, including changes to same, including the date(s) when such prices were publicly available, and where they were publicly available." (*Id.* at 15.) Request 20 also sought documents regarding "edits, revisions, updates from January 2020 on any web page, blog, ad or promotional material." (*Id.*) Such documents had not been produced at the time the Motion for Sanctions was briefed, though Defendants' counsel stated at the February 2023 hearing that he had received documents from Plaintiffs' counsel purporting to relate to cash prices the day prior to that hearing. (Feb. Hr'g Tr. at 60-61.)

The Court also required Plaintiffs to produce documents responsive to Requests related to their tortious interference claim. (Defs.' Mem. at 17, citing March Hr'g Tr. at 61.) When Plaintiffs' attorney stated that his "understanding is that there is no documentation of that. I will double check[,]" the Court responded "Okay, But they need to know that." (*Id.*) Defendants state that, as of the date of their motion, Plaintiffs have neither produced any responsive documents on this subject nor affirmatively stated that no such documents exist. (Defs.' Mem. at 17, citing Begos Moving Decl. ¶ 24.)

It is clear that Plaintiffs have repeatedly failed to comply with the March 2022 Court order. The production of thousands of pages of documents by Plaintiffs as late as December 2022 was well beyond the Court's deadline. Moreover, Plaintiffs have not responded to Defendants' April 24th Supplemental Declaration which represents that even after Plaintiffs made their late production in December 2022, Plaintiffs have failed to produce medical records and assignments for thousands of patients and itemized claims.

### 2. Remedies

#### a) Preclusion

Defendants seek an order precluding Plaintiffs from introducing any of this unproduced evidence, encompassing medical records, evidence of the cash price listing, and evidence of defamatory conduct by Cigna. (Defs.' Mem. at 14, 16-17) (citing *S.E.C. v. Benson*, No. 84 CIV. 2262 (PNL), 1985 WL 1308, at *2 (S.D.N.Y. Apr. 9, 1985) ("a litigant may not

maintain a position while refusing to furnish basic discovery of it. … He is appropriately precluded from offering evidence in support of the positions whose basis he refused to disclose.")); *see also Applera Corp. v. MJ Rsch. Inc.*, 220 F.R.D. 13, 19 (D. Conn. 2004) (precluding defendant from introducing any expert testimony due to failure to identify experts in accordance with scheduling order).

Plaintiffs concede that "Cigna has undoubtedly demonstrated that Plaintiff's production is behind schedule," but state "that fact alone does not remotely justify the draconian sanction of preclusion, which would effectively dismiss a substantial portion of Plaintiff's case." (Defs.' Mem. at 6.) Plaintiffs highlight the financial hardship they face in production, as well as the lack of prejudice alleged by Cigna as a consequence of the delays in discovery. (*Id.*). Defendants argue that they have been prejudiced by "compression of its time to evaluate the evidence in Plaintiffs' document dump." (Defs.' Reply at 8.) They also argue that sanctions are warranted even absent prejudice, because discovery sanctions are intended not only to protect the movant, but also to "serve a general deterrent effect on the case at hand and on other litigation[.]" (*Id.*, quoting *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988).)

Plaintiffs view Rule 37 sanctions as reserved for extreme cases where there is a "total failure" to respond to discovery or "especially serious disregard" of discovery obligations. (*Id.* at 6-7, collecting cases). They emphasize that "[t]he standard for evaluating discovery is reasonableness, not perfection." (*Id.* at 7, quoting *Agerbrink v. Model Service LLC, 2017 WL 933095*, at *5 (S.D.N.Y. Mar. 8, 2017).) They urge Court consideration of four factors when determining whether preclusion is appropriate: "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new evidence; and (4) the possibility of a continuance." (*Id.* at 7-8, citing *Pal v. Cipolla*, No. 3:18CV616 (MPS), 2020 WL 6866699, at *1 (D. Conn. Nov. 23, 2020).)

Defendants effectively distinguish the line of cases relied upon by Plaintiffs, noting that they are focused on Rule 37(a), (c), or (d) for failure to respond to a discovery request or appear at a deposition, rather than a Rule 37(b) motion for failure to comply with a court's discovery *order*. Indeed, the 4-factor test raised by Plaintiffs was applicable to Rule 37(c). *See Cipolla*, 2020 WL 6866699, at *1. The Second Circuit has provided the following analysis to guide this Court's discretion as to whether sanctions are appropriate under Rule 37(b):

> several factors may be useful in evaluating a district court's exercise of discretion to impose sanctions pursuant to this rule, including (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance. Because the text of the rule requires only that the district court's orders be 'just' however, and because the district court has wide discretion in imposing sanctions under Rule 37, these factors are not exclusive, and they need not each be resolved against the party challenging the district court's sanctions for us to conclude that those sanctions were within the court's discretion.

