**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

------------------------------------------------------------------------ x

MURPHY MEDICAL ASSOCIATES, LLC;        :
DIAGNOSTIC AND MEDICAL SPECIALISTS OF    :
GREENWICH, LLC; NORTH STAMFORD MEDICAL   :
ASSOCIATES, LLC; COASTAL CONNECTICUT      :     3:20-cv-01675-VAB
MEDICAL GROUP, LLC; and STEVEN A.R. MURPHY,   :
MD,                                         :
                                             :
              Plaintiffs,              :      January 9, 2025
v.                                               :
                                             :
CIGNA HEALTH AND LIFE INSURANCE COMPANY   :
and CONNECTICUT GENERAL LIFE INSURANCE    :
COMPANY,                                    :
                                             :
             Defendants.            :

------------------------------------------------------------------------ x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FUTHER SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

> Robinson & Cole LLP
> 1055 Washington Boulevard
> Stamford, CT 06901
> Tel: (203) 462-7500
>
> *Attorneys for Defendants*

*Of Counsel*:
*Patrick W. Begos*
*Raymond J. Carta*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...............................................................................................................ii

I.      Introduction.......................................................................................................................... 1

II.     Plaintiffs Have Not Raised Any Genuine Issue of Material Fact ....................................... 2

III.    Legal Argument ................................................................................................................... 3

        A.      The Court Should Grant Summary Judgment on the ERISA Benefits
                Claim......................................................................................................................... 3

                1.      The CARES Act does not give Plaintiffs ERISA standing without
                        assignments. ................................................................................................. 3

                2.      MMA, DDMG, and Dr. Murphy cannot establish standing as a
                        matter of law. ............................................................................................... 4

                3.      DMSOG's and NSMA's electronic registration does not give them
                        standing. ....................................................................................................... 5

                4.      Plaintiffs failed to exhaust administrative remedies requiring
                        judgment on all remaining Itemized Claims. ............................................... 6

                5.      Plaintiffs' own violation of the CARES Act precludes their ERISA
                        claim.............................................................................................................. 8

        B.      The Court Should Grant Summary Judgment Dismissing the CUTPA
                Claim......................................................................................................................... 9

IV.     CONCLUSION................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chimney v. Quiros*,
No. 3:21-cv-00321 (JAM), 2023 WL 2043290 (D. Conn. Feb. 16, 2023) ...............................2

*Comer v. Cisneros*,
37 F.3d 775 (2d Cir. 1994)....................................................................................................5

*Gordon Surgical Grp., P.C. v. Empire HealthChoice HMO, Inc.*,
724 F. Supp. 3d 158 (S.D.N.Y. 2024)....................................................................................7

*Jones v. UNUM Life Ins. Co. of Am.*,
223 F.3d 130 (2d Cir. 2000)...................................................................................................7

*Murphy Med. Assocs., LLC v. United Med. Res., Inc.*,
No. 3:22-cv-00083 (MPS), 2024 WL 1072731 (D. Conn. Mar. 12, 2024) .............................9

*Murphy Med. Assocs., LLC v. Yale Univ.*,
120 F.4th 1107 (2d Cir. 2024) ...............................................................................................4

*Naples v. Keystone Bldg. & Dev. Corp.*,
295 Conn. 214 (2010) ............................................................................................................4

*Navarro v. Town of Stratford*,
No. 22-cv-01254 (VAB), 2024 WL 4008229 (D. Conn. Aug. 30, 2024).................................1

*NEMS, PLLC v. Harvard Pilgrim Health Care of Connecticut, Inc.*,
350 Conn. 525 (2024) ..........................................................................................................10

*Rojas v. Cigna Health & Life Ins. Co.*,
793 F.3d 253 (2d Cir. 2015)..............................................................................................3, 6

**Statutes**

Employee Retirement Income and Security Act of 1974 ...................................................... *passim*

CARES Act of 2020................................................................................................................ *passim*

Conn. Gen. Stat. § 38a-477 (2023) ...................................................................................1, 9, 10

**Rules and Regulations**

Local Civ. Rule 56 ................................................................................................................ *passim*

Defendants, Cigna Health and Life Insurance Company, and Connecticut General Life Insurance Company (together, "Cigna"), submit this reply brief in further support of their motion for summary judgment dismissing the Third Amended Complaint.

