**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---------------------------------------------------------------------- x

MURPHY MEDICAL ASSOCIATES, LLC;
DIAGNOSTIC AND MEDICAL SPECIALISTS OF
GREENWICH, LLC; NORTH STAMFORD MEDICAL
ASSOCIATES, LLC; COASTAL CONNECTICUT
MEDICAL GROUP, LLC; and STEVEN A.R. MURPHY,
MD,

                    Plaintiffs,

v.

CIGNA HEALTH AND LIFE INSURANCE COMPANY
and CONNECTICUT GENERAL LIFE INSURANCE
COMPANY,

                    Defendants.

---------------------------------------------------------------------- x

:
:
:
:
:     3:20-cv-01675-VAB
:
:
:
:
:     November 17, 2025
:
:
:
:
:
:
:
:

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED MOTION FOR SUMMARY JUDGMENT

Robinson & Cole LLP
1055 Washington Boulevard
Stamford, CT 06901
Tel: (203) 462-7500

*Attorneys for Defendants*

*Of Counsel*:
*Patrick W. Begos*
*Raymond J. Carta*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...............................................................................................II

I.    INTRODUCTION ................................................................................................. 1

II.   THE JULY 2025 SUMMARY JUDGMENT DeCISION................................................. 3

    A.    The Ruling on Exhaustion of Administrative Remedies ...................................... 4

III.  STATEMENT OF FACTS ....................................................................................... 6

    A.    Plaintiffs Did Not Exhaust Administrative Remedies ........................................... 6

    B.    Plaintiffs Are Improperly Suing Cigna for Services Provided to Non-Cigna Members. .................................................................................................. 8

IV.   APPLICABLE LEGAL STANDARD ......................................................................... 8

V.    LEGAL ARGUMENT ............................................................................................. 9

    A.    Plaintiffs failed to exhaust administrative remedies ............................................. 9

        1.    The documentary evidence establishes Plaintiffs' failure to exhaust administrative remedies for twenty-four plans. ...................................... 11

        2.    Cigna has submitted sufficient summary evidence to establish Plaintiffs' failure to exhaust administrative remedies for all of the remaining Itemized Claims. ....................................................................... 13

    B.    Plaintiffs Cannot Recover Against Cigna for Services Provided to Patients Who Were Not Covered By a Cigna Plan ........................................................... 16

VI.   CONCLUSION.................................................................................................... 16

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfarone v. Bernie Wolff Const. Corp.*,
  788 F.2d 76 (2d Cir. 1986)), *cert. denied,* 479 U.S. 915 (1986)....................................................9

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
  920 F. Supp. 2d 475 (S.D.N.Y. 2013).......................................................................................14

*Carrion v. AGFA Constr. Inc.*,
  No. 10-cv-3327 (BMC), 2011 WL 13128122 (E.D.N.Y. May 12, 2011), *aff'd,*
  720 F.3d 382 (2d Cir. 2013).....................................................................................................15

*Cotten v. Altice USA, Inc.*,
  No. 19-cv-01534 (RJD)(ST), 2020 WL 32433 (E.D.N.Y. Jan. 2, 2020)...................................5

*Fagiola v. Nat'l Gypsum Co. AC & S.*,
  906 F.2d 53 (2d Cir. 1990).......................................................................................................14

*Gill v. Arab Bank, PLC*,
  893 F. Supp. 2d 523 (E.D.N.Y. 2012) .......................................................................................13

*Jones v. UNUM Life Ins. Co. of Am.*,
  223 F.3d 130 (2d Cir. 2000).....................................................................................................11

*Kennedy v. Empire Blue Cross & Blue Shield*,
  989 F.2d 588 (2d Cir. 1993)......................................................................................................11

*Neufeld v. Cigna Health & Life Ins. Co.*,
  No. 3:17-cv-01693 (WWE), 2018 WL 4158377 (D. Conn. Aug. 30, 2018) .............................5

*Quigley v. Citigroup Supplemental Plan for Shearson Transfers*,
  No. 09-cv-8944 (PGG), 2011 WL 1213218 (S.D.N.Y. Mar. 29, 2011) ..................................10

*R & R Assocs., Inc. v. Visual Scene, Inc.*,
  726 F.2d 36 (1st Cir. 1984)......................................................................................................14

*Richard Mfg. Co. v. Richard*,
  513 F. Supp.3d 261 (D. Conn. 2021)........................................................................................10

