UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

MURPHY MEDICAL ASSOCIATES, LLC; :
DIAGNOSTIC AND MEDICAL SPECIALISTS :
OF GREENWICH, LLC; NORTH STAMFORD :
MEDICAL ASSOCIATES, LLC; COASTAL :
CONNECTICUT MEDICAL GROUP, LLC; and :
STEVEN A.R. MURPHY, M.D., : Docket No. 20-cv-1675 (JBA)
  :
  :
Plaintiffs, : December 30, 2025
  :
vs. :
  :
CIGNA HEALTH AND LIFE INSURANCE :
COMPANY and CONNECTICUT GENERAL :
LIFE INSURANCE COMPANY, :
  :
Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

Roy W. Breitenbach, Esq.
HARRIS BEACH MURTHA CULLINA, PLLC
One Century Tower
265 Church Street, 9th Floor
New Haven, Connecticut 06510
(516) 880-8378
rbreitenbach@harrisbeachmurtha.com
*Attorneys for Plaintiffs*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES………………………………………………………......   i

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 4

ARGUMENT .................................................................................................................. 4

I.     FOR THE SECOND TIME, DEFENDANTS HAVE FAILED TO MEET THEIR INITIAL BURDEN FOR THE COURT TO CONSIDER THEIR FAILURE-TO-EXHAUST ADMINISTRATIVE REMEDIES SUMMARY JUDGMENT DISMISSAL ARGUMENT REGARDING 99% OF THE REIMBURSEMENT CLAIMS AT ISSUE..4

    A.     Defendants Have Violated The Court's July 2025 Order ........................................... 5

    B.     Defendants' "Summaries" Of Health Plan Provisions  Are Inadmissible Under Fed. R. Evid. 1006 ..................................................................................... 8

II.     FOR THE 1% OF REIMBURSEMENT CLAIMS AT ISSUE WHERE DEFENDANTS HAVE PROVIDED THE UNDERLYING RELEVANT PLAN DOCUMENTS, DEFENDANTS STILL CANNOT OBTAIN SUMMARY JUDGMENT DISMISSAL BASED ON FAILURE-TO-EXHAUST BECAUSE GENUINE ISSUES OF FACT REMAIN ...................................................................................................... 13

    A.     Genuine Issues of Fact Remain Regarding Whether the Murphy Practice  Failed to Take Advantage of the Appeal Processes Made Available to Them ...................... 13

    B.     Issues of Fact Regarding Defendants'  Illegal Conduct Also Preclude Summary Judgment ..................................................................................... 16

    C.     Genuine Issues of Material Fact Exist Regarding Futility...................................... 19

III.     BECAUSE IT IS PROCEDURALLY IMPROPER AND, IN ANY EVENT, GENUINE ISSUES OF MATERIAL FACT EXIST, THIS COURT SHOULD DENY DEFENDANTS' UNTIMELY ATTEMPT TO DISMISS CLAIMS RELATED TO 14 PATIENTS ALLEGEDLY NOT COVERED BY DEFENDANTS' HEALTH PLANS..22

CONCLUSION.............................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Assured Guar. Mun. Corp. v. Flagstar Bank*,
 920 F. Supp. 2d 475 (S.D.N.Y. 2013)......................................................................................16

*Clay v. ILC Data Device Corp.*,
 771 F. Supp. 40 (E.D.N.Y.1991) .............................................................................................20

*Communications Workers of America v. American Tel. & Tel. Co.*,
 40 F.3d 426 (D.C. Cir.1994)....................................................................................................24

*Corsini v. United Healthcare Corp.*,
 965 F. Supp. 265 (D.R.I.1997).................................................................................................24

*Diagnostic Affiliates of N.E. Houston v. United Healthcare Servs.*,
 No. 21-cv-00131, 2022 WL 214101 (S.D. Tex. Jan. 18, 2022)..............................................24

*Doe v. N.Y.C. Dep't of Soc. Servs.*,
 709 F.2d 782 (2d Cir. 1983).....................................................................................................11

*Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Co.*,
 95 F.3d 153 (2d Cir. 1996).......................................................................................................16

*Fagiola v. Nat'l Gypsum Co.*,
 906 F.2d 53 (2d Cir. 1990)..................................................................................................14, 16

*Gill v. Arab Bank, PLC*,
 893 F. Supp. 2d 523 (E.D.N.Y. 2012) ..................................................................................14, 16

*J.P. Morgan Chase Bank, N.A. v. Caires*,
 No. 17-cv-1298 (JCH), 2017 WL 4071137 (D. Conn. Sept. 14, 2017)..................................11

*Kennedy v. Empire Blue Cross & Blue Shield*,
 989 F.2d 588 (2d Cir.1993)...................................................................................................9, 24

*Kreml v. Diamond Shamrock Corp.*,
 701 F. Supp. 1400 (N.D.Ill.1988) ...........................................................................................20

*In re Kwok*,
 No. 24-cv-1185 (KAD), 2025 WL 2625264 (D. Conn. Sept. 11, 2025) .................................11

*Levi v. RSM McGladrey, Inc.*,
 12-cv-8787, 2014 U.S. Dist. LEXIS 134662 (S.D.N.Y. Sept. 24, 2014) ........................10, 17

*Ludwig v. NYNEX*,
    838 F. Supp. 769 (S.D.N.Y.1993) ...........................................................................................9

*McQuillin v. Hartford Life & Acc. Ins. Co.*,
    36 F.4th 416 (2d Cir. 2022)..........................................................................................21, 23

*Montefiore Med. Ctr. v. Loc. 272 Welfare Fund*,
    No. 09-cv-3096, 2018 U.S. Dist. LEXIS 28019 (S.D.N.Y. Feb. 20, 2018).....................21, 23

*Murphy Med. Assocs., LLC v. United Med. Res. Inc.*,
    2023 U.S. Dist. LEXIS 53636 (D. Conn. Mar, 29, 2023)......................................................24

*Negron v. Cigna Health & Life Ins. Co.*,
    300 F. Supp. 3d 341 (D. Conn. 2018).................................................................11, 12, 17

*Neufeld v. Cigna Health & Life Ins. Co.*,
    No. 17-cv-01693-WWE, 2018 WL 4157377 (D. Conn. Aug. 30, 2018)...................11, 12, 17

