**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| MURPHY MEDICAL ASSOCIATES, LLC et al., *Plaintiffs*, v. CIGNA HEALTH AND LIFE INSURANCE COMPANY and CONNECTICUT GENERAL LIFE INSURANEC COMPANY, *Defendants.* | No. 3:20-cv-01675 (VAB) |

**RULING AND ORDER ON RENEWED MOTION FOR SUMMARY JUDGMENT**

Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (collectively "Cigna" or "Defendants") have filed a renewed motion for summary judgment as to the claims brought by Murphy Medical Associates, LLC, North Stamford Medical Associates, LLC, Coastal Connecticut Medical Group, LLC, and Steven A.R. Murphy, M.D. (collectively "Murphy Medical" or "Plaintiffs"). *See* Defs.' Renewed Mot. for Summ. J., ECF No. 176 ("Renewed MSJ").

For the following reasons, the Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part.

Any claims brought by the one patient identified without Cigna coverage shall be dismissed; all other claims remain and will proceed to trial.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**[1]

   A.  **Factual Background**

The Plaintiffs are "out-of-network or non-participating" healthcare providers, meaning that they do not have contracts with Cigna. Pls.' Resp. to Defs.' Statement of Undisputed Facts ¶ 1, ECF No. 184 ("Pls. SOF"). The Plaintiffs performed COVID-19 testing services to over 4,400 Cigna members, totaling $6 million. *Id.* ¶ 4.

Approximately 1,200 health plan documents govern the claims at issue in this lawsuit. *Id.* ¶ 31. Cigna has submitted plan documents for twenty-six patients, whose claims total $202,974. *Id.* ¶ 6. These plans include language requiring a claimant to exhaust administrative remedies before initiating a civil suit. *See id.* ¶¶ 7–30.

   B.  **Procedural Background**

On July 18, 2025, the Court granted in part and denied in part the Defendants' initial motion for summary judgment. Because the "Defendants [did] not provide[] the relevant plan documents or provisions of such plans concerning the administrative appeals process," Ruling and Order on Mot. for Summ. J. at 19, ECF No. 168, the Court denied without prejudice to renewal summary judgment as to failure to exhaust administrative remedies, *id.* at 20. The Court allowed the Defendants to submit a renewed motion for summary judgment on this issue. Order, ECF No. 169.

On November 11, 2025, the Defendants filed a renewed motion for summary judgment. *See* Renewed MSJ.

---

[1] The Court assumes familiarity with the factual and procedural background of this case, as detailed in the Court's previous decision on the initial motion for summary judgment, *see* Ruling and Order on Mot. for Summ. J., ECF No. 168, and focuses on the factual allegations relevant to this renewed motion for summary judgment.

On December 31, 2025, the Plaintiffs filed an opposition memorandum. *See* Pls.' Mem. of L. in Opp'n to Defs.' Renewed Mot. for Summ. J., ECF No. 183 ("Opp'n").

On January 23, 2026, the Defendants filed a reply. *See* Defs.' Reply Mem. of L. in Supp. of Their Renewed Mot. for Summ. J., ECF No. 191 ("Reply").

## II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by

documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-01559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party on the issue for which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

III.    **DISCUSSION**

The Defendants argue that the Plaintiffs failed to exhaust administrative remedies, and that the Plaintiffs cannot recover against Cigna for patients not covered by a Cigna plan.

The Court addresses each in turn.

### A.  The Exhaustion of Administrative Remedies

The Second Circuit has long recognized that there is a "firmly established federal policy favoring exhaustion of administrative remedies in [Employee Retirement Income Security Act ("ERISA")] cases." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (quoting *Alfarone v. Bernie Wolff Const. Corp.*, 788 F.2d 76, 79 (2d Cir. 1986)); *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006) ("[T]he federal courts— including this Circuit—have recognized a firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." (citation and internal quotation marks omitted)). The exhaustion requirement serves three primary purposes: to "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*." *Kennedy*, 989 F.2d at 594 (quoting *Denton v. First Nat'l Bank of Waco, Texas,* 765 F.2d 1295, 1300 (5th Cir.)). The requirement is an affirmative defense; the failure to exhaust is not jurisdictional. *See Paese*, 449 F.3d at 445 ("Indeed, the requirement is purely a judge-made concept that developed in the absence of statutory language demonstrating that Congress intended to make ERISA administrative exhaustion a jurisdictional requirement.").

Given the exhaustion requirement, a plaintiff must "pursue all administrative remedies provided by their plan pursuant to statute, which includes carrier review in the event benefits are

denied." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir. 2002); *see also Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013) ("[P]articipants [are required to] exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)" so "[a] participant's cause of action under ERISA accordingly does not accrue until the plan issues a final denial.") (citations omitted); *Kennedy*, 989 F.2d at 594 ("[E]xhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy.").