*S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).

Here, it is apparent that Plaintiffs have shown blatant and willful disregard for discovery deadlines in the Court's order. Months after the February 2023 hearing, Plaintiffs have failed to withdraw the 10,621 itemized claims for which they concede they have not produced medical records, despite promising at the hearing to do so. (Feb. Hr'g Tr. at 62.) Despite claiming to have complied with their discovery obligations, Plaintiffs have failed to respond to the April 24th Supplemental Declaration of Mr. Begos that, even after producing roughly 100,000 pages in December 2022, Plaintiffs have failed to produce thousands of medical records and assignments. It appears that, consistent with the prior statement of Mr. Murphy, Plaintiffs have decided to focus their resources elsewhere.

Defendants seek the dismissal of the 10,621 claims for which Plaintiffs admit they have failed to produce any medical records, and which Plaintiffs committed to withdrawing at the hearing. (Begos Suppl. Decl. ¶¶ 4-6; Feb. Hr'g Tr. at 62.) Defendants attach as Exhibit

1 to the Begos Supplemental Declaration a list of the 10,619 Itemized Claims to be dismissed with prejudice. Second, Defendants seek the dismissal for claims from 1,020 patients on the 2021 Damages Analysis for whom Plaintiffs have not produced an assignment, which are attached as Exhibit 2 to the Begos Supplemental Declaration. Third, Defendants seek dismissal of 1,072 Itemized Claims for which Plaintiffs have not produced any medical records, listed as Exhibit 3 to the Begos Supplemental Declaration.[2] Lastly, Defendants seek dismissal for 376 Itemized Claims, listed as Exhibit 4 to the Begos Supplemental Declaration, for which Plaintiffs have failed to produce documents showing they actually conducted COVID (or multiplex BioFire) testing for the patient at issue. (*Id.* at 4.)

Previously, on February 3, 2023, this Court ordered the withdrawal of any itemized claims for which no supporting medical records or assignments have been produced (February 3, 2023 Order [Doc. # 95]).) Given Plaintiffs' failure to comply with its discovery obligations, their failure to withdraw claims they promised to withdraw at the February hearing, and the uncontested declarations in the Begos Supplemental Declaration in the four months since it was submitted, the Court finds preclusion is warranted as to any evidence pertaining to the Itemized Claims and patients attached to the April 24th Begos Supplemental Declaration: the 10,619 Itemized Claims in Exhibit 1, the Itemized Claims pertaining to the 1,020 Patients in Exhibit 2, the 1,072 Itemized Claims in Exhibit 3, and the 376 Itemized Claims in Exhibit 4.

### 3. Attorneys' Fees

Defendants also seek attorneys' fees incurred in connection with their motion for sanctions. "Courts in this circuit have often awarded attorneys' fees to sanction a party who

---

[2] Defendants note that "[g]iven the volume of Itemized Claims, the volume of documents produced, and the time constraints under which our review was conducted, it is possible that some of the 1,072 Itemized Claims on Exhibit 3 duplicate some of the 10,619 Itemized Claims on Exhibit 1. Any such duplication is not prejudicial to Plaintiffs, because an Itemized Claim that appears on either list should be dismissed." (Begos Suppl. Decl. ¶ 13 n.2.)

disregards his discovery obligations." *See Tourmaline Partners, LLC v. Monaco*, No. 3:13CV108 WWE, 2014 WL 4810253, at *8 (D. Conn. Sept. 23, 2014) (collecting cases). Here, Plaintiffs' disregard of their discovery obligations due to their decision "divert resources to other litigations causing some delay" (Murphy Decl. ¶ 6) led Defendants to incur costs in litigating their motion for sanctions. The Court finds it appropriate that the burden of such costs be shouldered by the Plaintiffs. Defendants shall submit their application for associated reasonable fees with the requisite documentation within 30 days. Plaintiffs' response may be filed up to 14 days thereafter.

### III. Conclusion

For the foregoing reasons, Defendants' Motion for Sanctions [Doc # 72] is GRANTED. Plaintiffs are precluded from offering evidence in support of the 10,619 Itemized Claims in Exhibit 1, the Itemized Claims pertaining to the 1,020 Patients in Exhibit 2, the 1,072 Itemized Claims in Exhibit 3, and the 376 Itemized Claims in Exhibit 4 (in the Begos Suppl. Decl. [Doc. # 108]). The Court also awards Defendants' reasonable attorneys' fees for prosecution of their Motion for Sanctions, the specific amount of which remain to be determined.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of August, 2023