## I.    <u>INTRODUCTION</u>

It is remarkable that Plaintiffs attempt to maintain the fiction that this action is a consequence of Cigna's "scorched earth war of attrition," rather than Plaintiffs' own failings. Opp. Br., p. 1. The undisputed evidence shows that Plaintiffs' claims suffer from fatal flaws of their own making. For example, Plaintiffs cannot establish that they performed the services that form the basis of over 10,000 Itemized Claims. They now admit that, for the 3,000 Itemized Claims for which they have some records, the company that seeks payment is likely not the company that treated the patient. They admit that they failed to comply with their obligations under the CARES Act, which is the predicate for all of their claims. The undisputed evidence makes clear that Cigna had every reason to question Plaintiffs' claims, and to conclude that Plaintiffs' claim submissions could not be trusted.

Plaintiffs do not oppose Cigna's motion to the extent it seeks: (a) judgment on the Itemized Claims on which they were precluded from introducing evidence, Mov. Br., pp. 23-24; (b) judgment on the CUTPA claim to the extent based on an alleged violation of the Surprise Billing Law, *id.*, pp. 32-34; and (c) judgment on the tortious interference claim, *id.*, pp. 37-38. The Court should grant summary judgment on these claims.

Where Plaintiffs attempt to oppose the motion, their efforts are largely pro-forma. They have failed to submit "specific evidence demonstrating the existence of a genuine dispute of material fact." *Navarro v. Town of Stratford*, No. 22-cv-01254 (VAB), 2024 WL 4008229, at *2-3 (D. Conn. Aug. 30, 2024) (quotation marks omitted). Rather, they improperly base their opposition "on conclusory allegations or unsubstantiated speculation." *Id.* (quotation marks

1

omitted). Plaintiffs have not complied with Local Rule 56(a)(2)(ii), because they did not set forth

"additional material facts" that Plaintiffs contend establish a genuine issue of fact supporting

summary judgment. *See Chimney v. Quiros*, No. 3:21-cv-00321 (JAM), 2023 WL 2043290, at *1

(D. Conn. Feb. 16, 2023) ("If a party fails to comply with [Local Rule 56(a)(2)(ii)] … the Court

may resolve factual issues against the party who has not complied."). The Court should

therefore grant Cigna's motion in its entirety.

## II.    <u>PLAINTIFFS HAVE NOT RAISED ANY GENUINE ISSUE OF MATERIAL FACT</u>

Plaintiffs admit many of the material facts contained in Cigna's Rule 56(a)(1) Statement,

including:

- They failed to create or maintain records of more than 10,000 Itemized Claims, and as a result, the Court has precluded them from introducing evidence on any of those Claims. *See* Response to Rule 56(a)(1) Statement (Doc. 160.11) ("Rule 56 Response"), ¶¶ 17-21.

- They failed to comply with the obligation imposed on them by the CARES Act to post a valid cash price for Covid testing. *Id.*, ¶¶ 31-35.

- They have no evidence that Cigna defamed them, and therefore cannot establish a claim for tortious interference with their contracts or business relations. *Id.*, ¶¶ 36-44.

Where Plaintiffs purport to dispute any of the facts on which Cigna's motion is based, their

denials are not supported by any specific evidence. For example, Cigna introduced specific

evidence that Plaintiffs did not produce a single document showing that they administratively

appealed a single Itemized Claim. Foote-Smith Dec. (Doc. 157-5), ¶ 10; Rule 56(a)(1) Statement

(Doc. 157-1), ¶ 29. Plaintiffs' "dispute" this but they do not identify evidence showing that they

appealed any Itemized Claim; indeed, they admit that it was "impossible for us to perform

comprehensive administrative responses[.]" Murphy Dec. (Doc. 160-11), ¶ 47.