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016).......................................................14

*U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian
  Const. Corp.*,
  95 F.3d 153 (2d Cir. 1996)........................................................................................................14

ii

*United States v. Appolon*,
  695 F.3d 44 (1st Cir. 2012)........................................................................................13

*United States v. Duncan*,
  919 F.2d 981 (5th Cir. 1990) ....................................................................................13

*United States v. Oshatz*,
  912 F.2d 534 (2d Cir. 1990)......................................................................................15

*Zarringhalam v. United Food & Com. Workers Int'l Union Loc. 1500 Welfare*
  *Fund*,
  906 F. Supp.2d 140 (E.D.N.Y. 2012) .......................................................................10

**Statutes**

Coronavirus Aid, Relief and Economic Security Act of 2020.....................................................3, 4

Employee Retirement Income and Security Act of 1974 ....................................................... *passim*

Families First Coronavirus Response Act of 2020 ..........................................................................3

No Surprises Act of 2020.................................................................................................................4

**Rules and Regulations**

Fed. R. Civ. P. 56............................................................................................................................8

Fed. R. Evid. 1006 ...............................................................................................................2, 13, 14

29 C.F.R. § 2560.503-1..............................................................................................................10, 11

iii

Defendants, Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (together, "Cigna"), submit this memorandum of law in support of the renewed motion for summary judgment dismissing the remaining ERISA claims in the Third Amended Complaint.

## I.    <u>INTRODUCTION</u>

In this action, Plaintiffs seek to recover benefits payable, if at all, under Cigna-administered and ERISA-governed health plans covering more than one thousand people who sought Covid tests from Plaintiffs during the pandemic.

By order dated July 18, 2025 (Doc. 168), the Court granted in part and denied in part Cigna's motion for summary judgment. As pertinent to this renewed motion, the Court denied without prejudice to renewal the portion of Cigna's motion asserting that the ERISA claim (Count I) should be dismissed due to Plaintiffs' failure to exhaust administrative remedies:

> Defendants have not provided the relevant plan documents or provisions of such plans concerning the administrative appeals process for the relevant claims in their initial briefs. … As a result, because Defendants have not submitted record evidence establishing that an administrative appeals process was available under the relevant plans for the Itemized Claims, the Court does not consider their arguments regarding exhaustion of administrative remedies at this time. … Accordingly, the Court denies summary judgment as to Plaintiffs' ERISA claims without prejudice to renewal.

(Doc. 168, at 19-20).

Cigna now renews its motion for summary judgment as authorized by the Court. In support of this motion, Cigna submits plan documents for twenty-six patients whose alleged treatment by Plaintiffs comprises 183 Itemized Claims, for which Plaintiffs allege that they billed Cigna $202,974.00.[1] Each plan requires exhaustion of administrative remedies before filing suit, and each specifies the particular administrative remedies that must be exhausted. In particular,

---

[1] An Itemized Claim refers to a claim asserted by Plaintiffs to recover for a particular service (designated by CPT code) allegedly rendered to a particular patient on a particular date.

each plan requires at least one administrative appeal. And each plan contains the following language, or substantially similar language, requiring the exhaustion of administrative remedies before bringing any civil lawsuit: "If your plan is governed by ERISA, you have the right to bring a civil action under section 502(a) of ERISA if you are not satisfied with the outcome of the Appeals Procedure. In most instances, you may not initiate a legal action against CIGNA until you have completed the appeal processes."

Plaintiffs have not produced any evidence demonstrating that they submitted even a single administrative appeal on any Itemized Claim in this action, including the Itemized Claims governed by these twenty-four plans. Though Plaintiffs have alleged that administrative appeals would have been futile, they have not introduced evidence to make the requisite "clear and positive showing" of futility. The Court should therefore grant summary judgment dismissing the Itemized Claims governed by these twenty-four plans.

Cigna also submits with this motion evidence that the language regarding appeals and exhaustion that appears in the submitted plans is standard in all of its ERISA-governed health plans. Thus, Cigna's ERISA-governed plans all require claimants to submit at least one administrative appeal if dissatisfied with a claim determination, and to require the claimant to exhaust their administrative remedies before filing suit. Cigna does so in order to comply with the law, which *requires* plans to provide an administrative process for review of adverse benefit determinations. Cigna's plans fully comply with that requirement.