*Neurological Surgery, P.C. v. Siemens Corp.*,
    17-cv- 3477, 2017 U.S. Dist. LEXIS 206010 (E.D.N.Y. Dec. 12, 2017)...........................9, 17

*New York City Transit Auth. v. Express Scripts, Inc.*,
    No. 19-cv-5196 (JMF), 2022 WL 3577426 (S.D.N.Y. Aug. 19, 2022)............................14, 15

*Novak v. TRW, Inc.*,
    822 F. Supp. 963 (E.D.N.Y.1993) ........................................................................................20

*Paese v. Hartford Life & Acc. Ins. Co.*,
    449 F.3d 435 (2d Cir. 2006)......................................................................................7, 9, 17

*In re PCH Assocs.*,
    949 F.2d 585 (2d Cir. 1991)......................................................................................7, 11

*R&R Assocs., Inc. v. Visual Scene, Inc.*,
    76 F.2d 36 (1st Cir. 1984)....................................................................................................16

*Sibley-Schreiber v. Oxford Health Plans, Inc.*,
    62 F. Supp. 2d 979 (E.D.N.Y. 1999) ...................................................................................24

*Strom v. Siegel Fenchel & Peddy P.C. Profit Sharing Plan*,
    497 F.3d 234 (2d Cir. 2007)................................................................................................20

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2014)...........................................................................................................15

*United States v. Duncan*,
    919 F.2d 981 (5th Cir. 1990)..........................................................................................15, 16

*United States v. Fenner*,
   142 F.4th 510 (7th Cir. 2025) ...............................................................................................14

**Statutes**

29 U.S.C. § 1133(2) ..........................................................................................................................9

Plaintiffs, Murphy Medical Associates, LLC, Diagnostic and Medical Specialists of Greenwich, LLC, North Stamford Medical Associates, LLC, Coastal Connecticut Medical Group, LLC, and Steven A.R. Murphy, MD (collectively the "Murphy Practice"), submit this memorandum of law to oppose Defendants' renewed motion for summary judgment.

## PRELIMINARY STATEMENT

Defendants' renewed summary judgment motion raises one principal issue: Whether Defendants met their burden of establishing the Murphy Practice failed to exhaust available administrative remedies regarding each of the 13,000+ COVID-19 testing reimbursement claims involving 2,600+ patients at issue? The answer to this question is "No."

This Court, in its July 18, 2025 Order (Dkt 168) on Defendants' initial summary judgment motion, found that, for Defendants to meet their burden on their failure-to-exhaust affirmative defense, they had to, among other things, provide the relevant plan documents for the plans involved in each of the claims at issue, to show that those documents made administrative remedies available to the Murphy Practice to resolve the claims. (Dkt 168 at 19-20.)  Because Defendants failed to meet this burden in their initial summary judgment motion – Defendants failed to provide even *one* relevant plan document – this Court denied Defendants' summary judgment on their failure-to-exhaust affirmative defense but granted them leave to renew so that they could provide the relevant plan documents. (*Id.* at 20 (citing Fed. R. Civ. P. 56(e)(1))).

Defendants filed this renewed summary judgment motion four months later. (Dkt. 176.) However, *as Defendants themselves admit*, Defendants still have not provided the relevant plan documents for all claims at issue in this lawsuit. Defendants have only provided 24 plan documents, which are relevant to 185 claims concerning 26 patients. Defendants provided plan documents for barely more than 1% of all claims at issue. Stated another way, of the approximately 1,200 plan

1

documents involved in this case, Defendants have provided only 2% of the relevant plan documents at issue.

This Court's initial summary judgment ruling constitutes law of the case here. *See In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991). Accordingly, Defendants' provision of only 2% of the relevant plan documents, involving barely more than 1% of the claims at issue, prevents Defendants from obtaining summary judgment dismissal on their failure-to-exhaust affirmative defense for the 99% of claims for which Defendants have not provided relevant plan documents.

While Defendants seek to overcome their failure to provide all relevant plan documents by contending that their provision of approximately 2% of the relevant plan documents constitutes an admissible Fed. R. Evid. 1006 summary of all relevant plan documents at issue and therefore meets its summary judgment burden, this fails for two reasons. First, while summaries for which a proper foundation can be established are admissible under Rule 1006, Defendants here are not just seeking to introduce a summary into evidence, they are seeking to use the summary as the sole evidence to support their burden when moving for summary judgment dismissal. This is an improper use of Rule 1006, especially given that this Court has specifically required that Defendants provide the relevant plan documents for each claim at issue. If this Court were now to reverse itself and allow Defendants' "summary" to transfer the burden of proof on their failure-to-exhaust affirmative defense to the Murphy Practice, in contravention of Second Circuit authority. *See, e.g.*, *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006).

Second, even if this Court were to consider Defendants' Rule 1006 admissibility argument – which it should not – Defendants have by no means established a proper foundation for admission of 2% of the plan documents at issue as a "summary" to establish the availability of administrative remedies for the remaining 98% of plan documents not provided.

Thus, this Court, if at all, should only consider Defendants' failure-to-exhaust summary judgment dismissal argument for the 185 claims that pertain to the 24 plan documents that they have provided. As to those claims, as we explain below, Defendants' actions and statements made it crystal clear to Plaintiffs that any administrative appeal would have been futile and, therefore, no exhaustion was required under applicable law.

Defendants' final argument to support its renewed summary judgment motion is that there are fourteen patients whose claims are at issue in this lawsuit but who Defendants now first claim, at this late date, were not covered by health plans administered by Defendants. This Court should reject Defendants' attempt to obtain summary judgment dismissal of the claims involving these fourteen patients because it granted leave to Defendants to renew their summary judgment motion based on only exhaustion of administrative remedies. In any event, as we explain below, the "evidence" that Defendants submit on this issue fails to establish their entitlement to summary judgment and there are multiple factual issues concerning coverage.

In summary, this case does not turn on isolated billing errors or claim-specific technicalities. It concerns whether Cigna's claims-handling process during the COVID-19 public health emergency complied with ERISA and federal pandemic statutes. The record demonstrates that Cigna repeatedly denied or delayed COVID-related claims using rationales that were prohibited by the FFCRA and CARES Act, failed to issue timely and compliant adverse benefit determinations, and applied shifting and contradictory denial codes across hundreds of claims. At a minimum, these facts create genuine disputes of material fact as to whether Cigna provided a meaningful administrative review or whether exhaustion was required at all. Accordingly, summary judgment must be denied.