"The exhaustion requirement, however, is not absolute." *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 179 (2d Cir. 2013). "Implicit in the exhaustion requirement is the condition that a plaintiff must have an administrative remedy to exhaust." *Id.* Thus, the Second Circuit has held that "plan participants will not be required to exhaust administrative remedies where they reasonably interpret the plan terms not to require exhaustion and do not exhaust their administrative remedies as a result." *Id.* at 181.

In addition, "[w]here, claimants make a 'clear and positive showing' that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the claimant from the requirement." *Kennedy*, 989 F.2d at 594 (quoting *Fizer v. Safeway Stores,* 586 F.2d 182, 183 (10th Cir. 1978)). "A futility exception to an appeal requirement ordinarily depends on the proposition that appeals are so routinely and uniformly denied that it is simply a waste of time and money to pursue them." *Murphy Med. Assocs., LLC v. 1199SEIU Nat'l Benefit Fund*, No. 24-1880-CV, 2025 WL 763392, at *2 (2d Cir. Mar. 11, 2025) (summary order) (citing *Cottillion v. United Ref. Co.*, 781 F.3d 47, 55 (3d Cir. 2015)).

6

The Defendants assert that the twenty-four plans they submitted all include an exhaustion requirement. Defs.' Mem. of L. in Supp. of Their Renewed Mot. for Summ. J. at 11, ECF No. 176-33 ("MSJ Mem."). As to the remaining plans not submitted, the Defendants argue that because this case involves a voluminous number of plan documents for the 1,300 claims at issue, they are allowed to summarize the remaining plans under Rule 1006 of the Federal Rules of Evidence, rather than submit them all. *Id.* at 13–14. The Defendants offer the declaration of Pamela Ley, a Cigna employee, to establish that the remaining plans all have an exhaustion requirement. *Id.* at 17–20. The Defendants argue that the Plaintiffs have submitted no evidence to show that they administratively appealed any of their claims nor have they put forward sufficient evidence to show that pursuing an administrative appeal would have been futile. *Id.* at 11–12, 15.

The Plaintiffs concede that the twenty-four plans provided contain an exhaustion requirement. Opp'n at 18. They argue, however, that the Ley declaration is insufficient to meet the Defendants' burden on summary judgment to establish the remaining plans also contain an exhaustion requirement. *Id.* at 13. They contest the Ley Declaration as a summary under Rule 1006 because Ms. Ley did not review all underlying health plans, only the twenty-four plans made available, and the Defendants have not established that the twenty-four plans are a representative sample or that Ms. Ley is qualified to testify as to plans she did not review. *Id.* at 14–16. Additionally, in their view, the declaration is not proper under Rule 1006 because the remaining health plans were not made available to them. *Id.* at 16.

As to exhaustion under the twenty-four available plans, the Plaintiffs argue that they appealed their claims electronically or by telephone, but there is no documented proof available. *Id.* at 13. And once the Defendants conducted the audit of claims, they had no appeal rights. *Id.*

at 20. Alternatively, the Plaintiffs argue that summary judgment should be denied as to the issue

of exhaustion because the Defendants' claim denials lacked clear explanation in violation of

ERISA and any appeal would be futile. *Id.* at 21–27.

The Court agrees, for the most part.

For the twenty-four plans the Defendants have submitted, all contain an exhaustion

requirement, as the Plaintiffs concede. Opp'n at 18 ("Defendants did provide 24 underlying,

relevant health plan documents governing 185 reimbursement claims at issue in this lawsuit.

These plan documents indicate that Defendants, for those plans, had administrative appeals

procedures that varied in scope, procedure, and timelines.").

While the Defendants argue that the "Plaintiffs have not produced documents

demonstrating that they administratively appealed any of the denials," MSJ Mem. at 11, the

Defendants bear the burden of proof for exhaustion. *See Negron v. Cigna Health & Life Ins.*, 300

F. Supp. 3d 341, 354 (D. Conn. 2018) ("In ruling on this motion to dismiss for failure to exhaust,

the Court is mindful that defendant bears the burden of proof on this affirmative defense."); *cf.*

*Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) ("[T]he burden of

pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative

defense."). And they must do more than show that the Plaintiffs have not produced documents

demonstrating an appeal. Rather, the Defendants must affirmatively show that no evidence of

these appeals exist.