Plaintiffs do not dispute that Cigna's SIU report accurately summarized the evidence

gathered in the investigation, including the data analytics, customer interviews, responses to

verification of service letters, and the results of the review of probe samples. Rule 56 Response,

<p style="text-align:center">2</p>

¶¶ 6-7. Nonetheless, Plaintiffs assert that they dispute the conclusions in that report, *id.*, ¶ 12, without citing any contrary evidence other than Dr. Murphy's conclusory assertion that "[w]e have consistently, through today, disputed these audit findings in their entirety." Murphy Dec., ¶ 52.

Plaintiffs' argument to avoid the mismatch between the companies receiving assignments (DMSOG and NSMA) and the entity that submitted more of the claims (MMA) is bizarre. Rule 56 Response, ¶ 28. Dr. Murphy argues that this mismatch should be inconsequential because he chose to disregard the separate existence of the companies *that he formed*, instead operating them "as a combined, single unit with a unified management and clinical structure." Murphy Dec., ¶ 37. Essentially, Plaintiffs contend that the Court should allow them to pierce their own corporate veils.

## III.    LEGAL ARGUMENT

### A.    The Court Should Grant Summary Judgment on the ERISA Benefits Claim

#### 1.    *The CARES Act does not give Plaintiffs ERISA standing without assignments.*

Tacitly acknowledging the gross deficiencies in assignments, Plaintiffs argue that the CARES Act makes them beneficiaries of their patients' ERISA plans (and gives them standing) by mandating that plans make direct payments to providers for Covid tests. Opp. Br., pp. 4-6. But the Second Circuit has explicitly held that ERISA plan provisions allowing or mandating direct payments to providers do not make providers ERISA "beneficiaries." *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 256 (2d Cir. 2015) (finding unpersuasive Rojas' argument for standing where he "points to a section of the Benefit Plan that provides that Cigna may pay Rojas directly for reimbursement for covered services.").

Plaintiffs' contention that the CARES Act somehow supersedes this rule is nothing less than

3

a re-hash of their failed argument that the CARES Act gave them a private right of action. *Murphy Med. Assocs., LLC v. Yale Univ.*, 120 F.4th 1107, 1113 (2d Cir. 2024) ("section 3202 of the CARES Act does not evince congressional intent to create a cause of action for providers of COVID-19 testing to seek reimbursement from health plans in court."). In affirming dismissal of Plaintiffs' ERISA benefits claim for lack of standing, *Yale* held that the CARES Act did not give Plaintiffs' ERISA standing: "we will not lightly infer congressional intent to override ERISA's standing requirements, as Murphy asks us to do." *Id.*

### 2. *MMA, DDMG, and Dr. Murphy cannot establish standing as a matter of law.*

Plaintiffs admit that all of the assignments that they produced in this action purport to assign rights only to DMSOG and NSMA, and not to MMA, DDMG, or Dr. Murphy. Rule 56 Response, ¶¶ 24, 25. Those three Plaintiffs attempt to avoid summary judgment against them by claiming variously that the separate companies should be disregarded, or that Dr. Murphy intended to transfer the assignments from DMSOG and/or NSMA to MMA. Opp. Br., pp. 6-8. Their arguments fail.

Plaintiffs have not cited any case, and Cigna has not found any, holding that a company may pierce its own veil in order to allow rights it allegedly holds to be exercised by another. In any event, Plaintiffs have not made a claim to pierce any corporate veil and have not introduced evidence to establish a basis to do so. Under Connecticut law, veil piercing requires proof that the company at issue "is used primary as an intermediary to perpetuate fraud or promote injustice." *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 233 (2010). Even if Plaintiffs had submitted evidence of fraud, the Court should not allow them to gain ERISA standing

4

through their own fraud.[1]