As such, the Court should conclude that Cigna's summary evidence of the terms of the remaining plans at issue in this case is admissible pursuant to Fed. R. Evid. 1006, and provides "record evidence establishing that an administrative appeals process was available under the relevant plans for [all of] the Itemized Claims[.]" (Doc. 168, p. 19). In particular, Rule 1006 is

applicable because the remaining Itemized Claims concern services allegedly provided to more than 1,200 patients, meaning that there are more than 1,200 health plans whose language would need to be reviewed to assess the specific exhaustion requirements. Under the circumstances, a summary of the relevant language in the Plans is properly admissible, and supports summary judgment dismissing all Itemized Claims for failure to exhaust administrative remedies.

In the event the Court does not dismiss all Itemized Claims, Plaintiffs seek recovery for fourteen patients who were not Cigna members. For these patients, Plaintiffs produced documents demonstrating that they participated in plans administered by unrelated companies (such as Aetna or a Blue Cross entity). Because these patients are not Cigna members, the Court should grant summary judgment dismissing the Itemized Claims for those patients.

## II.    THE JULY 2025 SUMMARY JUDGMENT DECISION

The July 2025 summary judgment decision entered the following relief: (i) dismissing Plaintiffs' ERISA Count regarding more than ten thousand Itemized Claims for which Plaintiffs were precluded from offering evidence, leaving approximately 3,500 Itemized Claims remaining (Doc. 168, at 9); (ii) denying summary judgment as to the ERISA Count for the remaining Itemized Claims without prejudice to renewal (*id.*, at 20-21); (iii) dismissing Plaintiffs' CUTPA and Tortious Interference Counts (*id.* at 25-30).

Thus, what remains pending in the action is a single ERISA Count seeking benefits for approximately 3,500 Itemized Claims. In its summary judgment decision, the Court ruled on several issues that narrowed and/or highlighted potential issues for trial:

Regarding Plaintiffs' standing to assert an ERISA claim on behalf of its patients, the Court: (a) rejected Plaintiffs' argument that the FFCRA and the CARES Act made assignments unnecessary (Doc. 168 at 12-13); (b) held that the electronic registration forms on which Plaintiffs relied "can be interpreted to demonstrate an intent to assign any right to payment that the patient

may have" to Plaintiffs Diagnostic Medical Specialists of Greenwich ("DMSOG") and North Stamford Medical Associates ("NMSA"), which is "sufficient to establish ERISA standing (*id.*, at 13-14); (c) held that, construing the evidence in the light most favorable to Plaintiffs, "Plaintiffs' representations that they would not seek payment from patients is not sufficient to establish that the patients owed no 'debt' to Plaintiffs for their medical services that could be recovered through their insurance" (*id.*, at 14); and (d) concluded that "Plaintiffs have raised a genuine issue of material fact as to whether the Plaintiffs were, at the time of the assignments, essentially a single 'healthcare provider' such that the assignment agreements [running to DMSOG and NSMA] intended to assign benefits to MMA [Murphy Medical Associates]." (*Id.*, at 15).

Regarding Plaintiffs' failure to post a cash price on their website, as required under the CARES Act, the Court held that "dismissal of Plaintiffs' ERISA claims for failure to post a cash price is improper[;]" noted that the failure to post a cash price "may limit [Plaintiffs'] ability to prove damages should Plaintiffs succeed in establishing Defendants' liability for their ERISA claims[;]" and held that the Court "will not and cannot definitively resolve … now" the issue whether any of Plaintiffs' services were emergency services "such that the Surprise Billing Law would apply and provide a price at trial[.]" (*Id.*, at 24-25).

### A.    The Ruling on Exhaustion of Administrative Remedies

The Court denied summary judgment regarding exhaustion of administrative remedies without prejudice to renewal. After discussing the background legal issues applicable to exhaustion, and summarizing the parties' arguments, the Court ruled:

> Defendants have not provided the relevant plan documents or provisions of such plans concerning the administrative appeals process for the relevant claims in their initial briefs. As a result, the Court instructed that "[t]o the extent that Defendants seek to rely on arguments regarding the alleged failure to exhaust administrative remedies on summary judgment . . . Defendants must clarify the administrative remedies available under the terms of the relevant plans." Order, ECF No. 163. Defendants informed the Court that "[t]his lawsuit concerns approximately 13,000 claims

4

for medical services provided to approximately 2,600 individual Cigna members," Mot. for Status Conference, ECF No. 164 (Jul. 8, 2025), and, at the parties' request, the Court heard alternatives to submitting the plan documents, see Min. Entry, ECF No. 167 (Jul. 15, 2025).