3

## STATEMENT OF FACTS

The facts relevant to this motion are set forth in the accompanying declarations of Steven A.R. Murphy, M.D. and Roy Breitenbach, and the exhibits annexed thereto. This Court is respectfully referred to those documents for their contents.

## ARGUMENT

**I. FOR THE SECOND TIME, DEFENDANTS HAVE FAILED TO MEET THEIR INITIAL BURDEN FOR THE COURT TO CONSIDER THEIR FAILURE-TO-EXHAUST ADMINISTRATIVE REMEDIES SUMMARY JUDGMENT DISMISSAL ARGUMENT REGARDING 99% OF THE REIMBURSEMENT CLAIMS AT ISSUE**

Defendants contend – both in their original summary judgment motion and in this renewed summary judgment motion – that they are entitled to summary judgment dismissal of Plaintiffs' ERISA section 502(a)(1)(B) benefits cause of action based on Plaintiffs' alleged failure to exhaust their administrative remedies under Defendants' health plan documents. Once again, Defendants are wrong.

ERISA § 503(2) requires that "every employee benefit plan shall ... afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). While there is no statutory requirement that plaintiffs exhaust administrative processes before filing an action, courts, relying on § 1133, "have 'developed the requirement that a claimant should ordinarily follow internal plan procedures and exhaust internal plan remedies before seeking judicial relief under ERISA.'" *Ludwig v. NYNEX*, 838 F. Supp. 769, 781 (S.D.N.Y.1993) (quoting John H. Langbein & Bruce A. Wolk, *Pension and Employee Benefit Law* 588 (1990)); *see also Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir.1993).

The Second Circuit has ruled that "a failure to exhaust ERISA administrative remedies is . . . an affirmative defense." *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 446 (2d Cir.

4

2006); *see Neurological Surgery, P.C. v. Siemens Corp.*, 17-cv- 3477, 2017 U.S. Dist. LEXIS 206010, \*17 (E.D.N.Y. Dec. 12, 2017). Accordingly, "it is the [d]efendant's burden to prove that the Plaintiffs failed to exhaust their administrative remedies." *Siemens*, 2017 U.S. Dist. LEXIS, at \*21; *see Levi v. RSM McGladrey, Inc.*, 12-cv-8787, 2014 U.S. Dist. LEXIS 134662, \*31 (S.D.N.Y. Sept. 24, 2014).

In sum, because exhaustion is an affirmative defense, Defendants bear the burden of establishing that the Murphy Practice was required to exhaust administrative remedies and that such remedies were meaningfully available. Any genuine dispute regarding the existence, adequacy, or lawfulness of those remedies precludes summary judgment.

### A.      Defendants Have Violated The Court's July 2025 Order

This Court, in its July 2025 Order, denied Defendants summary judgment dismissal based on their failure-to-exhaust affirmative defense because "Defendants have not provided the relevant plan documents or provisions of such plans concerning the administrative appeals process for the relevant claims in their initial briefs." (Dkt. 168 at 19.)  This Court explained that it had previously instructed "' [t]o the extent that Defendants seek to rely on arguments regarding the alleged failure to exhaust administrative remedies on summary judgment . . .  Defendants must clarify the administrative remedies available under the terms of the relevant plans.'" (*Id.* at 19 (quoting Dkt. 163).)

In response to this original Order, Defendants informed the Court that "' "[t]his lawsuit concerns approximately 13,000 claims for medical services provided to approximately 2,600 individual Cigna members," Mot. for Status Conference, ECF No. 164 (Jul. 8, 2025), and, at the parties' request, the Court heard alternatives to submitting the plan documents, *see* Min. Entry, ECF No. 167 (Jul. 15, 2025).'" (Dkt. 168 at 19.)

In response to the parties' request for alternatives to providing every plan document, this Court specifically stated that "[a]ny proposal, however, which does not resolve any and all issues of fact as to the relevant administrative remedies to be exhausted for every claim in this case, likely does not satisfy the level of specificity required to meet their burden for this affirmative defense, particularly if there is inconsistency between and among the exhaustion procedures for the plans at issue." (Dkt. 168 at 19.)

Accordingly, this Court concluded in its July 2025 Order, "because Defendants have not submitted record evidence establishing that an administrative appeals process was available under the relevant plans for the Itemized Claims, the Court does not consider their arguments regarding exhaustion of administrative remedies at this time." (*Id.* at 20.) This Court denied "summary judgment as to Plaintiffs' ERISA claims without prejudice to renewal." (*Id.*). In reaching this decision, the Court cited two prior cases in this Court involving rejection of failure-to-exhaust affirmative defenses on the same basis. *See*, *e.g.*, *Neufeld v. Cigna Health & Life Ins. Co.*, No. 17-cv-01693-WWE, 2018 WL 4157377, at *10 (D. Conn. Aug. 30, 2018); *Negron v. Cigna Health & Life Ins. Co.*, 300 F. Supp. 3d 341, 354 (D. Conn. 2018).

Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation. *See In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991); *In re Kwok*, No. 24-cv-1185 (KAD), 2025 WL 2625264, at *10 (D. Conn. Sept. 11, 2025); *J.P. Morgan Chase Bank, N.A. v. Caires*, No. 17-cv-1298 (JCH), 2017 WL 4071137, at *2 (D. Conn. Sept. 14, 2017). While this doctrine is discretionary, the Second Circuit has historically and repeatedly held that the sound policy underlying the doctrine should not be

departed from absent "cogent" or "compelling" reasons. *See, e.g.*, *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983).

Here, as discussed above, Defendants filed this renewed summary judgment motion four months later, (Dkt. 176), after obtaining three extensions of time (Dkt 171, 173, and 175). However, Defendants did not provide the relevant plan documents for all claims at issue in this lawsuit. Rather, Defendants provided 24 plan documents, which are relevant to just 185 claims concerning 26 patients. This means that Defendants provided only 2% of the plan documents relevant to the claims at issue, and these plan documents cover barely more than 1% of all claims at issue.