In the analogous context of exhaustion under the Prison Litigation Reform Act, courts

faced with conflicting narratives about whether a plaintiff exhausted administrative remedies

grant summary judgment only when the defendants can show no record of the appeal exists. *See,*

*e.g.*, *Bennett v. Onua*, No. 09 CIV. 7227 (SAS), 2010 WL 2159199, at *3 (S.D.N.Y. May 26,

2010) ("Despite Bennett's claim that he filed a grievance . . . that was denied, a search of the grievance log records . . . did not reveal any record of a grievance by Bennett concerning his medical care. . . . As such, Defendants have adequately supported the affirmative defense of failure to exhaust."). For example, in *Saeli v. Chautauqua County., NY*, 36 F.4th 445 (2d Cir. 2022), the Second Circuit affirmed a district court's decision to grant summary judgment despite the parties' "dispute" as to whether the plaintiff submitted an informal grievance. *Saeli*, 36 F.4th at 450, 461. The court noted that the plaintiff "cannot establish a *genuine* dispute as to whether he submitted a[] [timely] informal grievance," where the defendants provided "testimony stating that a diligent search of the Jail's grievance records disclosed no filed grievance forms . . . [and] the plaintiff] failed to respond with any competent evidence – even in the form of his own testimony – that he indeed submitted an informal grievance form within the prescribed time limit." *Id.* at 455–56, 456 n.6 (emphasis in original).

Similarly, in the context of employment discrimination claims, courts have granted summary judgment where the defendant showed no record of an administrative complaint within their internal systems. *See, e.g.*, *Syed v. NYCHHC Kings Cnty. Hosp.*, No. 24-CV-1624 (NRM) (JRC), 2025 WL 895384, at *3 (E.D.N.Y. Mar. 24, 2025) ("Defendants further declare that upon a diligent search of [the defendant's] [Equal Employment Opportunity Commission ("EEOC")] charge records, there are no records for an EEOC charge filed by [the plaintiff] naming [the defendant] as a respondent in the last five years."); *cf. Chapman v. City of New York*, No. 06-CV-3153-ENV-JMA, 2011 WL 1240001, at *5 (E.D.N.Y. Mar. 30, 2011) (denying summary judgment as to exhaustion where "a search of [New York City Commission of Human Rights] database shows that no such complaint from [the plaintiff] is actually recorded," but "plaintiff has submitted a certified mail receipt as well as a return receipt" of her complaint).

9

Here, the Plaintiffs argue that they submitted appeals that would be reflected in the Defendants' records, but there is no documentation. *See* Murphy Decl. ¶ 30 ("When we received an actual denial, we appealed those denials through Defendants' appeal processes. Before 2023, these appeals were primarily made either electronically, through Defendants' portal, or telephonically. As such, we have no printable documents in our possession to establish these appeals.").

And the Defendants offer no evidence to suggest that records of these appeals do not exist within their own system, or that they conducted a search of their own system. Instead, they rely on the fact that evidence of these appeals does not exist within the Plaintiffs' discovery production. *See* Foote-Smith Decl. ¶ 10 ("I conducted a search of Plaintiff's production . . . to determine whether there were any documents classified and/or coded as administrative appeals. I did not discover any documents demonstrating that Plaintiffs administratively appealed any of the 3,508 remaining claims."). As a result, the Defendants have not met their initial burden of showing no genuine dispute of material fact exists as to whether the Plaintiffs exhausted administrative remedies for the claims under the twenty-four plans provided, and the Court need not consider whether the Plaintiffs may be excused from the exhaustion requirement for these claims. *Cf. Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970) ("Because respondent did not meet its initial burden of establishing the absence of a policeman in the store, petitioner here was not required to come forward with suitable opposing affidavits.").

As to the claims under the remaining plans, even if the Defendants could establish that administrative remedies were available under these plans,[2] they have failed to show that the Plaintiffs failed to exhaust these claims for the reasons explained above.

---

[2] Nevertheless, the Defendants have not met their burden of establishing the available administrative remedies under

Accordingly, summary judgment as to whether the Plaintiffs exhausted administrative remedies will be denied.

## B. The Non-Plan Beneficiaries

Under ERISA, a participant or beneficiary may only "recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132 (a)(1)(B). Thus, "there simply is *no* cause of action if there is no plan." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990) (emphasis in original). Similarly, a participant or beneficiary must have a plan with the plan administrator sued to pursue claims under ERISA. *Cf. McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 149 (2d Cir. 2017) ("[B]ecause McCulloch is not a valid assignee and has no plan-related relationship with Aetna, the benefits under the health care plan belong to the patient, not to McCulloch.").

The Defendants argue that there are fourteen patients who cannot recover against Cigna because they do not have a plan with Cigna, and that these claims should be dismissed. MSJ Mem. at 16.