As a hedge, Plaintiffs also contend that there is a question of fact whether DMSOG and/or NSMA actually re-assigned the assignments to MMA. Opp. Br., p. 8. Even if it were possible to transfer ERISA standing in that way, Plaintiffs acknowledge that such a re-assignment "require[s] manifestation of a *present* intent to transfer[.]" *Id.*, quoting *In re Intl. Engineers, Inc.*, 812 F.2d 78, 80 (2d. Cir 1987) (emphasis added). Plaintiffs must establish that MMA had standing when this action was commenced, *Comer v. Cisneros*, 37 F.3d 775, 791 (2d Cir. 1994), but they have not produced any evidence that DMSOG or NSMA manifested an intention to reassign assignments to MMA *before this action was commenced*. Rather, Dr. Murphy merely avers, for the first time in 2024, that "it was my intent" that all of DMSOG's and NSMA's rights be transferred to MMA. Murphy Dec., ¶ 41. Here again, however, he is confounded by his own pleading: if he believed he had reassigned all assignments to MMA, such that only MMA had standing, it was improper for him to assert that DMSOG, NSMA, DDMG, and he had standing to assert ERISA claims as assignees. Third Amended Complaint (Doc. 92) ("TAC"), ¶ 115.

The Court should grant summary judgment dismissing the ERISA cause of action for any Itemized Claim that was submitted under a tax identification number or National Provider Identifier number belonging to MMA, DDMG or Dr. Murphy.

### 3.    *DMSOG's and NSMA's electronic registration does not give them standing.*

The electronic registration that merely assigned to DMSOG and NSMA "all money to which [the patient is] entitled for medical expenses" does not assign ERISA claims. Mov. Br., pp. 25-

---

[1] There are many additional problems with this veil piercing argument. For example, if Dr. Murphy's sworn statements are to be believed, *he* dominated all of his companies; he does not establish that *MMA*, which apparently is the entity that submitted most of the Itemized Claims, dominated the other companies. Additionally, Dr. Murphy's assertion that he intended to roll up all of his companies into a single entity is contradicted by his decision to include as plaintiffs in *this action* the companies that he now contends should be deemed to have ceased to exist.

5

27. As Plaintiffs admit, the Second Circuit has not adopted their argument that this language is adequate to assign ERISA standing. Opp. Br., pp. 9-12. If a patient is deemed to have assigned away their ability to assert an ERISA claim, that patient forfeits the right to assert a claim for the same relief; it is reasonable to require the language creating that assignment be clear.

Even if one were to assume that an assignment of the right to receive payment could assign away ERISA standing, the circumstances here preclude such a finding. Assignment of ERISA standing occurs where the patient has contracted with an out-of-network provider for services, *and agrees to pay the provider for those services*, creating a liability for which the patient can assert a claim against his health plan, and file suit under ERISA if the claim is denied. The patient has standing because he has a concrete injury. Here, the patients never had any liability to Plaintiffs, because Plaintiffs repeatedly represented that there was no cost to patients. Rule 56 Response, ¶¶ 34, 35; TAC, ¶¶ 42, 80.[2]

Finally, Plaintiffs make an incomprehensible argument that, because the testing services that DMSOG and NSMA provided allegedly were covered, the coverage "creates a benefit that belongs to the plan enrollee patient and, given the direct payment requirement, the Murphy Practice." Opp. Br., p. 12. But every ERISA benefits claim purports to seek a benefit covered by the plan at issue; a claim of coverage cannot make an assignment unnecessary. *Rojas*, *supra*.

### 4. *Plaintiffs failed to exhaust administrative remedies requiring judgment on all remaining Itemized Claims.*

Plaintiffs cannot dispute that governing precedent required them to exhaust administrative remedies before filing suit, unless they can make a *clear and positive showing* that exhaustion would have been futile. Mov. Br., pp. 27-29; Opp. Br., p. 13.

---

[2] Plaintiffs' contention that it was "an accurate statement of law" to say patients would not be charged, Opp. Br., p. 10, is manifestly false, because the CARES Act, by requiring providers to post cash prices, expressly contemplated that patients could choose to pay cash for a Covid test. Mov. Br., p. 30, citing 45 C.F.R. § 182.20.