Any proposal, however, which does not resolve any and all issues of fact as to the relevant administrative remedies to be exhausted for every claim in this case, likely does not satisfy the level of specificity required to meet their burden for this affirmative defense, particularly if there is inconsistency between and among the exhaustion procedures for the plans at issue. *See Neufeld v. Cigna Health & Life Ins. Co.*, No. 3:17-cv-01693 (WWE), 2018 WL 4158377, at *10 (D. Conn. Aug. 30, 2018) ("[F]ailure to exhaust ERISA administrative remedies under section 502(a)(1)(B) is an affirmative defense. Cigna has not demonstrated that it has established a reasonable claims and appeals procedure in compliance with DOL regulations relevant to Neufeld's overcharge claims."(citing *Paese*, 449 F.3d at 446 ("[F]ailure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense") and *Negron v. Cigna Health & Life Ins.*, 300 F. Supp. 3d 341, 354 (D. Conn. 2018) ("In ruling on this motion to dismiss for failure to exhaust, the Court is mindful that defendant bears the burden of proof on this affirmative defense."))).

As a result, because Defendants have not submitted record evidence establishing that an administrative appeals process was available under the relevant plans for the Itemized Claims, the Court does not consider their arguments regarding exhaustion of administrative remedies at this time. *See Kirkendall* 707 F.3d at 179 ("Implicit in the exhaustion requirement is the condition that a plaintiff must have an administrative remedy to exhaust."); *see Cotten v. Altice USA, Inc.*, No. 19-cv-01534 (RJD)(ST), 2020 WL 32433, at *3 (E.D.N.Y. Jan. 2, 2020) (on a motion to dismiss, declining to find failure to exhaust administrative remedies where Defendants failed to submit applicable plan, and noting that "before the applicable plan is identified, it is not possible to decide whether any term poses an insurmountable barrier to Plaintiffs' case"); *cf. Weyant v. Phia Grp. LLC*, 823 F. App'x 51, 53 (2d Cir. 2020) (summary order) (reversing district court's determination that plaintiff was required to exhaust administrative remedies where district court was provided with the relevant plan and "noted that the Plan did not contain explicit language providing guidance on how [Plaintiff] could have appealed her claim").

Accordingly, the Court denies summary judgment as to Plaintiffs' ERISA claims without prejudice to renewal.

(Doc. 168, at 19-20). The Court noted in a footnote to this passage: "To be clear, the Court is not and has not resolved whether any proposal contemplated by Defendants, even one discussed during the recent status conference, ECF No. 164, meets this standard." (*Id.*).

5

### III.    STATEMENT OF FACTS

Plaintiffs are "out-of-network or non-participating" healthcare providers, which means that they "do not have contracts" with Cigna. (Third Amended Complaint (Doc. 92) ("TAC"), ¶¶ 50, 78). Plaintiffs "operated drive and/or walk-through COVID-19 testing sites" in multiple locations in Connecticut and New York. (*Id.*, ¶ 23). Plaintiffs allegedly "concluded that performing a COVID-19 test in a vacuum, without performing any other diagnostic testing, would fail to adhere to the requisite standard of care." (*Id.*, ¶ 26). Rather, they assert, "patients who present with symptoms of COVID-19, or patients who have or potentially have exposure to COVID-19, need to be tested for COVID-19 as well as other respiratory viruses and infections that could possibly cause the same or similar symptoms as COVID-19, or could possibly co-exist with COVID-19." (*Id.*).

Plaintiffs commenced this action in November 2020. Complaint (Doc. 1). At that time, Plaintiffs alleged that Cigna owed them $4.6 million for Covid testing related services provided to over 4,400 Cigna members. (*Id.*, ¶ 9). In the Third Amended Complaint, this amount had grown to "over $6 million." (TAC, ¶ 2). The Court's dismissal of the more-than ten thousand Itemized Claims in July has reduced the Billed Charges that Plaintiffs claim to be in dispute to approximately $2,150,000.