Moreover, the 24 plan documents demonstrate that there is inconsistency between and among the exhaustion procedures for these plans.  Some plans provide for a single administrative appeal level, some plans provide for multiple administrative appeal levels. The time periods for appeal vary widely.

Given the above, Defendants have failed to "resolve any and *all* issues of fact as to the relevant administrative remedies to be exhausted *for every* claim in this case," and, thus, have not complied with the requirements set forth in this Court's July 2025 Order for them to meet their evidentiary burden to obtain summary judgment dismissal of all pending claims based on an alleged failure to exhaust administrative remedies. (Dkt. 168 at 19-20 (emphasis supplied).)  Based on the law of the case doctrine, and this Court's prior precedents, this Court should summarily reject Defendants' failure-to-exhaust arguments with respect to all but the 185 claims for which they have provided relevant health plan documents.

Thus, Defendants' exhaustion defense fails at the threshold because Cigna did not produce the governing plan documents for the overwhelming majority of claims at issue. Without the applicable plans, Defendants cannot establish the existence of mandatory appeal procedures,

applicable deadlines, or exhaustion requirements. Courts consistently hold that an administrator's failure to produce governing instruments precludes reliance on exhaustion as a matter of law. *See*, *e.g.*, *Neufeld*, 2018 WL 4157377, at *10; *Negron*, 300 F. Supp. 3d at 354.  This defect alone requires denial of summary judgment.

As we explain below, however, even if the governing plans had been produced – which they were not – summary judgment still would be improper because Cigna failed to comply with ERISA's mandatory claim processing requirements.

### B.    Defendants' "Summaries" Of Health Plan Provisions Are Inadmissible Under Fed. R. Evid. 1006

Attempting to overcome this Court's initial summary judgment Order and shift the burden of proof on their failure-to-exhaust affirmative defense to the Murphy Practice, Defendants contend that the declaration of a paralegal who works for one of its affiliated companies constitutes an admissible summary under Fed. R. Evid. 1006 that meets Defendants' burden to establish the existence and operation of the exhaustion of administrative remedy provisions in all 1,300+ plan documents at issue. The basis for this contention is that the declaration sets forth that she was asked to collect the health plan documents pertaining to 26 patients (out of 1,200+ involved in the case), and, based on her review of these documents, plus her general knowledge, states that the common practice of Defendants is to provide appeal rights that must be exhausted before suit can be commenced to enforce plan document terms. (Pamela Ley Declaration, Dkt. 176-2, at ¶¶ 6-7.)

Fed. R. Evid. 1006(a) provides that the Court "may admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court, whether or not they have been

introduced into evidence." *Id.* The Ley Declaration does not satisfy this provision for various reasons.

First, the Ley Declaration is not a summary at all. It is a declaration by a paralegal who *admittedly* did not review all the underlying documents at issue. Nowhere in her declaration does Ms. Ley testify that she reviewed, or even located, all 1,200+ health plan documents at issue. To the contrary, Ms. Ley states that she was asked to gather health plan documents for a small number of Cigna members selected by some other, unidentified party based on some criterial that she does not disclose. (Ley Decl. ¶ 3.) Outside defense counsel in this case – Raymond Carta – submits his own declaration explaining that 26 patients were selected by Defendants for whom health plan documents would be provided. (Carta Decl., Dkt. 176-27, ¶ 9.) According to Carta, 17 of these 26 patients were selected because the Murphy Practice billed a significantly higher amount than average for providing COVID-19 testing and related services to them. (*Id.*)  The remaining nine patients were selected randomly based on undisclosed criteria. (*Id.* ¶ 10.)

Given this testimony, the Ley Declaration is not a summary of all 1,200 health plan documents at issue, but only a summary of the 24 health plan documents that Ms. Ley was asked to review. Ms. Ley was not instructed, and made no effort, to review or summarize the 1,176 other health plan documents at issue in this litigation. Her testimony regarding these 1,176 other health plan documents is accordingly conjecture and surmise and thus cannot support admissibility under Fed. R. Evid. 1006. *See, e.g.*, *New York City Transit Auth. v. Express Scripts, Inc.*, No. 19-cv-5196 (JMF), 2022 WL 3577426, at *2 (S.D.N.Y. Aug. 19, 2022) (chart does not meet Fed. R. Evid. 1006 requirements where proponent did not verify source of underlying data and had no personal knowledge of data or how created); *see also United States v. Fenner*, 142 F.4th 510, 518 (7th Cir.

2025) ("Summary witnesses may testify as to what [the proponent's evidence shows], but cannot offer implausible or speculative inference from the record evidence").

Indeed, in all the cases cited by Defendants, the proponent of the summary had reviewed the underlying data in their entity. *See Fagiola v. Nat'l Gypsum Co.*, 906 F.2d 53, 57 (2d Cir. 1990) (mentioning proponent of summary examined underlying documents); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523, 536 (E.D.N.Y. 2012) (summary admitted based on detailed report by proponent detailing transactions summarized); *see also United States v. Duncan*, 919 F.2d 981, 988 (5th Cir. 1990) (evidence summarized admitted into evidence by proponent).

There are additional reasons why Defendants cannot establish a proper foundation to obtain admission of the Ley Declaration as a summary. There is no testimony that the 24 health plan documents reviewed constitute a representative sample of all 1,200+ health plan documents at issue in this lawsuit. The sample size is small – only 2% of the universe – and there is no evidence that the selection criteria were designed to ensure a representative sample of the health plan documents at issue. (Indeed, the Carta Declaration establishes that more than half of the health plan documents selected based upon the size of the reimbursement claim, and not on anything related to the health plan document. (Carta Decl. ¶ 9).)

While Ms. Ley opines that, in her experience, all of Defendants' health plan documents contain administrative appeal requirements that must be exhausted before suit is commenced, Ms. Ley provides no details about the nature or extent of her experience. (Ley Decl. ¶¶ 6-7.) We are completely in the dark, for example, as to the length of time that she has worked for an affiliate of Defendants, how many health plan documents she has reviewed, her knowledge and understanding of health plan document provisions, or her qualifications to conduct a review and interpretation of health plan documents. Indeed, based on the testimony of Ms. Ley and Mr. Carta we do not even

know if Defendants made any effort to search for all 1,200 of the health plan documents or if they are all in Defendants' possession.