---

these plans. *See Neufeld v. Cigna Health & Life Ins. Co.*, No. 3:17-CV-01693-WWE, 2018 WL 4158377, at *10 (D. Conn. Aug. 30, 2018) ("Cigna has not demonstrated that i[t] has established a reasonable claims and appeals procedure in compliance with DOL regulations relevant to Neufeld's overcharge claims."). While summary evidence under Rule 1006 of the Federal Rules of Evidence is permissible at the summary judgment stage, *see Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 52 (2d Cir. 1993) ("Summary evidence is admissible as long as the underlying documents also constitute admissible evidence and are made available to the adverse party.") (citing Fed. R. Evid. 1006 and related caselaw)); *see id.* at 52 n.1 (noting that, while the appellant cited to Rule 1004, "[t]he rule specifically governing the admission of summary documents into evidence is Fed. R. Evid. 1006"), and summary evidence may be based on a sample of the underlying data, *see e.g.*, *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523, 536 (E.D.N.Y. 2012) (finding admissible summary evidence that "summarizes only 8% of all Saudi Committee transactions that were funneled through the Bank," but which accounted for "75% of the monetary value of the bank transactions pertaining to the Saudi Committee"), the Defendants' proffered summary evidence lacks a sufficient evidentiary basis for the Court to conclude that the selected sample of twenty-four plans is representative of the remaining claims, over 1,200 claims, at issue. Without such a basis, the Court would have to make a credibility determination about Ms. Ley's declaration, which it cannot do at summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."); *cf. Loc. 210 Health & Ins. Fund v. Selecto Prods. Co.*, No. 05 CIV.8962(FM), 2007 WL 2717870, at *5 (S.D.N.Y. Sept. 14, 2007) ("The Plaintiffs' motion papers therefore improperly ask the Court to assume without any factual basis that their estimate of the contribution deficiencies is accurate.").

The Plaintiffs argue that the Defendants cannot raise this issue because the Court granted leave only on the issue of exhaustion and they waived this issue when they failed to raise it in the initial motion for summary judgment. Opp'n at 28. Additionally, there is a genuine issue of material fact as to whether all but one of these patients were covered by the Defendants' plans. *Id.* at 29.

The Court agrees in part and disagrees in part.

While the Defendants may have been able to raise this argument in the initial motion for summary judgment, the Court has discretion to consider this new issue in a renewed motion for summary judgment. *See Bonano v. Doe*, 628 F. App'x 25, 27 (2d Cir. 2015) (summary order) (holding that "[t]he district court's consideration of a second summary judgment motion was entirely appropriate" when "the second summary judgment motion was accompanied by critical evidence absent from the first summary judgment motion"); *Frederick v. Off. of Mental Health, Rochester Psychiatric Ctr.*, 515 F. Supp. 3d 29, 33 (W.D.N.Y. 2021) ("While the Court is 'not convinced that some of the grounds now asserted in support of defendants' current motion could not have been presented previously[,]' the Court has 'discretion to entertain a successive or renewed summary judgment motion[.]'" (quoting *Beechwood Restorative Care Ctr. v. Leeds*, 811 F. Supp. 2d 667, 674 (W.D.N.Y. 2011))); *Wechsler v. Hunt Health Sys., Ltd.*, 198 F. Supp. 2d 508, 514 (S.D.N.Y. 2002) ("A party may renew its motion for summary judgment as long as it is supported by new material.").

As the parties agree, there is no genuine issue of material fact that one of the patients did not have coverage under Cigna. Opp'n at 24 ("As the accompanying Murphy Declaration explains, there is documentary evidence indicating that, at the time the services were rendered, all but one of the patients were covered by Defendants' plans."); Reply at 9 ("Plaintiffs have not

attempted to raise a question of fact regarding one of these patients[.]"). There is, however, a genuine dispute as to the remaining thirteen patients. *See* Murphy Decl. ¶ 57 ("[A] search of our records reveals that, at the time of the services at issue in this lawsuit were rendered, there is documentary evidence that 13 of the 14 patients had health coverage through health plans administered by Defendants.").[3]

Accordingly, summary judgment will be granted as to any claims brought by this one patient without Cigna coverage.[4]

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part.

Any claims brought by the one patient identified without Cigna coverage shall be dismissed; all other claims remain and will proceed to trial.

**SO ORDERED** at New Haven, Connecticut, this 8th day of May, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[3] In their reply, the Defendants raise, for the first time, that an additional three patients may lack coverage from Cigna. *See* Reply at 9 ("Plaintiffs . . . have failed to raise a genuine issue of fact regarding three other patients."). As this argument is raised for the first time in reply briefing, the Court declines to consider it. *See, e.g.*, *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised for the first time in a reply brief."); *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) ("We need not consider this argument because it is raised for the first time in his reply brief.").

[4] This patient appears to be Manon D., *see* Pls. SOF ¶ 40, Murphy Decl. ¶¶ 57–58, Begos Decl. ¶ 15, though the Murphy Declaration also refers to this patient as "Alexander D," Murphy Decl. ¶ 57.