Cigna submitted competent evidence that Plaintiffs did not produce "any documents demonstrating that Plaintiffs administratively appealed any of the 3,508 Remaining Claims." Foote-Smith Dec., ¶ 10. In opposition, Plaintiffs were required to "come forward with specific evidence demonstrating" that they administratively appealed those Claims. Mov. Br., p. 22. They have not done so; indeed, they admit prosecuting all of those appeals was "impossible[.]" Murphy Dec., ¶ 47. This is plainly inadequate to create a question of fact to oppose summary judgment.[3]

Plaintiffs also fail to submit any *specific evidence* sufficient to make a *clear and positive showing* of futility. Where Plaintiffs cannot prove that a single pre-litigation administrative appeal was denied, they cannot possibly establish that all administrative appeals would have been futile. *Gordon Surgical Grp., P.C. v. Empire HealthChoice HMO, Inc.*, 724 F. Supp. 3d 158, 169 (S.D.N.Y. 2024) ("Plaintiffs have not shown futility because the SAC does not allege that Plaintiffs (or the Members/Patients) ever attempted to participate in the appropriate appeals processes provided by the various Plans.").

Plaintiffs also attempt to demonstrate futility by citing their alleged inability to administratively appeal the results of Cigna's SIU audit. Opp. Br., p. 14. But that audit expressly concerned claims *that Cigna had already paid*, and which the SIU concluded should not have been paid. That audit has no bearing on appealing the denied Itemized Claims for which Plaintiffs seek payment in this action.

Nor do the flags that were placed on MMA's claims as a result of the SIU investigation establish futility. Cigna submitted evidence that the first flag (pending claims until medical

---

[3] Dr. Murphy's exhibit showing that he appealed three claims in 2023 – years after this suit was filed – cannot establish exhaustion of administrative remedies because exhaustion must be accomplished *before* the suit is filed. *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 140 (2d Cir. 2000).

records were submitted) did not result in a denial unless and until MMA failed to submit medical records, and that neither flag prevented Plaintiffs from administratively appealing a denied claim. Canto Dec. (Doc. 157-2), ¶ 15. Plaintiffs have not introduced evidence that Cigna refused to accept administrative appeals of claims denied as a result of one of those flags, because Plaintiffs never attempted to appeal any of those denials.

**5.      *Plaintiffs' own violation of the CARES Act precludes their ERISA claim.***

Plaintiffs admit or do not dispute the material facts on this issue: the CARES Act required them to post a cash price for Covid tests; they failed to post any price until November 2020; the evidence that they offer to demonstrate that they posted a price in November 2020 is not admissible; and the November 2020 price did not comply with the governing regulations for a "cash price." Rule 56 Response, ¶¶ 31-35; Mov. Br., pp. 18-20, 29-32. Thus, there is no genuine issue of material fact that Plaintiffs failed to comply with the CARES Act.

Section 3202(a) of the CARES Act provides two options for setting a price for a Covid test: (1) a properly posted cash price; or (2) a negotiated rate that is "less than such cash price." Pub. L. No. 116-136 § 3202(a)–(b), 134 Stat. 281, 367 (2020). The CARES Act says nothing about a third option of resorting to state law to set a price. Plaintiffs rely on Frequently Asked Questions with the circular statement that state law applies "[i]f the method for determining reimbursement … is governed by applicable state law[.]" Opp. Br., p. 18. But state law does not govern reimbursement in this ERISA claim; *ERISA* governs. Even if state law governed, Connecticut law prevents Plaintiffs from using the CARES Act to recover payment for services that they rendered (if they rendered them at all) in violation of the CARES Act. Mov. Br., pp. 31-32.