#### A.    Plaintiffs Did Not Exhaust Administrative Remedies

Cigna submits plan documents for twenty-six patients. (Declaration of Pamela Ley, ¶ 3; *id.*, Exs. 1-24). Plaintiffs seek coverage and reimbursement for 185 Itemized Claims for these patients, for which Plaintiffs allege they billed Cigna $202,974.00. (Declaration of Raymond Carta, ¶ 8; *id.*, Ex. 27).

Each plan requires exhaustion of administrative remedies before filing suit:

- Each plan contains the following language, or substantially similar language, requiring the exhaustion of administrative remedies before bringing any civil lawsuit: "If your plan is governed by ERISA, you have the right to bring a civil action under section 502(a) of ERISA if you are not satisfied with the outcome of the Appeals Procedure. In most instances, you may not initiate a legal action against CIGNA until you have completed the appeal processes." (Ley Dec., ¶ 5; *Id.*, Ex. 1-24; Carta Dec., Ex. 26).

- Each plan specifies the administrative remedies that must be exhausted. Thus, each plan provides for at least one level of administrative appeal, and provides that the administrative appeal must be filed within a certain number of days (typically 180 or 365) after receipt of notice of the denial of a claim. (Ley Dec., ¶¶ 4, 6; *Id.*, Ex. 1-24; Carta Dec., Ex. 26).

Seventeen of these twenty-six patients for whom Plaintiffs billed a significantly higher amount than for the typical patient. For example, for patients Elizabeth B. and Ethan P., Plaintiffs' billed charges total more than $20,000.00 each. The average aggregate billed charge for these seventeen patients is almost $11,000.00. (Carta Dec., ¶ 9). The remaining nine patients were randomly selected for review of their plans. The average aggregate billed charge for each of these nine patients is under $2,000.

In addition, Pamela Ley, whose duties and responsibilities require her to be familiar with standard and/or common provisions in Cigna's health plans, declares that Cigna's standard practice is to include in all of its ERISA-governed health plans language similar to the language in the twenty-four plan documents submitted with this motion. (Ley Dec., ¶ 5). Thus, Cigna's standard practice is to provide at least one level of administrative appeal to members who are dissatisfied with a determination on their claim, and to require exhaustion of administrative remedies before filing suit. Where there is variation in administrative appeal rights, it typically involves provisions either providing for multiple levels of administrative appeal or specifying the time limit for filing an administrative appeal (typically 180 or 365 days). (Ley Dec., ¶¶ 4, 6).

Plaintiffs have not produced any evidence demonstrating that they submitted even a single administrative appeal of any of the Itemized Claims at issue in the case. (Carta Dec., ¶ 6; *Id.*, Ex. 25, Declaration of Kenneth Foote-Smith, ¶¶ 3-7, 10).

**B.     Plaintiffs Are Improperly Suing Cigna for Services Provided to Non-Cigna Members.**

There are fourteen patients who, according to the documents that Plaintiffs produced in this action, were not covered by a Cigna plan, but, rather, were covered by unrelated companies, such as Anthem, Aetna, and UnitedHealthcare. (Carta Dec., ¶ 11: *Id.*, Ex. 28). Plaintiffs contend that these fourteen patients represent 69 Itemized Claims totaling $72,160.00. Plaintiffs cannot recover from Cigna for health services allegedly provided to patients who, Plaintiffs' own evidence demonstrates, were not covered by a Cigna plan.

## IV.     APPLICABLE LEGAL STANDARD

The Court set forth the standard of review in its July decision:

> A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48.

> "[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

> "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

8

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. See Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-01559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party on the issue for which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

(Doc. 168, at 7-8).

## V.    LEGAL ARGUMENT

### A.    Plaintiffs failed to exhaust administrative remedies

The Court summarized the requirement to exhaust administrative remedies prior to filing an

ERISA benefits claim:

The Second Circuit has long recognized that there is a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 594 (2d Cir. 1993) (quoting *Alfarone v. Bernie Wolff Const. Corp.,* 788 F.2d 76, 79 (2d Cir. 1986)), *cert. denied,* 479 U.S. 915 (1986); *Paese v. Hartford Life & Acc. Ins. Co.,* 449 F.3d 435, 443 (2d Cir. 2006) ("[T]he federal courts—including this Circuit—have recognized a firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases."(citation and internal quotation marks omitted)). The exhaustion requirement serves three primary purposes: to "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*." *Kennedy,* 989 F.2d at 594. The requirement is an affirmative defense; the failure to exhaust is not jurisdictional. *See Paese,* 449 F.3d at 445 ("Indeed, the requirement is purely a judge-made concept that developed in the absence of statutory language demonstrating that Congress intended to make ERISA administrative exhaustion a jurisdictional requirement.").