Taking all of this into account, Defendants have fallen far below what is needed to establish an appropriate foundation for admission of the proposed summary under Fed. R. Evid. 1006. *See, e.g.*, *Express Scripts, Inc.*, 2022 WL 3577426, at \*2. This is distinguished from the cases cited by Defendants, where a sufficient foundation was present. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454-55 (2014); *Assured Guar. Mun. Corp. v. Flagstar Bank*, 920 F. Supp. 2d 475, 503-04 (S.D.N.Y. 2013) (sample size established as reasonable through testimony of statistical expert).

Further, Fed. R. Evid. 1006(b) requires that the proponent of the summary "must make the underlying originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." *Id.* While Defendants contend that they have satisfied this requirement here, their argument is specious. All that Defendants have produced are the 24 health plan documents that Ms. Ley reviewed. This represents 2% of the relevant health plan documents; 98% have not been made available by Defendants. And, the 2% of health plan documents made available by Defendants were only made available in connection with this renewed motion, made after the deadline for fact discovery had ended.[1]  From the inception of the lawsuit, the Murphy Practice requested the production of categories of documents that would have included the relevant member

---

[1] This is distinguished from the cases relief on by Defendants. In *R&R Assocs., Inc. v. Visual Scene, Inc.*, 76 F.2d 36, 37-38 (1st Cir. 1984), the court specifically found that, prior to trial, the objecting party had "ample opportunity to examine the numerous boxes of records summarized." In *United States f/b/o Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Co.*, 95 F.3d 153, 163 (2d Cir. 1996), the Second Circuit rejected the objecting party's contention that summaries should not have been admitted into evidence, in part, by noting that the district court there was careful to exclude evidence where the proponent "could not show or represent that the underlying documents had been provided, even though [the objecting party] had rejected them." This is precisely what occurred here and provides yet another reason why this Court should reject Defendants' proposed summary.

plan documents, yet Defendants refused and failed to produce them at all until making this motion. (Roy Breitenbach Declaration ¶ 4.)

Finally, the typical use of Fed. R. Evid. 1006 summaries are to provide evidence in a more easily understandable form at trial. This is how the summaries were used in the cases relied on by Defendants. *See Merritt Meridian*, 95 F.3d at 163; *Fagiola*, 906 F.2d at 57; *Gill*, 893 F. Supp. 2d at 536; *see also Duncan*, 919 F.2d at 988; *R&R Assocs.*, 76 F.2d at 37-38. But this is not how Defendants seek to use it here.  Instead, Defendants seek to use a summary, based on only 2% of the relevant health plan documents and 1% of the reimbursement claims at issue, to meet their burden of resolving any and *all* issues of fact as to the relevant administrative remedies to be exhausted *for every* claim in this case. Defendants cannot cite to any case in which a Court used a summary in such an expansive manner.

Indeed, if Defendants were allowed use a summary here, it would effectively work an end-run around the Court's July 2025 Order (Dkt 168 at 19-20) and transfer the burden of proof on the failure-to-exhaust affirmative defense to the Murphy Practice. This would run afoul of existing and controlling Second Circuit precedent holding that the burden of proof on a failure-to-exhaust affirmative defense rests with the benefits plan administrator, here Defendants. *See, e.g.*, *Paese*, 449 F.3d at 446; *Neufeld*, 2018 WL 4157377, at *10; *Negron*, 300 F. Supp. 3d at 354; *Siemens Corp.*, 2017 U.S. Dist. LEXIS 206010, at *17; *Levi*, 2014 U.S. Dist. LEXIS 134662, at *31.  In this case, the Murphy Practice, at Defendants' urging, was both sanctioned and forced to withdraw any COVID-19 testing claim for which it could not provide medical records and assignments of benefits. (Dkt 95, 118, 153, 168.) No summary, sampling, or extrapolation was permitted. It would be manifestly inequitable to not hold Defendants to the same standard here.

For these reasons, Defendants have failed to meet their burden of proof to obtain summary judgment dismissal based on their failure-to-exhaust affirmative defense for the 99% of claims at issue for which Defendants have not provided the underlying, relevant health plan documents. This Court accordingly should deny Defendants summary judgment on these claims. Alternatively, this Court should stay consideration of summary judgment on these claims until the Murphy Practice can conduct discovery on the facts and opinions offered by Defendants in support of their proposed summary evidence. *See* Fed. R. Civ. P. 56(d)(2).

II.    **FOR THE 1% OF REIMBURSEMENT CLAIMS AT ISSUE WHERE DEFENDANTS HAVE PROVIDED THE UNDERLYING RELEVANT PLAN DOCUMENTS, DEFENDANTS STILL CANNOT OBTAIN SUMMARY JUDGMENT DISMISSAL BASED ON FAILURE-TO-EXHAUST BECAUSE GENUINE ISSUES OF FACT REMAIN**

A.    **Genuine Issues of Fact Remain Regarding Whether the Murphy Practice Failed to Take Advantage of the Appeal Processes Made Available to Them**

As discussed above, Defendants did provide 24 underlying, relevant health plan documents governing 185 reimbursement claims at issue in this lawsuit. These plan documents indicate that Defendants, for those plans, had administrative appeals procedures that varied in scope, procedure, and timelines.

Given the existence of these administrative appeal procedures, Defendants seek summary judgment dismissal of these claims based on Defendants' contention that, for these 185 claims, the Murphy Practice produced no documents demonstrating that they appealed any of the denials. (Carta Decl. ¶ 6.)

This statement, however, is insufficient for Defendants to obtain summary judgment on these claims. The question is not whether the Murphy Practice produced any documents concerning

13

appeals, but rather whether the Murphy Practice took the steps available to it to appeal the claim denials.

As the accompanying Murphy Declaration explains, the Murphy Practice submitted reimbursement claims for the COVID-19 testing and related services shortly after the services were rendered, in accordance with Defendants' claim submission instructions. (*See* Murphy Decl. ¶ 26.) When Defendants responded to these claims by issuing actual denials, the Murphy Practice appealed those denials through Defendants' appeal processes. (*Id.* ¶ 30.) Before 2023, these appeals were primarily made either electronically, through Defendants' portal, or telephonically. (*Id.*) As such, the Murphy Practice has no printable documents in its possession to establish these appeals. (*Id.*) But, of course, Defendants, as recipients of these appeals, can check their databases to determine whether, in fact, appeals were received. Defendants' submission on this renewed motion studiously avoids stating that they checked their internal databases to determine whether appeals were submitted by the Murphy Practice. This failure, by itself, requires denial of summary judgment.