Plaintiffs are simply wrong when they assert that the Surprise Billing Law, C.G.S. § 38a-477aa, supplies a price. The law applies only to a patient with an "emergency condition," C.G.S. § 38a-477aa(a)(1), which is defined as "a medical condition manifesting itself by acute

symptoms of sufficient severity, including severe pain, such that a prudent layperson with an average knowledge of health and medicine, acting reasonably, would have believed that the absence of immediate medical attention would result in serious impairment to bodily functions or serious dysfunction of a bodily organ or part, or would place the person's health … in serious jeopardy." C.G.S. § 38a-591a (14). Plaintiffs have not submitted any evidence that any Patient arrived at Plaintiffs' drive-up testing site with symptoms so severe as to result in "serious impairment of bodily function" or put their health "in serious jeopardy" without "immediate medical attention." Plaintiffs certainly have not cited any precedential decision establishing that mild Covid symptoms constituted an "emergency condition" under the Surprise Billing Law. *See Murphy Med. Assocs., LLC v. United Med. Res., Inc.*, No. 3:22-cv-00083 (MPS), 2024 WL 1072731, at *12 (D. Conn. Mar. 12, 2024) ("Allegations that some of Murphy Medical's patients had certain unspecified symptoms of COVID-19 or 'exposure' or 'potential[ ]' exposure to COVID-19—without more—do not support an inference that these patients" had an emergency condition under the surprise bill law.).

Finally, even if the Surprise Billing Law did apply, Plaintiffs have not produced any evidence in this case that would allow them to prove a price for any of the Itemized Claims under that law. Specifically, Plaintiffs have not produced evidence or served any expert report detailing any of the pricing options under the law: "i) The amount the insured's health care plan would pay for such services if rendered by an in-network health care provider; (ii) the usual, customary and reasonable rate for such services; or (iii) the amount Medicare would reimburse for such services." C.G.S.A. §381-477aa(b)(3)(a). Because fact and expert discovery have ended, Plaintiffs cannot remedy the absence of evidence that they would need to prove such a claim.

**B.       The Court Should Grant Summary Judgment Dismissing the CUTPA Claim**

Plaintiffs do not dispute that *NEMS, PLLC v. Harvard Pilgrim Health Care of Connecticut,*

*Inc.*, 350 Conn. 525 (2024), requires dismissal of their CUTPA claim to the extent premised on a violation of the Surprise Billing Law.

Plaintiffs' argument that *NEMS* allows them to base a CUTPA claim on an alleged violation of a *federal* statute such as the FFCRA or the CARES Act ignores *NEMS'* holding that the *Connecticut* legislature "intended to occupy the field of defining unfair insurance practices," and, accordingly, violation of a non-CUIPA statute cannot support a CUTPA claim absent "a clear statement of legislative intent … that the violation of a different insurance related statute is actionable under CUTPA." *NEMS*, 350 Conn. at 536, 539. Plaintiffs do not claim that the *Connecticut* legislature issued any statement of legislative intent that a violation of the FFCRA or the CARES Act by a health plan is actionable under CUTPA.

The fact that the FFCRA and the CARES Act were emergency statutes or had noble purposes is immaterial; the Connecticut Supreme Court has made crystal clear that Congress simply does not have the authority to expand the scope of the insurance-related conduct that is actionable under CUTPA. The sole power to do so lies with the Connecticut legislature and the Connecticut Insurance Commissioner. Moreover, it is bizarre even to suggest that Congress, which did not see fit to include a private right of action in the FFCRA or the CARES Act for providers like Plaintiffs at all, nonetheless intended that a violation would be considered an unfair insurance practice that gives rise to an unfair trade practice claim under Connecticut law.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court should grant Cigna's motion in its entirety and dismiss Plaintiffs' action.

Respectfully submitted,

ROBINSON & COLE LLP

By:/s/ *Patrick W. Begos*
    Patrick W. Begos (ct19090)
    Raymond J. Carta (ct30088)
    1055 Washington Boulevard
    Stamford, CT 06901
    Tel: (203) 462-7500
    Email: pbegos@rc.com
    Email: rcarta@rc.com

    *Counsel for Defendants*

11

**<u>CERTIFICATION</u>**

I hereby certify that on January 9, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Dated: January 9, 2025

<div align="center" style="margin-left:auto">

*/s/ Patrick W. Begos*
Patrick W. Begos

</div>