9

> Given the exhaustion requirement, a plaintiff must "pursue all administrative reme-
> dies provided by their plan pursuant to statute, which includes carrier review in the
> event benefits are denied." *Chapman v. ChoiceCare Long Island Term Disability
> Plan*, 288 F.3d 506, 511 (2d Cir. 2002); *see also Heimeshoff v. Hartford Life & Acc.
> Ins. Co.*, 571 U.S. 99, 105 (2013) ("[P]articipants [are required to] exhaust internal
> review before bringing a claim for judicial review under § 502(a)(1)(B)"so "[a] par-
> ticipant's cause of action under ERISA accordingly does not accrue until the plan is-
> sues a final denial."(citations omitted)); *Kennedy*, 989 F.2d at 594 ("[E]xhaustion in
> the context of ERISA requires only those administrative appeals provided for in the
> relevant plan or policy.").
>
> "The exhaustion requirement, however, is not absolute." *Kirkendall v. Halliburton,
> Inc.*, 707 F.3d 173, 179 (2d Cir. 2013), cert. denied, 571 U.S. 882 (2013). "Implicit
> in the exhaustion requirement is the condition that a plaintiff must have an adminis-
> trative remedy to exhaust." *Id.* Thus, the Second Circuit has held that "plan partici-
> pants will not be required to exhaust administrative remedies where they reasonably
> interpret the plan terms not to require exhaustion and do not exhaust their administra-
> tive remedies as a result." *Id.* at 181.

(Doc. 168, pp. 16-17).

"A failure to exhaust administrative remedies provides grounds for dismissal or summary judgment in favor of the opposing party." *Zarringhalam v. United Food & Com. Workers Int'l Union Loc. 1500 Welfare Fund*, 906 F. Supp.2d 140, 152 (E.D.N.Y. 2012); *see also Richard Mfg. Co. v. Richard*, 513 F. Supp.3d 261, 286 (D. Conn. 2021) (Summary judgment is warranted where "there is no genuine issue of fact as to whether [Plaintiffs] exhausted [their] administrative remedies"); *Quigley v. Citigroup Supplemental Plan for Shearson Transfers*, No. 09-cv-8944 (PGG), 2011 WL 1213218, at *7 (S.D.N.Y. Mar. 29, 2011) (citing cases).

ERISA expressly provides that a plan must "afford a reasonable opportunity to any partici-pant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. The Secretary of Labor has promulgated regulations "set[ing] forth minimum requirements for employee benefit plan proce-dures pertaining to claims for benefits[.]" 29 C.F.R. § 2560.503-1(a). The regulations provide that group health plans cannot "require[] a claimant to file more than two appeals of an adverse

10

benefit determination prior to bringing a civil action under section 502(a) of the act [29 U.S.C. § 1132(a)]." 29 C.F.R. § 2560.503-1(c)(2). The regulations further recognize that applicable state law might require additional, voluntary levels of administrative appeal. 29 C.F.R. § 2560.503-1(c)(3).

### 1.   *The documentary evidence establishes Plaintiffs' failure to exhaust administrative remedies for twenty-four plans.*

Each of the twenty-four plan documents submitted with this motion requires a claimant who is dissatisfied with a claim determination to pursue at least one administrative appeal before initiating a civil lawsuit. (Ley Dec,. ¶ 5; *see also id.*, Exs 1-24; Carta Dec., Ex. 26). Six of those plans require two administrative appeals. (*Id.*). Each of the plans also states or includes substantially similar language stating that claimants "may not initiate a legal action against CIGNA until you have completed the appeal processes." (Ley Dec., ¶ 5).

Plaintiffs have not produced documents demonstrating that they administratively appealed any of the denials. (Carta Dec., ¶ 6; *see also id.*, Ex. 25, Foote-Smith Dec., ¶10).

Recognizing that they did not administratively appeal any of the Itemized Claims, Plaintiffs have contended that administrative appeals would have been futile. To survive summary judgment, Plaintiffs are required to introduce facts that suffice to make "a clear and positive showing that seeking review by the carrier would be futile[.]" *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 140 (2d Cir. 2000) (quotation marks omitted); *Kennedy*, *supra,* 989 F.2d at 594 ("Where claimants make a 'clear and positive showing' that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the claimant from the requirement.").