There were many instances, however, when Defendants responses to the Murphy Practice's claims submissions were a request for extensive medical records and a notice that processing and payment of the claim would be pended awaiting the records. (Murphy Decl. ¶ 29.) The sheer number of these requests, coupled with the voluminous records requested, made it impossible for the Murphy Practice to timely reply. (*Id.* ¶ 31.) Accordingly, the parties in Summer 2020 negotiated an agreement where Defendants would conduct a "probe sample audit" of medical records involving ten claims, which were provided in September 2020. (*Id.* ¶ 32.) It was the audit of these claims that led to the audit findings in Spring 2021. (*Id.* ¶ 33.) Thus, for these claims, the Murphy Practice had

14

no appeal rights or other recourse to challenge their pendency, other than to submit medical records and undergo Defendants' audit, which the Murphy Practice did.

Specifically, by letter dated March 4, 2021, Defendants provided Murphy Medical Associates with its findings regarding a post-payment review audit of its reimbursement claims for COVID-19 testing and related services. (*See* Murphy Decl. Exh. A.) According to Defendants, this audit examined medical necessity, applicable criteria for covered benefits, review of documentation in support of billing, and review of dates of service correspondent with claims as submitted. (*Id*.) Defendants concluded that there was a "consistent pattern of discrepant billing from March 2020 to February 2021 for all claims submitted to Cigna." (*Id.*) Defendants accordingly demanded that Murphy Medical Associates return $468,829.69 that it had already paid the provider, and informed Murphy Medical Associates that in "addition to the identified damages, a flag has been placed that will deny claims pursuant to the significant issues outlined above. Be advised that the flag will deny claims whether they are submitted to Cigna by you or by the patient directly." (*Id.*)  Defendants also sent Diagnostic and Medical Specialists of Greenwich a letter dated April 1, 2021 advising that a flag was placed denying COVID-19 testing and related claims submitted by that entity. (*Id.* Exh. B.)

Neither the March 4 nor the April 1, 2021 letters provide the Murphy Practice any appeal rights or other mechanism to challenge Defendants' audit findings.  (*Id.* Exhs. A, B.) This provides another reason for the Court to deny summary judgment based on the failure-to-exhaust affirmative defense: "[D]efendants who give inadequate notice of the right to administratively appeal a denial of benefits are thus precluded ... from asserting failure to exhaust administrative remedies as a defense." *Strom v. Siegel Fenchel & Peddy P.C. Profit Sharing Plan*, 497 F.3d 234, 246 (2d Cir. 2007) (alteration in original) (quoting *Veltri v. Bldg. Serv. 32B–J Pension Fund*, 393 F.3d 318, 324

15

(2d Cir. 2004)); *see also Novak v. TRW, Inc.*, 822 F. Supp. 963, 969 (E.D.N.Y.1993) (genuine issue

of fact existed as to whether claimant informed of appeal rights); *Clay v. ILC Data Device Corp.*,

771 F. Supp. 40, 45 (E.D.N.Y.1991) (same); *Kreml v. Diamond Shamrock Corp.*, 701 F. Supp.

1400, 1403–04 (N.D.Ill.1988) (same).

B.    **Issues of Fact Regarding Defendants'**
      **Illegal Conduct Also Preclude Summary Judgment**

Even if this Court were to find that, for the 185 claims at issue, the Murphy Practice failed

to exercise and exhaust appeal rights available to it, this Court still should deny summary judgment

based on Defendants' failure-to-exhaust affirmative defense because of Defendants' illegal conduct

in claims processing or, alternatively, the futility doctrine.

Put simply, ERISA and its implementing regulations require administrators to issue timely,

reasoned, and compliant adverse benefit determinations that identify the specific reasons for denial,

cite relevant plan provisions, describe information necessary to perfect the claim, and explain

appeal rights. The record reflects widespread failures to meet these requirements, including

untimely adjudications, denials lacking plan citations, contradictory rationales, and claims and

appeals that were never adjudicated at all. Under 29 C.F.R. §2560.503-1(l), these failures trigger

deemed exhaustion and excuse any further administrative pursuit. *See McQuillin v. Hartford Life*

*& Acc. Ins. Co.*, 36 F.4th 416, 419 (2d Cir. 2022); *Montefiore Med. Ctr. v. Loc. 272 Welfare Fund*,

No. 09-cv-3096, 2018 U.S. Dist. LEXIS 28019 at *29 (S.D.N.Y. Feb. 20, 2018).

The ERISA claim regulation requires that, in the case of an adverse benefit determination,

such is as at issue here, the health plan administrator – here Defendants – must provide: (1) the

specific reason or reasons for the for the adverse determination; (2) reference to the specific plan

provisions on which the determination is based; (3) a description of any additional material or

information necessary for the claimant to perfect the claim and an explanation of why such

16

information is necessary; or (4) a description of the plan's review procedures and the time limits applicable to such procedures.  *See* 29 C.F.R. § 2560.503-1(g)(i-iv).

Additionally, if "an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request."  *Id.* § 2560.503-1(g)(v)(A).

And, if the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request." *Id.* § 2560.503-1(g)(v)(B).

A review of adverse benefit determinations relating to the claims at issue in this case reveal that Defendants in no way provided the level of detail as to reasons for denial or pending the claims as required by the ERISA claim regulation.  Indeed, in many of the determination, Defendants clearly did not provide the specific reasons for the determination – as required by 29 C.F.R. § 2560.503-1(g)(i) – because Defendants denied the claims stating the "supporting documentation does not match the information sent on the claim," even though Defendants had not yet requested, and the Murphy Practice had not yet provided, supporting documentation. (Murphy Decl. ¶¶ 47-48.) In other cases, Defendants denied reimbursement stating patients were initially responsible for paying claims or that contractual obligations precluded the payment of claims. (*Id.* ¶ 49.) These reasons cannot be correct because, given the claims' status as COVID-19 testing and related claims,

17

there is no patient responsibility on these claims, and no contractual justification that would preclude paying these claims. (*Id.*) ¶

Similarly, many of the determinations fail to explain what additional or supplemental information is needed to adjudicate the claim, and why that information is needed, which violates 29 C.F.R. § 2560.503-1(g)(iii). (Murphy Decl. ¶ 50.) Many determinations contain vague and confusing reasons for denial such as missing Remark Codes or Incomplete/invalid document for actual cost or paid amount, which violates 29 C.F.R. § 2560.503-1(g)(i). (*Id.*) Defendants never provided any time frame for when additional or supplemental information would be reviewed. (*Id.* ¶ 52.)