Here, the evidence is undisputed that, prior to February 1, 2021, Cigna merely flagged the claims submitted by one of the Plaintiffs, MMA, resulting in a decision on those claims being

11

"pended" along with a request to MMA to provide medical records supporting the claim. (Declaration of Stephanie Canto (Doc. 157-2), ¶¶ 4, 9-14).

Cigna did not flag or pend claims submitted by the other Plaintiffs (DMSOG, NSMA, CCMG, or Murphy). Therefore, those four Plaintiffs cannot rely on the SIU investigation as a basis to assert that it would have been futile for them to administratively appeal the denial of one of their claims.

As for MMA, there is nothing in Cigna's communications regarding the SIU investigation suggesting, much less making a clear and positive showing, that Cigna would not have reviewed Plaintiffs' medical records had Plaintiffs submitted them. (Canto Dec., ¶ 13) ("This flag was expressly intended to require MMA to submit medical records which would be reviewed by SIU resources. A determination would then be made, on a claim-by-claim basis, whether the claim was appropriately documented and payable."). Indeed, when Plaintiffs submitted medical records for a limited number of claims in response to Cigna's SIU investigation, Cigna reviewed them in detail. (*Id.*, ¶ 7; *id.*, Ex. A, pp. 4-5).

Even after Cigna placed a flag in February 2021 to deny MMA's claims, it did not take away the right to administratively appeal the resulting denial. (Canto Dec., ¶ 15). Indeed, the appeal rights (and obligations) that MMA has as alleged assignee are, in fact, appeal rights that are granted to the plan participant or beneficiary as required by ERISA. Therefore, nothing that Cigna did as part of an investigation of a provider could take away the right and obligation to administratively appeal. MMA therefore has not produced evidence establishing that an administrative appeal would have been futile.

12

For these reasons the Court should enter summary judgment dismissing Plaintiffs' ERISA claim regarding Itemized Claims for services provided to these twenty-six patients, as listed in Exhibit 27 to the Carta Declaration.

> ### 2. *Cigna has submitted sufficient summary evidence to establish Plaintiffs' failure to exhaust administrative remedies for all of the remaining Itemized Claims.*

Fed.R.Evid. 1006 provides as follows:

(a) Summaries of Voluminous Materials Admissible as Evidence. The court may admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court, whether or not they have been introduced into evidence.

(b) Procedures. The proponent must make the underlying originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Rule 1006 "requires only that the underlying records be voluminous and that in-court examination be inconvenient." *United States v. Duncan*, 919 F.2d 981, 988 (5th Cir. 1990) ("The underlying records were undisputably voluminous, consisting of hundreds of exhibits. Examination of the individual records would have been burdensome and time-consuming without the aid of summaries."); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523, 536 (E.D.N.Y. 2012) (allowing summary evidence through charts as "summaries of the contents of voluminous data. The charts will streamline the presentation of that data to the jury, saving the jury time and avoiding unnecessary confusion."). "No precise test dictates when source materials are sufficiently indigestible to permit summarization under Rule 1006. Instead, district courts are advised to carefully weigh the volume and complexity of the materials." *United States v. Appolon*, 695 F.3d 44, 61 (1st Cir. 2012). *Appolon* continued: "These two factors have an inversely proportionate relationship: as either the volume or complexity increases, relatively less is required of the other factor." *Id.*

13

(holding that a summary of "mortgage and sale records" for twenty-one properties "comported with the purpose of Rule 1006.").

The summary must "fairly represent competent evidence." *Fagiola v. Nat'l Gypsum Co. AC & S.*, 906 F.2d 53, 57 (2d Cir. 1990). Admission requires "foundation testimony connecting [the summary] with the underlying evidence summarized." *Id.*

Cigna has satisfied the requirements of Rule 1006. The plan documents for the 1,300-plus plans that remain in issue in this action are plainly voluminous. Based on her personal knowledge of Cigna's standard plan term, Pamela Ley testified via her declaration that Cigna's ERISA-governed health plans all require a claimant who is dissatisfied with a claim determination to pursue at least one administrative appeal before asserting an ERISA benefits claim in court. (Ley Dec., ¶ 6). Ms. Ley's testimony is consistent with ERISA and governing claim regulations, which require plans to provide at least one level (and up to two levels) of mandatory administrative appeal.[2]