Given these multiple and egregious violations of the ERISA claim regulation, the Court should, at the very least find that there are genuine issues of material fact as to whether it should deem any administrative appeal procedures exhausted relating to the 185 claims at issue. *See McQuillin*, 36 F.4th at 419; *Montefiore Med. Ctr.*, 2018 U.S. Dist. LEXIS 28019 at *29.

Independently, exhaustion is excused because many of Cigna's denials were unlawful on their face and therefore incapable of creating a valid administrative remedy. During the relevant period, federal law required coverage of COVID-19 testing and related services without cost-sharing, prior authorization, medical necessity review, or documentation prerequisites. Nevertheless, Cigna repeatedly denied claims using patient-responsibility codes (PR-A1), documentation-based rationales (including N206 and N226), pricing-based denials (N446), and medical-necessity determinations. (Murphy Decl. Exhs. D-BB.) Because these rationales were prohibited by statute, they cannot constitute valid adverse benefit determinations or trigger an obligation to exhaust administrative remedies. Appeals of unlawful denials are futile by definition.

The evidence further demonstrates that Cigna employed automated denial logic rather than individualized review. Identical denial codes appear across unrelated patients and dates of service, often in mutually contradictory combinations. Claims were denied for missing documentation that was never requested, for cost-sharing that federal law forbade, or for coding deficiencies that were later abandoned in favor of new rationales. This pattern supports a reasonable inference of arbitrary and capricious administration and further defeats Defendants' entitlement to summary judgment.

## C.    Genuine Issues of Material Fact Exist Regarding Futility

Turning to futility, the exhaustion doctrine "does not require plaintiffs to engage in meaningless acts or to needlessly squander resources as a prerequisite to commencing litigation." *Sibley-Schreiber v. Oxford Health Plans, Inc.*, 62 F. Supp. 2d 979, 986 (E.D.N.Y. 1999); *see also Corsini v. United Healthcare Corp.*, 965 F. Supp. 265, 268 (D.R.I.1997).

As such, "a court will release the claimant from the requirement" of exhaustion where the claimant "make[s] a 'clear and positive showing' that pursuing available administrative remedies would be futile." *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). To fall within the futility doctrine, plaintiffs must "show that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision." *Communications Workers of America v. American Tel. & Tel. Co.*, 40 F.3d 426, 432 (D.C. Cir.1994).

Even before evidence was submitted, Judge Arterton in this case recognized the strong possibility that the Murphy Practice's pursuit of administrative remedies would have been futile. *See* Order on Motion to Dismiss Amended Complaint, Dkt 48, at 16 (Mar. 11, 2022) ("It is at least plausible that where Plaintiff encountered such massive, repeated, and automatic denials, it would be futile for it to administratively exhaust each individual claim with any expectation of successful

19

result."). Supporting her decision, Judge Arterton cited to *Diagnostic Affiliates of N.E. Houston v. United Healthcare Servs.*, No. 21-cv-00131, 2022 WL 214101, at \*10 (S.D. Tex. Jan. 18, 2022), where the court concluded that plaintiff had demonstrated futility to withstand a motion to dismiss where almost all but a "very small fraction of hundreds of claims" were denied. *See also Murphy Med. Assocs., LLC v. United Med. Res. Inc.*, 2023 U.S. Dist. LEXIS 53636 (D. Conn. Mar, 29, 2023) (denying motion to dismiss on the same basis).

Now that discovery has been conducted, there is ample evidence establishing further pursuit of administrative remedies would have been futile. Defendants first placed a flag on Murphy Medical Associates' claims in their claims system on May 15, 2020.[2] (Stephanie Canto Declaration, Dkt. 157-2, ¶ 12.) This flag caused every Murphy Medical Associates' claim to be pended until Murphy Medical Associates supplied medical records supporting the claim and Defendants audited those records. (*Id.* ¶ 13.) On February 4, 2021, Defendants placed a second flag on Murphy Medical Associates' claims that denied all submitted claims as "Services Not Rendered As Billed." (*Id.* ¶ 14.)

Then, as discussed above, by letter dated March 4, 2021, Defendants provided Murphy Medical Associates with its audit finding that there was a "consistent pattern of discrepant billing from March 2020 to February 2021 for all claims submitted to Cigna." (*See* Murphy Decl. Exh. A.) As a result, Defendants demanded the return of $468,829.69 that it had already paid Murphy Medical Associates and stated "a flag has been placed that will deny claims pursuant to the significant issues outlined above. Be advised that the flag will deny claims whether they are submitted to Cigna by you or by the patient directly." (*Id.*) Defendants also sent Diagnostic and Medical Specialists of Greenwich a letter dated April 1, 2021 advising they placed a flag denying

---

[2] All the 185 claims at issue here involve Murphy Medical Associates, not other practice entitles. (Murphy Decl. Exhs. D-BB.)

20

COVID-19 testing and related claims submitted by that entity as well. (*Id.* Exh. B.) Defendants have acknowledged that these denial flags encompassed all submitted claims, including COVID-19 BioFire testing claims (billed under CPT 0202U), even though these claims were not part of the audit and Defendants' internal records revealed that these claims were appropriately billed. (*See* Canto Deposition at 44-47, 87-88.)[3]

Thus, from May 15, 2020 to date, Defendants have had flags in place which originally pended, and then automatically denied, Murphy Practice claims.  During this period, they made a finding that the Murphy Practice was engaging in "consistent pattern of discrepant billing from March 2020 . . . for all claims submitted to Cigna" and sought recoupment of all monies already paid. (Murphy Decl. Exh. A.) Based on this, it is certain that the Murphy Practice's claims would be denied on appeal.