Further, the contents of the individual plans at issue in this action were available to Plaintiffs through the discovery phase of this action; they had years to demand, obtain, and review any or all of the plan documents at issue. The fact that Plaintiffs did not take advantage of that opportunity is not a basis to prevent admission of a summary under Rule 1006. *U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 163 (2d Cir. 1996) (summary "was admitted only if the documents supporting this evidence … had been

---

[2] Ms. Ley's testimony, based on her review of the sampled plan documents at issue in this action, and her knowledge of Cigna's standard plan terms gleaned through her job responsibilities, is similar to evidence based on a representative sample of voluminous material. "A representative or statistical sample, like all evidence, is a means to establish or defend against liability. Its permissibility turns … on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454–55, 136 S. Ct. 1036, 1046, 194 L. Ed. 2d 124 (2016); s*ee also Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 512 (S.D.N.Y. 2013) ("Sampling is a widely accepted method of proof[.]").

made available to defendant *or had been available if defendant had requested them*") (emphasis added); *R & R Assocs., Inc. v. Visual Scene, Inc.*, 726 F.2d 36, 37–38 (1st Cir. 1984) ("Defendant does not deny that, prior to trial, it had ample opportunity to examine the numerous boxes of records summarized.").

Even though discovery ended months ago, Cigna is willing to make available to Plaintiffs copies of a reasonable number of the plan documents that Plaintiffs request, provided that Plaintiffs identify the Cigna member numbers of the patients whose plans they would like to examine. *United States v. Oshatz*, 912 F.2d 534, 543 (2d Cir. 1990) ("Oshatz also contests the admission of a summary chart prepared by the Government. … [T]hough the Government did not produce the computer program [used to prepare the summary] before trial, Oshatz had ample time during trial to check the validity of the program and to cross-examine the Government's witness concerning errors in his calculations. … Consequently, we do not believe Oshatz suffered any prejudice from the admission of the chart."); *see also Carrion v. AGFA Constr. Inc.*, No. 10-cv-3327 (BMC), 2011 WL 13128122, at *2 (E.D.N.Y. May 12, 2011), *aff'd*, 720 F.3d 382 (2d Cir. 2013) (concluding that the Court can consider summary charts on summary judgment motion where they were accessible to the opposing party).

Admission of the proffered evidence as a summary of the plans governing the remaining Itemized Claims provides "record evidence establishing that an administrative appeals process was available under the relevant plans for the Itemized Claims[.]" (July Order (Doc. 168), at 19). Plaintiffs' failure to submit evidence of any administrative appeal confirms that they did not exhaust administrative remedies regarding any of these remaining Itemized Claims. And Plaintiffs' futility argument is equally unsupported regarding these claims. Accordingly, the Court should

15

grant summary judgment dismissing all Itemized Claims for failure to exhaust administrative remedies.

**B.      Plaintiffs Cannot Recover Against Cigna for Services Provided to Patients Who Were Not Covered By a Cigna Plan**

29 U.S.C. § 1132(a)(1)(B) authorizes a participant or beneficiary of a plan to bring a civil action "to recover benefits due to him under the terms of his plan[.]" It is axiomatic that a patient who is not a participant or beneficiary of a Cigna-administered plan, but, rather, is covered by a plan administered by an entirely separate entity, cannot assert a claim against Cigna for "benefits due to him under the terms of his plan." *Id.* Plaintiffs admit this, alleging that Plaintiffs' seek "to be reimbursed in full for providing COVID-19 related testing and related covered healthcare services to Cigna's Members." (TAC, ¶ 111).

Because the fourteen patients identified in the Carta Declaration do not participate in a Cigna-administered plan, the Court should dismiss the Itemized Claims pertaining to those patients.

**VI.      CONCLUSION**

For all of the foregoing reasons, the Court should grant Cigna's renewed summary judgment motion in its entirety, and award such other and further relief as the Court deems fair.

Respectfully submitted,

ROBINSON & COLE LLP

By:/s/ *Patrick W. Begos*
      Patrick W. Begos (ct19090)
      Raymond J. Carta (ct30088)
      1055 Washington Boulevard
      Stamford, CT 06901
      Tel: (203) 462-7500
      Email: pbegos@rc.com
      Email: rcarta@rc.com
      *Counsel for Defendants*

16