Defendants contend that, notwithstanding the flags, they would have reviewed all medical records submitted by the Murphy Practice prior to February 4, 2021, and could have decided to pay claims based on their review.  As an initial point, Cigna's reliance on SIU audit requests cannot trigger exhaustion requirements. The audit process did not provide appeal rights, did not comply with ERISA's procedural requirements, and was conducted during a period when EBSA guidance tolled response deadlines due to the pandemic. Requests imposing shortened response periods during this time cannot support an exhaustion defense, particularly where records were submitted within tolled timeframes and claims were nevertheless denied.

Moreover, Defendants' speculationis belied by the facts: the Murphy Practice *did* submit medical records and Defendants *did* review them. The result was that Defendants concluded that the Murphy Practice engaged in a "consistent pattern of discrepant billing from March 2020 to

---

[3]  Relevant excerpts of the Canto Deposition transcript are annexed to the Breitenbach Declaration as Exhibit A.

February 2021 for all claims submitted to Cigna." (Murphy Decl. Exh. A.) Based on this finding, it is hard to conceive of any circumstances in which Defendants would have paid a claim post-review for this period.

Similarly, Defendants contend that, notwithstanding the denial flag they placed beginning February 4, 2021, the Murphy Practice still had the right to administratively appeal these claims. Defendants, though, did not inform the Murphy Practice of its purported continued appeal rights in their letters dated March 4 and April 1, 2021. (*Id.* Exhs. A, B.)  Even if they had, given the circumstances, it is a certainty that any such appeal would have been futile. Defendants made a finding that the Murphy Practice had engaged in discrepant billing regarding *all* claims and, accordingly, its services were not rendered as billed. (*Id.*) So firm were Defendants in their conviction that they denied claims submitted by the Murphy Practice under CPT 0202U, even though Defendants' internal records revealed that these claims were appropriately billed. (*See* Canto Deposition at 44-47, 87-88.)  Corroborating futility is that the Murphy Practice's filing new appeals with Defendants in 2023 on its COVID-19 testing and related services claims have yielded no reversals or payments. (*See* Murphy Decl. ¶ 48.)

Based on all the foregoing, there are, at the very least, genuine issues of material fact regarding futility sufficient to require denial of Defendants' renewed summary judgment motion as to the 185 claims.

III.   **BECAUSE IT IS PROCEDURALLY IMPROPER AND, IN ANY EVENT, GENUINE ISSUES OF MATERIAL FACT EXIST, THIS COURT SHOULD DENY DEFENDANTS' UNTIMELY ATTEMPT TO DISMISS CLAIMS RELATED TO 14 PATIENTS ALLEGEDLY NOT COVERED BY DEFENDANTS' HEALTH PLANS**

Defendants' final argument to support its renewed summary judgment motion is that there are fourteen patients whose claims are at issue in this lawsuit but who Defendants first claim, at this late date, were not covered by health plans administered by Defendants.

This Court should reject Defendants' attempt to obtain summary judgment dismissal of the claims involving these fourteen patients. This Court granted leave to Defendants to renew their summary judgment motion as to on issue only: exhaustion of administrative remedies. No leave was granted with respect to the 14 patients.

Indeed, even though the evidence on which Defendants have made their argument regarding the summary judgment dismissal of the claims involving the 14 patients was available long before Defendants made their initial summary judgment motion last year, Defendants chose not to raise any issues regarding the 14 patients at that time. Having failed to raise the issue then, they cannot raise the issue on this renewed summary judgment motion.

Specifically, the declaration submitted by Defendants' counsel states that "a review of Plaintiffs' production revealed that fourteen patients were members of health plans administered by entities unrelated to Cigna. . . ." (Carta Decl., Dkt 176-37, ¶ 11.) Even this were correct – it is not, as we explain below – Defendants first received the Murphy Practice's production in late 2022/early 2023, almost two years before Defendants made their summary judgment motion. (Dkt. 89, 95, 157.) This gave them ample time to raise any argument that they had regarding the 14 patients in their summary judgment papers.

Moreover, if Defendants were correct, and the 14 patients did not have coverage with a health plan administered by Defendants, they should have realized this when the claims related to these patients were submitted to them by the Murphy Practice in 2020-21. Defendants offer no explanation why they did not realize or raise this argument earlier.

Defendants' failure to realize or raise this argument earlier is not surprising because Defendants' argument is factually incorrect. Indeed, Defendants argument entirely rests on the fact that, included within the Murphy Practice's production were insurance identification cards for the

23

patients at issue from companies other than Defendants. This does not establish that, at the time the Murphy Practice provided these 14 patients with the services at issue these patients were not covered by Defendants' plans. It only establishes that, at some point in their relationship with the Murphy Practice, they provided another insurance identification card to the Murphy Practice. As the accompanying Murphy Declaration explains, there is documentary evidence indicating that, at the time the services were rendered, all but one of the patients were covered by Defendants' plans. (Murphy Decl. ¶¶ 56-72.)

In summary, Defendants' reliance on insurance card exhibits is misplaced. Insurance cards are not determinative of coverage at the date of service, particularly where Cigna accepted and adjudicated the claims, applied benefit determinations, issued ERISA denial codes, and assigned patient responsibility. At a minimum, Defendants' own conduct creates genuine disputes of material fact regarding coverage and damages, precluding summary judgment. For these reasons, this Court should deny Defendants' procedurally improper attempt to obtain summary judgment dismissal regarding the claims associated with fourteen patients.

## CONCLUSION

Defendants have failed to carry their burden on establishing a failure to exhaust administrative remedies. The record reflects missing governing plan documents, pervasive ERISA procedural violations, unlawful denial rationales barred by federal statute, and evidence of automated and arbitrary claims handling. At minimum, these facts create genuine disputes of material fact that require denial of Defendants' renewed motion for summary judgment.

Respectfully Submitted,

HARRIS BEACH MURTHA CULLINA PLLC
*Attorneys for Plaintiffs*

By: /s/ Roy W. Breitenbach
   Roy W. Breitenbach (ct28949)
One Century Tower
265 Church Street, 9th Floor
New Haven, Connecticut 06510
Uniondale, New York 11553
(516) 880-8378
rbreitenbach@harrisbeachmurtha.com

25